TRINA A. HIGGINS, United States Attorney (#7349)
AARON B. CLARK, Assistant United States Attorney (#15404)
JENNIFER K. MUYSKENS, Assistant United States Attorney (DC#475353)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-CR-520-JNP |
| Plaintiff, | |
| vs. | **Response in Opposition to Defendant's Motion to Dismiss Indictment** |
| ALLISON BAVER. | Honorable Jill N. Parrish |
| Defendant. | |

Defendant Allison BAVER has moved to dismiss the Indictment, alleging (1) Counts 1-8 improperly charge her with attempting to make false statements to various banks; (2) Counts 1-5 and 7-8 all charge the same offense (multiplicity); (3) Count 6 is unsupported by the evidence; and (4) assuming the Court dismisses Counts 1-8, it must also dismiss Count 9. For the reasons set forth below, each of BAVER's claims fails, and the Court should deny the motion in its entirety.

## I

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the Indictment, BAVER owns and operates Allison Baver Entertainment, LLC ("ABE"). BAVER registered ABE with the Utah Division of Corporations on October 9, 2019.[1]

---

[1] Indictment at ¶ 2.

1

## The CARES Act and PPP Loan Application

In March 2020, the newly signed CARES Act created, among other things, the Small Business Administration's (SBA's) Payroll Protection Program (PPP). This program provided a loan to eligible small businesses to help keep their workers on payroll through the COVID-19 pandemic. If borrower businesses met the necessary conditions, the SBA would forgive all or parts of the loan.[2]

Among the requirements for these PPP loans, borrowers needed to (1) be in operation on February 15, 2020, and (2) have either employees for whom the business paid salaries and payroll taxes, or paid independent contractors as reported on a Form 1099-MISC.[3]

To apply for a PPP loan, businesses needed to submit a Borrower Application Form through an SBA-approved financial entity. On the first page of this form, applicants supplied information about the business's average monthly payroll and number of employees, among other things.[4]

The second page of the Borrower Application Form required applicants to make several "good faith" certifications, including the following:

- "The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;"

- "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule;"

---

[2]     Indictment at ¶¶ 7-8.
[3]     Indictment at ¶ 10.
[4]     Indictment at ¶ 11.

- "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."[5]

**BAVER Seeks a PPP Loan for ABE Through Lendio**

BAVER sought a PPP loan for ABE at least as early as April 13, 2020. On that date, she completed a Borrower Application Form and submitted it to Lendio, Inc. (Lendio).[6] Lendio is a business that offers clearinghouse services for small businesses seeking various types of financing. The company allows customers to submit loan applications (including PPP loan applications) to Lendio that it thereafter screens and submits to matched lenders.[7]

In ABE's April 13, 2020, Borrower Application Form submitted to Lendio, BAVER claimed ABE's average monthly payroll was $4,000,000 and that ABE had 100 employees.[8] BAVER signed the application and further initialed each of the required certifications – including that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."[9]

As alleged in the Indictment, BAVER's certification notwithstanding, ABE had no average monthly payroll and no employees at the time.[10]

---

[5]     *See, e.g.,* Exhibit 1 – ABE's April 13, 2020, PPP loan Borrower Application Form to Northeast Bank.

[6]     Indictment at ¶ 12.

[7]     Indictment at ¶ 5.

[8]     Indictment at ¶ 12.

[9]     Exhibit 1, p. 2.

[10]    Indictment at ¶ 12.

In the two weeks that followed, BAVER submitted at least five additional PPP loan Borrower Application Forms to Lendio: on April 14,[11] April 16,[12] April 23,[13] April 25,[14] and April 26, 2020.[15] In each of these forms, all of which BAVER signed and certified, BAVER attested that ABE's average monthly payroll was either $4,000,000 or $4,770,583. She further attested that ABE had either 105 or 430 employees.

