TRINA A. HIGGINS, United States Attorney (#7349)
AARON B. CLARK, Assistant United States Attorney (#15404)
JENNIFER K. MUYSKENS, Assistant United States Attorney (DC#475353)
CY H. CASTLE, Assistant United States Attorney (#4808)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

FILED US District Court-UT
JUN 29 '22 PM12:28

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00520 |
| Plaintiff, | SUPERSEDING INDICTMENT |
| vs. | Counts 1-8: 18 U.S.C. § 1014 (False Statements Designed to Influence a Bank) |
| ALLISON MARIE BAVER, and ALLISON BAVER ENTERTAINMENT, LLC, | Count 9: 18 U.S.C. § 1957 (Money Laundering) |
| Defendants. | Judge Jill N. Parrish |

The Grand Jury Charges:

**Background**

At all times relevant to this Indictment:

1. Defendant ALLISON MARIE BAVER ("BAVER") was a resident of Utah.

2. ALLISON BAVER ENTERTAINMENT, LLC ("ABE") was registered with the Utah Division of Corporations on October 9, 2019. BAVER is listed as the owner and registered agent for ABE.

3.      Northeast Bank is a financial institution headquartered in Portland, ME, the accounts of which are insured by the Federal Deposit Insurance Corporation ("FDIC").

4.      Meridian Bank is a financial institution headquartered in Paoli, PA, the accounts of which are insured by the FDIC.

5.      Lendio, Inc. ("Lendio"), offers clearinghouse services for small businesses seeking various types of financing. The company, headquartered in Lehi, UT, allows its small business customers to submit loan applications that Lendio screens and submits to matched lenders.

6.      The United States Small Business Administration ("SBA") is an executive-branch agency of the United States federal government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government backed guarantees.

7.      In addition to traditional SBA funding programs, the CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

8.      One of these new programs is the SBA Paycheck Protection Program (PPP), which is a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA will forgive all or part of loans if all

employees were kept on the payroll for eight weeks and borrowers submit documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities.

9. Payroll, as defined by the PPP, excludes compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary.

10. Interested applicants apply through an existing SBA lender or any other participating federally insured financial institution. Program requirements include that the borrower business was in operation on February 15, 2020, and either had employees for whom the business paid salaries and payroll taxes or paid independent contractors as reported on a Form 1099-MISC.

11. The PPP application process requires applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contains information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner.

## Counts 1-8
18 U.S.C. § 1014
(False Statement Designed to Influence a Bank)

12. On or about April 13, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

   a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll; and

      b. ABE had 100 employees; when, in fact, ABE had no employees.

13. On or about April 14, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

      a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll; and

      b. ABE had 105 employees; when, in fact, ABE had no employees.

14. On or about April 16, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

      a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll; and

      b. ABE had 105 employees; when, in fact, ABE had no employees.

15. On or about April 23, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

      a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll; and

      b. ABE had 430 employees; when, in fact, ABE had no employees.

16. On or about April 24, 2020, defendant BAVER, on behalf of ABE, completed and submitted a PPP loan application to Meridian Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

   a. ABE's average monthly payroll was $4,769,583; when, in fact, ABE had no average monthly payroll; and

   b. ABE had 430 employees; when, in fact, ABE had no employees.

17. On or about April 25, 2020, defendant BAVER, on behalf of ABE, completed and submitted a PPP loan application to Meridian Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

   a. ABE's average monthly payroll was $4,770,583; when, in fact, ABE had no average monthly payroll; and

   b. ABE had 430 employees; when, in fact, ABE had no employees.

18. On or about April 25, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

   a. ABE's average monthly payroll was $4,770,583; when, in fact, ABE had no average monthly payroll; and

   b. ABE had 430 employees; when, in fact, ABE had no employees.

19. On or about April 26, 2020, defendant BAVER, on behalf of ABE, completed a PPP loan application through Lendio. Lendio thereafter submitted the application to

Northeast Bank. In this application, defendants BAVER and ABE made or caused to be made one or more of the following false statements:

    a. ABE's average monthly payroll was $4,770,583; when, in fact, ABE had no average monthly payroll; and

    b. ABE had 430 employees; when, in fact, ABE had no employees.

