Scott F. Garrett (8687)
**DENTONS DURHAM JONES PINEGAR P.C.**
192 East 200 North, Third Floor
St. George, Utah 84770
Telephone: (435) 674-0400
Facsimile: (453) 628-1610
scott.garrett@dentons.com

R. Blake Hamilton (11395)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
blake.hamilton@dentons.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALLISON MARIE BAVER, and ALLISON BAVER ENTERTAINMENT, LLC,<br><br>Defendants. | **DEFENDANT'S MOTION TO DISMISS COUNTS 1-9 OF THE SUPERSEDING INDICTMENT**<br><br>Case No. 2:21-cr-00520<br><br>Judge Jill N. Parrish |

Under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, the Defendants Allison Marie Baver ("Ms. Baver") and Allison Baver Entertainment, LLC ("ABE"), through counsel, submits this motion and moves to dismiss the Superseding Indictment and each count therein as follows:

1

SLC_1070134.1

- Counts 1-5, 7 and 8 are defective on the grounds that the charges represent the same offense in more than one count (multiplicity);

- Count 6 is defective on the basis that ABE's Loan Application should be considered in its entirety and when considering all relevant documents and evidence, it is clear that the Defendant did not make a false statement; and

- Count 9 is defective as there is no legal basis for Count 9.

## **INTRODUCTION**

Ms. Baver was indicted on December 15, 2021 alleging eight counts of False Statement to a Bank under 18 U.S.C. § 1014 and alleging one count of Money Laundering under 18 U.S.C. § 1957. A Superseding Indictment was filed on June 29, 2022, and alleged identical counts against Ms. Baver and adds ABE as a defendant. The Superseding Indictment alleges that Ms. Baver, on behalf of ABE made or caused to be made certain false statements in PPP loan applications. The Superseding Indictment specifically alleges that Ms. Baver, on behalf of ABE, made six false statements through Lendio (a loan application and matching service) to North Eastern Bank and two false statements to Meridian Bank. The alleged false statements all relate to ABE's average monthly payroll and the number of employees.

Count 9 alleges that Ms. Baver and ABE knowingly engaged and attempted to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally deprived property of a value of greater than $10,000 when Ms. Baver, on behalf of ABE, transferred $150,000 of ABE's PPP funds to Company X to invest in a film entitled *No Man of God*.

## FACTS

1.      ABE was a limited liability company organized under the laws of the State of Utah on or around October 9, 2019. ABE is now a Delaware company. ABE is solely owned by Ms. Baver.

2.      In 2019, ABE received an offer from A & E Network to produce a television show to be distributed in the 4th quarter of 2020. Production of two films was also scheduled to begin in the spring of 2020 (the "Projects").

3.      Due to the Covid-19 pandemic, the Projects were in danger of being tabled or terminated for lack of funding.

4.      In order to maintain the viability of the Projects, Ms. Baver, acting on behalf of ABE, sought and applied—in good faith—for a loan through the Paycheck Protection Program ("PPP").

5.      In April 2020, in the roll out of the PPP loan application process, Ms. Baver used Lendio's web portal relating to PPP loans.

6.      The Government's evidence states that every time Ms. Baver updated the singular electronic application through Lendio, a new Docusign document was created and sent to Northeast Bank. *See* Interview of Brian Pinheiro, attached hereto as **Exhibit A**. However, the bank considered each Docusign document to be part of the same application because they all had the same application ID number. *Id.*

7.      Despite using Lendio for assistance in preparing the PPP loan application, Ms. Baver never completed the application or submitted it for approval through Lendio. *See* April 16, 2020 email from Lendio, attached as **Exhibit B** ("Unfortunately, it appears your application was

either missing data or had invalid information and we were not able to submit it for approval."). According to Lendio, ABE's PPP loan application was never submitted to Northeast Bank.

8. Notwithstanding this, the Government charged Ms. Baver and ABE with six (6) counts of submitting a false statement/application to Northeast Bank on April 13, 14, 16, 23, 25, 26, 2020.

9. On April 24, 2020, Allison Baver completed and submitted her singular on-line PPP loan application ("Application") to Meridian Bank on behalf of ABE, which included various business records. *See* PPP Borrower Application Form, attached hereto as **Exhibit C**.