But, as alleged in the Indictment, at the times BAVER completed each of these forms, ABE actually had no average monthly payroll and no employees.[16]

In early May 2020, Lendio forwarded each of ABE's six completed Borrower Application Forms to Northeast Bank.[17]

**BAVER Also Seeks (and Obtains) a PPP Loan for ABE Through Meridian**

Meanwhile, on April 24[18] and April 25, 2020,[19] BAVER also personally and directly submitted separate PPP loan Borrower Application Forms for ABE to Meridian Bank. On these two forms, both

---

[11]    Indictment at ¶ 13. *See also* Exhibit 2 – ABE's April 14, 2020, PPP loan Borrower Application Form to Northeast Bank.

[12]    Indictment at ¶ 14. *See also* Exhibit 3 – ABE's April 16, 2020, PPP loan Borrower Application Form to Northeast Bank.

[13]    Indictment at ¶ 15. *See also* Exhibit 4 – ABE's April 23, 2020, PPP loan Borrower Application Form to Northeast Bank.

[14]    Indictment at ¶ 18. *See also* Exhibit 5 – ABE's April 25, 2020, PPP loan Borrower Application Form to Northeast Bank.

[15]    Indictment at ¶ 19. *See also* Exhibit 6 – ABE's April 26, 2020, PPP loan Borrower Application Form to Northeast Bank.

[16]    Indictment at ¶¶ 13-15, 18-19.

[17]    Indictment at ¶¶ 13-15, 18-19.

[18]    Indictment at ¶ 16. *See also* Exhibit 7 – ABE's April 24, 2020, PPP loan Borrower Application Form to Meridian Bank.

[19]    Indictment at ¶ 17. *See also* Exhibit 8 – ABE's April 25, 2020, PPP loan Borrower Application Form to Meridian Bank.

of which BAVER likewise signed and certified, BAVER again attested that ABE had 430 employees and an average monthly payroll of either $4,769,583 or $4,770,583.[20]

But again, as alleged in the Indictment, at the time of these applications, ABE had no average monthly payroll and no employees.[21]

Even so, on May 11, 2020, Meridian Bank funded a PPP loan to ABE for $10,000,000.[22]

And on July 23, 2020, BAVER transferred $150,000 of ABE's PPP loan funds to Company X to invest in a film entitled *No Man of God*.[23]

**Indictment**

On December 15, 2021, a grand jury returned the Indictment in this case, charging BAVER with eight separate counts of making false statements designed to influence a bank, in violation of 18 U.S.C. § 1014, as well as a single count of money laundering, in violation of 18 U.S.C. § 1957.

**II**

**BAVER'S MOTION TO DISMISS SHOULD BE DENIED**

**A.   The Indictment Properly Alleges BAVER Made False Statements**

BAVER first asks the Court to dismiss with prejudice Counts 1-8 of the Indictment because they allege attempted violations of 18 U.S.C. § 1014. Her narrow focus on the phrase "attempt to make" in paragraph 20 of the Indictment apparently overlooks the fact that, within that same sentence, the Indictment *also* charges her with the substantive offense of making false statements for the purpose

---

[20]   Indictment at ¶¶ 17-18. *See also* Exhibits 7-8.
[21]   Indictment at ¶¶ 17-18.
[22]   Indictment at ¶ 22.
[23]   Indictment at ¶ 24.

of influencing a banking institution. As such, the challenged language is, at most, mere surplusage and does not warrant dismissal of the Counts in their entirety.

### 1. Relevant Legal Principles

BAVER correctly notes that the plain language of 18 U.S.C. § 1014 does not criminalize attempted false statements.

Fed. R. Crim. Pro. 7(c)(1) requires an indictment to be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."[24] Fed. R. Crim. Pro. 7(d) further empowers the Court, in its discretion and on a defendant's motion, to "strike surplusage from the indictment" where the allegations are "both independent of and unnecessary to the offense on which a conviction ultimately rests."[25]

### 2. The Attempt Language is Surplusage, at Most

Here, BAVER's focus on the "attempt" language in paragraph 20 of the Indictment ignores the full wording of the sentence at issue, which charges BAVER in the conjunctive with both with making and attempting to make false statements:

> 20.  On or about the dates listed below, in the District of Utah and elsewhere, ALLISON MARIE BAVER, defendant herein, *did knowingly make and attempt to make* the false statements listed below for the purposes of influencing the actions of banking institutions. . . ." (emphasis added).