20. On or about the dates listed below, in the District of Utah and elsewhere, ALLISON MARIE BAVER and ALLISON BAVER ENTERTAINMENT, LLC, defendants herein, did knowingly make the false statements listed below for the purpose of influencing the actions of banking institutions, the deposits of which were then insured by the FDIC, in connection with PPP loan applications for $10,000,000:

| Count | Date | Bank | False Statements |
|---|---|---|---|
| 1 | 4/13/2020 | Northeast Bank | a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll;<br><br>b. ABE had 100 employees; when, in fact, ABE had no employees; |
| 2 | 4/14/2020 | Northeast Bank | a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll;<br><br>b. ABE had 105 employees; when, in fact, ABE had no employees; |
| 3 | 4/16/2020 | Northeast Bank | a. ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll;<br><br>b. ABE had 105 employees; when, in fact, ABE had no employees; |

| Count | Date | Bank | False Statements |
|---|---|---|---|
| 4 | 4/23/2020 | Northeast Bank | a.   ABE's average monthly payroll was $4,000,000; when, in fact, ABE had no average monthly payroll;<br><br>b.   ABE had 430 employees; when, in fact, ABE had no employees; |
| 5 | 4/24/2020 | Meridian Bank | a.   ABE's average monthly payroll was $4,769,583; when, in fact, ABE had no average monthly payroll;<br><br>b.   ABE had 430 employees; when, in fact, ABE had no employees; |
| 6 | 4/25/2020 | Meridian Bank | a.   ABE's average monthly payroll was $4,770,583; when, in fact, ABE had no average monthly payroll;<br><br>b.   ABE had 430 employees; when, in fact, ABE had no employees; |
| 7 | 4/25/2020 | Northeast Bank | a.   ABE's average monthly payroll was $4,770,583; when, in fact, ABE had no average monthly payroll;<br><br>b.   ABE had 430 employees; when, in fact, ABE had no employees; |
| 8 | 4/26/2020 | Northeast Bank | a.   ABE's average monthly payroll was $4,770,583; when, in fact, ABE had no average monthly payroll;<br><br>b.   ABE had 430 employees; when, in fact, ABE had no employees; |

All in violation of 18 U.S.C. § 1014.

//

//

## Count 9
### 18 U.S.C. § 1957
### (Money Laundering)

21.     The factual allegations set forth in paragraphs 1-19 above are incorporated by referenced and realleged as though fully set forth herein.

22.     On or about May 11, 2020, Meridian Bank funded a PPP loan to ABE for $10,000,000, depositing the funds into ABE's Meridian Bank account ending in x2022.

23.     On or about May 12, 2020, BAVER transferred $9,999,500 of those funds to ABE's Meridian Bank account ending in x8439.

24.     On or about July 23, 2020, BAVER transferred $150,000 of ABE's PPP loan funds to Company X, from ABE's Meridian Bank account ending in x8439, for the purpose of investing in a film entitled *No Man of God*.

25.     On or about the date listed below, in the District of Utah and elsewhere, ALLISON MARIE BAVER and ALLISON BAVER ENTERTAINMENT, LLC, defendants herein, did knowingly engage and attempt to engage in the following monetary transaction by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, and such property was derived from the specified unlawful activity of False Statement to a Bank as alleged above, in instances including but not limited to the count below:

| Count | Date | Monetary Transaction |
|---|---|---|
| 9 | 7/23/2020 | $150,000 transfer to Company X to invest in the film entitled *No Man of God*, from ABE's Meridian Bank account ending in x8439, for the purpose of investing in a movie |

All in violation of 18 U.S.C. § 1957.

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 982(a)(2), upon conviction of any offense violating 18 U.S.C. § 1014, the defendants shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of the scheme to defraud. The property to be forfeited includes, but is not limited to:

- $9,538,720.95;
- a money judgment equal to the value of any property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p);
- substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957, the defendants shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property. The property to be forfeited includes, but is not limited to:

- $150,000 investment in film entitled *No Man of God*;
- a money judgment equal to the value of all property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); and
- substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

GRAND JURY'S PROBABLE CAUSE FINDING REGARDING FORFEITURE

The grand jury finds probable cause to believe that:

1)  The defendants have committed the crimes specified in the above forfeiture notice;

2)  The $9,538,720.95 is constituted or derived from proceeds traceable to making a false statement to a bank;

3)  The $150,000 investment in film entitled *No Man of God* is involved in money laundering or property traceable to property involved in money laundering; and

4)  In the event of the defendants' conviction, such property would be subject to forfeiture:

   a. $9,538,720.95; and

   b. $150,000 investment in film entitled *No Man of God*.

A TRUE BILL:

/S/
FOREPERSON OF GRAND JURY

TRINA A. HIGGINS
United States Attorney


AARON B. CLARK
Assistant United States Attorney