10. On April 24, 2020, email correspondence to the Senior Vice President of Meridian Bank disclosed ABE's unique business situation and the lack of payroll information for the past 12 months, including January or February of 2020. *See* Email Correspondence (the "Correspondence"), attached hereto as **Exhibit D**.

11. The Correspondence also disclosed that production activity was scheduled to begin in the spring of 2020 and would employ 430 people.  Included in the email was a link to a Google Drive folder containing ABE's "PPP Application Package."

12. The loan application form contained field boxes for "number of employees" and "average monthly payroll."

13. In the field boxes for "number of employees," Ms. Baver, on behalf of ABE, entered "430."

14. In the field box for "average monthly payroll," Ms. Baver, on behalf of ABE, entered "$4,770,583."

4

15. Ms. Baver submitted the Application with a spreadsheet titled "Allison Baver Entertainment Payroll Budget—Spring 2020 ("Budget").

16. The Budget, which clearly indicates that its figures are actual cost projections using industry requirements for "Spring 2020," is the basis for the number presenting 430 employees.

17. Meridian Bank provided a spreadsheet calculator to determine "average monthly revenue" ("Program Calculation").

18. The Program Calculation includes field boxes for salary, wages, and other employee compensation for each month in 2020.

19. Ms. Baver filled out the Program Calculation, in which she provided no figures for the first two months of 2020; for each of March through May 2020, Ms. Baver entered $4,770,583.

20. The Program Calculation is the source material for the claim of $4,770,583 in average monthly payroll in the Application form.

21. As part of that Application, Ms. Baver also submitted a Good Faith Certification ("Certification"), which was a certification required by the CARES Act demonstrating the need for the loan and submitted in the form of a letter.

22. Meridian Bank approved the Application on or around May 11, 2020 and deposited $10,000,000 into a Meridian bank account owned by ABE.

23. In subsequent months, ABE used some of the loan proceeds to fund the Projects. None of the loan proceeds were used in any manner not authorized by the CARES Act.

**ARGUMENT**

I.    **MOTION TO DISMISS STANDARD.**

For purposes of a Motion to Dismiss under Rule 12 of the Federal Rules of Criminal Procedure, the court must take all well pled facts alleged in the Indictment as true.[1] "A court can dismiss an indictment pretrial for legal deficiencies, such as where it fails to allege a crime within the terms of the applicable statute."[2] In considering a motion to dismiss, a court "may make preliminary findings of fact necessary to decide the legal questions' presented by [the Motion], but 'the court may not invade the province of the ultimate finder of fact.'"[3] The fact finder "is concerned with the general issue of guilt," but a motion that requires some factual determinations may still "be decided before trial if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense," or in other words, the pretrial claim is not "intertwined with evidence concerning the alleged offense."[4] This Motion seeks dismissal of Counts 1-5, 7, and 8 of the Indictment against Ms. Baver based solely on legal issues not within the purview of the jury, which requires only one factual determination by the Court: Ms. Baver only submitted one final PPP application for approval (Count 6). This fact is not in dispute, does not overlap with any material elements of the charged crime, and therefore is appropriate for the Court to find this fact in the context of a Motion to Dismiss. This Motion seeks dismissal of Count 6 on the basis of the Court looking at what should fairly be considered and finding that, when considered in totality, the evidence is defective, fatally flawed, and does not constitute a crime.

---

[1] *United States v. J & J Truck Leasing, Inc.*, 258 F.Supp. 105, 107 (D. Kan. 1966).
[2] *United States v. Hoskins*, 73 F.Supp.3d 154, 161 (D. Conn. 2014)
[3] *Hoskins*, at 161 (quoting *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993)).
[4] *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).

6

## II. COUNTS 1-5, 7, AND 8 OF INDICTMENT SHOULD BE DISMISSED AS DEFECTIVE.

### A. Counts 1-5, 7, and 8 are multiplicitous and should be dismissed.

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been [allegedly] committed."[5] Criminalizing a single offense multiple times violates the Double Jeopardy Clause of the Fifth Amendment, because it subjects a person to punishment for the same crime more than once.[6]

The Supreme Court has defined the test for determining whether or not two offenses charged separately in an indictment are really one offense, known as the "*Blockburger*" test.[7] That test examines whether each charged offense contains an element not contained in the other charged offense.[8] "If there is an element in each offense that is not contained in the other, they are not the same offense for purposes of double jeopardy, and they can both be prosecuted."[9] Conversely, if the elements are identical, they are the same offense for which the prosecution of the additional offense violates double jeopardy. Counts 1-5, 7 and 8 require the same proof and elements as Count 6, and, therefore, violate the Double Jeopardy Clause.