As such, while the "and attempt to make" wording is unnecessary, the Indictment otherwise provides a "definite written statement of the essential facts constituting the offense charged" as required under Rule 7(c)(1).

---

[24]  *See*, *e.g.*, *United States v. Hill*, 799 F. Supp. 86, 88 (D. Kan. 1992).
[25]  *United States v. Brooks*, 438 F.3d 1231, 1237 (10th Cir. 2006), citing *United States v. Miller*, 471 U.S. 130, 136-37 (1985).

To the extent BAVER's motion is functionally a Rule 7(d) request to strike the "and attempt to make" language from paragraph 20 as surplusage, the United States does not oppose the request. Otherwise, this request to dismiss Counts 1-8 should be denied.

### B.  Counts 1-5 and 7-8 Are Not Multiplicitous

BAVER next alleges that Counts 1-5 and 7-8 are multiplicitous and should be dismissed. She is in error.

### 1.  Relevant Legal Principles

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." [26]

"The test for multiplicity is whether the individual acts alleged in the counts at issue are prohibited, or the course of conduct which they constitute. If the former, then each act is punishable separately. If the latter, there can be but one penalty." [27] Or, as the Supreme Court has stated, the Court must evaluate whether each count "requires proof of a fact which the other does not." [28] If each count requires proof of a distinct fact, there is no multiplicity problem.

In the context of § 1014 false statements, the parties appear to agree that "the making of several false statements in one single document constitutes only a single offense. . . ." [29] Contrary to BAVER's position, however, the Tenth Circuit has held that § 1014 does *not* require the false document to be presented to the bank to amount to a violation. [30]

---

[26]  *United States v. Frierson*, 698 F.3d 1267, 1269 (10th Cir. 2012) (quoting *United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007).

[27]  *United States v. Mcullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (internal citation and quotation marks omitted).

[28]  *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also United States v. Glanton*, 707 F.2d 1238, 1240 (11th Cir. 1983); *United States v. Kennedy*, 726 F.2d 546, 547-58 (9th Cir. 1984); *United States v. Gonzalez*, 933 F.2d 417, 424 (7th Cir. 1991); *Bins v. United States*, 331 F.2d 390, 393 (5th Cir. 1964).

[29]  *United States v. Bolt*, 776 F.2d 1463, 1467 (10th Cir. 1985).

[30]  *United States v. Johnson*, 732 Fed.Appx 638, 647-48 (10th Cir. 2018) (unpublished) ("If § 1014 prohibited 'making any false statement' *to* a federally insured bank 'for the purpose of influencing it in

Furthermore, the Ninth Circuit has held that the submission of multiple false documents as part of the same loan application constitute separate offenses under § 1014.[31] While the Tenth Circuit apparently has not directly addressed the issue, it has employed similar reasoning in interpreting § 1014's sister statute, 18 U.S.C. § 1001 (false statement to a federal officer).[32] In *Bettenhausen*, the defendant submitted several false documents to the IRS, all at one time, in support of a single tax return.[33] The United States charged four separate § 1001 violations – one for each document containing a false statement – and the defendant complained that the various false documents could only amount to a single violation. The Tenth Circuit disagreed, focusing on the language of the statute ("any false writing or document") and finding that "the statute aims at the making or using of each 'false writing or document' and intends the wrong connected with each to be a separate offense."[34]

In similar fashion, § 1014 also uses the singular term "any false statement or report. . . upon any application. . ." It follows, then, that the Court can employ similar logic in assessing separate violations under § 1014.

---

any way," we might agree. But § 1014 contains no such language.") (some internal punctuation omitted) (emphasis in original). BAVER takes the opposite view in her motion, citing *Reass v. United States*, 99 F.2d 752, 755 (4th Cir. 1938). But the *Johnson* Court, admittedly in an unpublished opinion, specifically disagrees with *Reass* on this point and labels as "dicta" the very language BAVER cites. *See Johnson*, 732 Fed.Appx at 648, n.6.