"The making of a number of false statements to a lending institution in a single document constitutes only one criminal violation under 18 U.S.C. § 1014."[10] Here, the Government has charged Ms. Baver with 8 counts under section 1014 for ultimately only one PPP loan

---

[5] *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).
[6] *Id*.
[7] Id. (citing Blockburger v. United States, 284 U.S. 299, 306 (1932)).
[8] *Id.* at 146
[9] *Id.*
[10] *United States v. Pierce*, 733 F.2d 1474, 1476 (11th Cir. 1984) (quoting *United States v. Sue*, 586 F.2d 70, 71 (8th Cir. 1978)).

7

application document. Each count addresses an update that Ms. Baver made, on behalf of ABE, to ABE's online form through Lendio. The undisputed evidence is that Ms. Baver did not complete ABE's PPP loan application in one sitting, but made changes to ABE's electronic form over time. Although it is not clear from the Superseding Indictment, the undisputed evidence is that ABE only actually submitted one final PPP loan application to Meridian Bank. The other charges in the Superseding Indictment are related to changes Ms. Baver made on ABE's form before the final version was submitted to the bank. The Government has identified each instance in which Ms. Baver made changes on behalf of ABE as a separate charge, which is both factually and legally incorrect. For all but one of the 8 counts against Ms. Baver and ABE for making a false statement, only one was actually submitted by Ms. Baver on behalf of ABE to the bank for approval. The remaining 7 were updates or changes to an ongoing electronic form which had not been submitted for approval.

It is apparent from the evidence that Ms. Baver and ABE were not intending to file applications with Northeast Bank. The April 16th email from Lendio is telling as it informs Ms. Baver and ABE that their "application was either missing data or had invalid information and we were not able to submit it for approval." *See* Exhibit B. Notwithstanding this, the automated system used by Lendio, according to the Government and Northeast Bank, continued to send Docusign updates to Northeast Bank each time Ms. Baver made updates to the application, both before and after the April 16th email from Lendio, and all without Ms. Baver's or ABE's knowledge or consent.

The facts and the elements for Counts 1-8 of the Superseding Indictment are identical. The Government is relying upon the same on-line form, with occasional updates from Ms. Baver

8

on behalf of ABE, and the same alleged false statements (with slight variations) for each of their 8 counts.  According to the *Blockburger* test this violates the Double Jeopardy Clause by prosecuting Ms. Baver and ABE multiple times for the same offense.   Counts 1-5, and 7 and 8 should be dismissed.

### III.  COUNT 6 SHOULD BE DISMISSED AS MS. BAVER AND ABE DID NOT MAKE A FALSE STATEMENT TO MERIDIAN BANK.

#### A. PPP loan guidance required the filing of a Good Faith Certification by the borrower in conjunction with the Application.

On April 23, 2020, the Small Business Administration (SBA), in consultation with the Department of Treasury issued additional guidance concerning the implementation of the PPP, established by section 1102 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act or the Act).  This additional guidance was set forth in FAQ 31, which states as follows:

1. **Question:** Do businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?

   **Answer:** In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application.  Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary.  Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."  Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business.  For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification.

#### B. Ms. Baver filed the required Good Faith Certification in conjunction with ABE's Application to Meridian Bank.

9

In addition to initialing the certifications on the Application, Ms. Baver, on behalf of ABE, submitted with ABE's Application a Good Faith Letter ("Certification") as follows:



RE: Allison Baver Entertainment PPP Loan, Good Faith Letter

To Whom This May Concern,

Thank you for supporting Allison Baver Entertainment and our PPP loan financing. Please accept this as my good faith statement that the funds will paid back in full according to the loan terms.

Allison Baver Entertainment proudly began operations October 9th, 2019 and received an offer from A + E Network on November 25th, 2019 to distribute the TV show America's Angels in the 4th quarter of 2020. Our slate of projects include America's Angels and two films and was scheduled to begin productions in the spring 2020, employing 430 people.