[31]  *Kennedy*, 726 F.2d at 547-48 (finding that § 1014 allows multiple convictions for separate documents submitted to a bank to obtain a single loan, where each document made the same false statement); *see also United States v. Miranne*, 688 F.2d 980, 985-86 (5th Cir. 1982) (holding that, where defendant made 41 copies of the same original, signed loan application, the 42 alleged counts of § 1014 false statements were not multiplicitous); *Glanton*, 707 F.2d at 1240 (holding that defendants three false signatures, while related, properly resulted in three separate § 1014 charges because "each false statement was made on a separate document.").

[32]  *United States v. Bettenhausen*, 499 F.2d 1223 (10th Cir. 1974).

[33]  *Id.* at 1234.

[34]  *Id.*

But even where the Court identifies a multiplicity error, "[m]ultiplicity is not fatal to an indictment."[35] "Indeed, the government may submit multiplicitous charges to the jury."[36]

In such instances, the "principal danger" comes at sentencing with "the possibility that the defendant will receive more than one sentence for a single offense."[37] The Tenth Circuit has suggested a multiplicity error can be remedied in several ways: (1) by an election of counts by the prosecutor prior to trial;[38] (2) through the use of appropriate jury instructions at trial;[39] or (3) vacating the multiplicitous convictions post-trial.[40]

### 2. Counts 1-8 All Allege Separate Offenses

Here, as set forth in the Indictment, each of eight alleged § 1014 counts stem from eight separate PPP loan Borrower Application Forms. BAVER signed, certified, and dated each of these false documents across seven separate dates in April 2020: six with Lendio (Counts 1-4, 7-8), who ultimately forwarded them to Northeast Bank, and two directly with Meridian Bank (Counts 5-6). Each document contains multiple false statements, with the false statements often varying from document to document. And each count in the Indictment reflects a document that is unique in its combination of date, false statements, and bank.[41]  As a result, each alleged § 1014 count requires proof of facts that the other does not, so there is no multiplicity error.

---

[35]    *Frierson*, 698 F.3d at 1269 (10th Cir. 2012) (quoting *Barrett*, 496 F.3d at 1095).
[36]    *Frierson*, 698 F.3d at 1269 (quoting *United States v. Nickl*, 427 F.3d 1286, 1301 (10th Cir. 2005).
[37]    *Bolt*, 776 F.2d at 1467 (quoting *United States v. Hearod*, 499 F.2d 1003, 1005 (1974)) (internal quotation marks omitted).
[38]    *Bolt*, 776 F.2d at 1467.
[39]    *Id.*
[40]    *Frierson*, 698 F.3d at 1269.
[41]    Indictment at ¶ 20.

BAVER asserts, however, that only one of these eight false documents was a "final" version, and that only this final version was submitted to a bank.[42]

First, as set forth above, the Tenth Circuit has not required that false documents be submitted to a bank to violate § 1014.[43] But even if the Court required otherwise, the Indictment alleges that all eight of these false documents were actually submitted to banks.[44]

Either way, there is no multiplicity error in the Indictment, and the request to dismiss Counts 1-5 and 7-8 should be denied.[45]

### C. BAVER'S Factual Challenge to Count 6 Should Be Denied

BAVER next contends that the Court should dismiss Count 6 because her alleged false statements in the PPP loan Borrower Application Form were not "knowingly" false – not, she claims, when read in context with an accompanying letter and email. In effect, BAVER asks the Court to make an inappropriate factual determination that should properly be left for a jury. Her request should be denied.

//

//

//

---

[42]     Def. Motion at 6. Contrary to BAVER's assertion that the "undisputed evidence" shows that only one "final" application was submitted, the Indictment and ABE's eight PPP loan Borrower Application Forms contradict this claim.  *See* Exhibits 1-8, attached hereto. Each of the eight Borrower Application Forms appear complete on their face, each is signed, each bears an electronic or handwritten signature with date and time stamp, and each was submitted to a bank.

[43]     *Johnson*, 732 Fed.Appx at 647-48.