The COVID-19 pandemic has completely disabled Allison Baver Entertainment. The timing of the pandemic has been right as we were gearing up to start productions and caused drastic financial investment losses preventing planned employment of these respective teams.

For this reason, Allison Baver Entertainment is applying for the PPP loan for $8.3M to continue our operations and finance employment lost due to COVID-19. Nearly 90% of our total budget is labor costs directly employing workers in the gig industry with the remaining budget allocated to production utilities, rents, and insurance. We hope to save these jobs and with your loan approval grow Allison Baver Entertainment beyond these transformational times.

Enclosed, please find a Table of Contents with all of the information you will need including operational source documents along with our new business payroll and supporting materials for loan calculation. I also want you to know, that America's Angels is a TV show to help women driven businesses. With your approval of the PPP loan, we will have a positive impact on many for years to come.

Thank you again for supporting the PPP Loan for Allison Baver Entertainment. If you have any questions, please contact me at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or ▮▮▮▮▮▮▮▮▮▮.

Thank you,

Allison Baver
Founder, Allison Baver Entertainment

This Certification makes clear that ABE began operations on October 9, 2019, which clearly demonstrates that ABE did not have any payroll prior to that. In addition, the

Certification explains that COVID-19 has completely disabled the company and the timing impacted ABE's ability to start production. According to the Certification, ABE was scheduled to start production in the Spring of 2020, employing 430 people. The Certification clarifies the Application and makes it so that the Application is not false.

As further proof, the Correspondence between Ms. Baver, on behalf of ABE, and Meridian Bank is telling. Particularly relevant portions of the Correspondence read as follows:

- Allison Baver Entertainment is eligible for PPP loan as a new business established in Oct. 2019 and from what folks at the SBA has told me is to work with a banks to qualify the loan using different applicable time period for the payroll, which in my case would be the months disabled due to Covid-19.
- Right now most banks are only accepting existing customers and the ones I have spoken with require the past 12 months or Jan./Feb. 2020 payroll, which does not apply to my new entertainment company because of the timeline, I had only paid an attorney for the projects in operations.
- You see, we had a TV show and two films scheduled to start production in Spring 2020 and these projects employ 430 people with the PPP loan amount of $8.3M.
- I have a Good Faith Statement and Table of Contents of the business and payroll documents found at below downloadable link.

The Certification and the Correspondence makes clear that ABE has not had 430 employees and has not had monthly payroll of $4,769,583. Those are extrapolations based on the Program Calculation method and ABE's actual costs for the projects slated for production, which were disabled due to COVID-19.

Finally, the Program Calculation, a spreadsheet calculator that was provided by Meridian as a means to calculate "average monthly payroll,"[11] clearly showed that ABE's payroll figures reflected projections for projects that were still scheduled to begin—not ABE's then existing

---

[11] The methodology for calculating average monthly income required guidance because of its variable nature. The exact methodology was subject to change, depending on specific circumstances of the applicant. For example, a different method of calculation was used for new businesses and another method of calculation was used for seasonal businesses.

payroll expenses. The fields for the first two months of 2020 are empty. The only values provided were for March, April, and May, but April had not yet passed, and May had not even begun. That Ms. Baver, on behalf of ABE, did not intend to communicate that ABE presently employed 430 people is obvious. One could not look at the Application as a whole and conclude otherwise.

In response to ABE's Application and Certification, Meridian Bank approved the loan consistent with their authority delegated to them under the Act.[12]

To obtain a conviction under §1014 the government must establish two propositions: it must demonstrate (1) that the defendant "knowingly" made a "false statement or report," or "willfully overvalued[d] any land, property or security" and (2) that he did so "for the purpose of influencing in any way the action of [a described financial institution] upon any application, advance, …. Commitment, or loan." Here, the government cannot establish that the Defendant knowingly made a false statement in an application because the Defendant made it clear that she did not have a history of payroll as ABE was a new business. The numbers set forth in the Application are extrapolations and those facts were not withheld from the bank.