[44]     Curiously, BAVER's own exhibits to her motion belie the claim that only one document went to a bank. For instance, while acknowledging that Meridian Bank received the Borrower Application Form referenced in Count 6, BAVER also includes and cites to a report of an interview with Northeast Bank Senior Vice President Brian Pinheiro (Exhibit A) in which Pinheiro describes receiving "multiple applications" from ABE.

[45]     As discussed in Section C below, to the extent BAVER is attempting to raise a factual challenge to the Indictment, such challenges can only be appropriately resolved at trial, not through a Rule 12(b)(1) pre-trial motion to dismiss.

### 1. Relevant Legal Principles

"An indictment returned by a legally constituted and unbiased grand jury. . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."[46]

Fed. R. Crim. Pro. 12(b)(1) allows a party to raise by pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*."[47] This rule "cautions the trial judge that [she] may consider on a motion to dismiss the indictment only those objections that are 'capable of determination without the trial of the general issue'. . . ."[48]

As such, an indictment may properly be dismissed if it fails to charge an offense.[49] "But it may not properly be challenged by a pretrial motion on the ground that it is not supported by adequate evidence."[50]

### 2. BAVER's Factual Disputes with the Indictment Should Be Resolved at Trial

Here, BAVER's motion to dismiss Count 6 asks the Court to resolve *the* ultimate factual issue in the case: whether BAVER knowingly lied about ABE's monthly payroll and number of employees. In support, BAVER attaches a letter and an email, both of which she claims contradict her allegedly false statements on ABE's Borrower Application Forms.

The United States disputes the meaning and significance of these additional documents, especially within the context of all the evidence the United States expects to present at trial.[51] And

---

[46]     *Costello v. United States*, 350 U.S. 359, 363 (1956).
[47]     Fed. R. Crim. Pro. 12(b)(1) (emphasis added).
[48]     *United States v. Knox*, 396 U.S. 77, 84 n.7 (1969).
[49]     *United States v. King*, 581 F.2d 800, 802 (10th Cir. 1978).
[50]     *Id. See also United States v. Erickson*, No. 2:05cr521-TS, 2006 WL 448861, at *1 (D. Utah Feb. 22, 2006) (unpublished) ("Both defendants acknowledge the well-settled general rule set forth by the Tenth Circuit in *United States v. King* that criminal defendants may generally not challenge the strength or weakness of the government's case or the sufficiency of the evidence supporting an indictment in a pretrial motion.").
[51]     For instance, the United States contends that these additional documents only make it *more* obvious that BAVER's payroll and employee certifications for ABE were knowingly false.

reaching a conclusion on this ultimate factual issue – whether BAVER knowingly lied on ABE's PPP loan Borrower Application Forms – should only follow a careful assessment of *all* that evidence. A jury trial is the appropriate venue for this factual determination, not the Court in the context of a Rule 12(b)(1) pre-trial motion to dismiss.

Accordingly, the Court should deny this motion and allow a jury to decide whether BAVER made knowing false statements in violation of § 1014.

### D. The Money Laundering Charge (Count 9) Should Stand

Finally, BAVER briefly argues that, if the Court dismisses all the § 1014 charges (Counts 1-8), it should then also dismiss the money laundering charge (Count 9), since the United States would no longer be able to prove that the funds at issue were "criminally derived."[52]

The United States acknowledges that, in the event of a dismissal of Counts 1-8, it would have a difficult time sustaining a prosecution on Count 9 alone. But as BAVER has not advanced any meritorious reason for dismissal of the prior counts, this request should also be denied.

### III

### CONCLUSION

None of BAVER's claims warrant dismissal of the charges in this case. For the reasons stated above, the Court should deny her motion to dismiss the Indictment.

DATED this 24th day of June, 2022

<div style="margin-left: 40%;">

Respectfully Submitted,
TRINA A. HIGGINS
United States Attorney

*/s/  Aaron Clark*
AARON B. CLARK
JENNIFER K. MUYSKENS
Assistant United States Attorneys
U.S. Attorney's Office for the District of Utah

</div>

---

[52] Def. Motion at 11.