As a general rule, the Court is limited to the face of the pleading, and all facts therein must be accepted as true. The pleading should, however, be fairly construed.[13] To this end the Court should read the indictment and enough of the matters incorporated therein by reference to enable it to determine whether a cause of action has been stated.[14]

---

[12] Under the Act, PPP lenders are deemed to have delegated authority to make and approve PPP loans without prior SBA review. *See* SBA Procedural Notice 5000-20092.
[13] *United States v. Barner*, (1961, ND Cal) 195 F.Supp 103.
[14] *United States v. Ginzburg*, (1963, ED PA.) 224 F.Supp 129.

Here, in fairness the Court should consider the Application submitted by the Defendant in its entirety as it is referenced and incorporated by the Superseding Indictment. It would be unfair to allow the Government to cherry-pick certain parts of the Application to the exclusion of other parts that are beneficial to the Defendant.[15] The Federal Rules of Evidence Rule 106 supports this assertion and states that "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time.

Moreover, no reasonable person could find that banks—who are in the business of issuing business loans—would rely *exclusively* on two boxes on a single page as the basis to approve a ten-million dollar loan. No reasonable person could find that Ms. Baver knew that the bank would approve such a loan without reviewing the entire application, including the documents *that Meridian itself requested*. It is not reasonable to conclude that the information provided on the application form—when viewed together with the disclosures—was given for the purpose of influencing Meridian unless Ms. Baver *knew* that Meridian would ignore everything not on that single application form.

The facts of this case bear resemblance to another case in which a loan applicant fully disclosed the presence of a pre-existing mortgage obligation on a property, while also offering a first mortgage on the same property as collateral for the loan. *U.S. v. Colon-Munoz*, 192 F.3d 210, 225. The purpose of the loan (to pay off the pre-existing mortgage) was also fully disclosed. Yet, as is the case here, the Government alleged that the applicant had committed loan

---

[15] It is unknown if the Certification was presented to the Grand Jury (it is not specifically a part of the Indictment, although it should be incorporated by reference to the Application) and so the Defendant is asking this Court to consider the entire application and the Certification as it should fairly be considered.

13

application fraud, a violation of 18 U.S.C. § 1014. The court agreed with the applicant that under the circumstances, "there was insufficient evidence from which a jury could reasonably conclude that the statement (even if false) was made for the purpose of influencing the actions" of a bank. *Id.* That is true in this case as well, particularly when one considers ABE's entire application, which clarifies any of the statements or assertions of concern to the Government.

When the Application is read as a whole, it is clear that the Defendant did not "knowingly" or otherwise make a false statement to the bank. When considered in its entirety, the Court should find that there is a defect in the Indictment and dismiss it accordingly as the Indictment is not supported by facts necessary to establish a crime under §1014.

### IV. COUNT 9 SHOULD BE DISMISSED AS THE GOVERNMENT CANNOT PROVE THAT THE MONEY OR PROCEEDS IS CRIMINALLY DEPRIVED PROPERTY.

Count 9 is filed under 18 U.S.C. 1957 which states as follows:

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally deprived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

18 U.S.C. 1957.

This Count can be resolved by simply looking at the definition of "criminally deprived property." "Criminally deprived property" means any property constituting, or derived from, proceeds obtained from a criminal offense. *Id.* at (f)(2).

For the Defendant to be convicted under 18 U.S.C. 1957, she would have to be convicted of one of the first 8 counts. If she is not convicted of one of the first 8 counts then the property is not "criminally deprived property" and she could not be convicted of this Count. If the Court

14

dismisses Counts 1-8 of this Indictment pursuant to this Motion, this Count 9 should likewise be dismissed as being defective.

## CONCLUSION

Based upon the foregoing, Counts 1-5, 7 and 8 should be dismissed as they violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Count 6 should be dismissed because when considering the Application as a whole, as the Court must do, it is clear that Ms. Baver nor ABE made a false statement to a bank as required by the statute. And, finally, if Counts 1-8 are dismissed, there is no basis for Count 9 as it only relates to criminally deprived property, which does not exist in this case. For the foregoing reasons the Superseding Indictment should be dismissed with prejudice.

DATED: July 26, 2022.

**DENTONS DURHAM JONES PINEGAR P.C.**

/s/ *R. Blake Hamilton*
R. BLAKE HAMILTON
SCOTT F. GARRETT
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July 2022, I served a signed copy of the foregoing on all counsel of record by submitting the same for electronic filing.

/s/ *Melani Thatcher*

SLC_1070134.1