TRINA A. HIGGINS, United States Attorney (#7349)
AARON B. CLARK, Assistant United States Attorney (#15404)
JENNIFER K. MUYSKENS, Assistant United States Attorney (DC#475353)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ALLISON MARIE BAVER, and<br>ALLISON BAVER ENTERTAINMENT, LLC,<br><br>　　　　Defendants. | Case No. 2:21-CR-520-JNP<br><br>**Response in Opposition to Defendant's Motion to Dismiss Superseding Indictment**<br><br>Honorable Jill N. Parrish |

Defendants ALLISON BAVER and ALLISON BAVER ENTERTAINMENT, LLC (collectively, the "Defendants") have moved to dismiss the Superseding Indictment alleging: (1) Counts 1-5 and 7-8 all charge the same offense (multiplicity); (2) Count 6 is unsupported by the evidence; and (3) assuming the Court dismisses Counts 1-8, it must also dismiss Count 9. For the reasons set forth below, each of the Defendants' claims fails, and the Court should deny the motion in its entirety.

# I

# RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the Superseding Indictment (hereafter, the "Indictment"), defendant ALLISON BAVER ("BAVER") owns and operates defendant ALLISON BAVER ENTERTAINMENT, LLC ("ABE"). BAVER registered ABE with the Utah Division of Corporations on October 9, 2019.[1]

## The CARES Act and PPP Loan Application

In March 2020, the newly signed CARES Act created, among other things, the Small Business Administration's (SBA's) Payroll Protection Program (PPP). This program provided a loan to eligible small businesses to help keep their workers on payroll through the COVID-19 pandemic. If borrower businesses met the necessary conditions, the SBA would forgive all or parts of the loan.[2]

Among the requirements for these PPP loans, borrowers needed to (1) be in operation on February 15, 2020, and (2) have either employees for whom the business paid salaries and payroll taxes, or paid independent contractors as reported on a Form 1099-MISC.[3]

To apply for a PPP loan, businesses needed to submit a Borrower Application Form through an SBA-approved financial entity. On the first page of this two-page form, applicants supplied information about the business's average monthly payroll and number of employees, among other things.[4]

The second page of the Borrower Application Form required applicants to make several "good faith" certifications, including the following:

---

[1]   Indictment at ¶ 2.
[2]   Indictment at ¶¶ 7-8.
[3]   Indictment at ¶ 10.
[4]   Indictment at ¶ 11.

2

- "The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;"

- "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule;"

- "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."[5]

**Defendants Seek a PPP Loan Through Lendio**

BAVER sought a PPP loan for ABE at least as early as April 13, 2020. On that date, she completed a Borrower Application Form and submitted it to Lendio, Inc. (Lendio).[6] Lendio is a business that offers clearinghouse services for small businesses seeking various types of financing. The company allows customers to submit loan applications (including PPP loan applications) to Lendio that it thereafter screens and submits to matched lenders.[7]

In ABE's April 13, 2020, Borrower Application Form submitted to Lendio, BAVER claimed ABE's average monthly payroll was $4,000,000 and that ABE had 100 employees.[8] BAVER, on behalf of ABE, signed the application and further initialed each of the required certifications – including that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."[9]

---

[5]   *See, e.g.,* Exhibit 1 – ABE's April 13, 2020, PPP loan Borrower Application Form to Northeast Bank.
[6]   Indictment at ¶ 12.
[7]   Indictment at ¶ 5.
[8]   Indictment at ¶ 12.
[9]   Exhibit 1, p. 2.

As alleged in the Indictment, BAVER's certification notwithstanding, ABE had no average monthly payroll and no employees at the time.[10]

In the two weeks that followed, BAVER, on behalf of ABE, submitted at least five[11] additional PPP loan Borrower Application Forms to Lendio: on April 14,[12] April 16,[13] April 23,[14] April 25,[15] and April 26, 2020.[16] In each of these forms, all of which BAVER signed and certified on behalf of ABE, BAVER attested that ABE's average monthly payroll was either $4,000,000 or $4,770,583. She further attested that ABE had either 105 or 430 employees.

But, as alleged in the Indictment, at the times BAVER completed each of these forms, ABE actually had no average monthly payroll and no employees.[17]

In early May 2020, Lendio forwarded each of ABE's six completed Borrower Application Forms to Northeast Bank.[18]

---

[10] Indictment at ¶ 12.
[11] Records from Northeast Bank indicate that BAVER and ABE actually submitted twelve separate PPP loan Borrower Application Forms to Lendio – all with distinct timestamps on BAVER's signatures. The Indictment, however, limits its allegations to one per day in which BAVER and ABE submitted a Borrower Application Form.
[12] Indictment at ¶ 13. *See also* Exhibit 2 – ABE's April 14, 2020, PPP loan Borrower Application Form to Northeast Bank.
[13] Indictment at ¶ 14. *See also* Exhibit 3 – ABE's April 16, 2020, PPP loan Borrower Application Form to Northeast Bank.
[14] Indictment at ¶ 15. *See also* Exhibit 4 – ABE's April 23, 2020, PPP loan Borrower Application Form to Northeast Bank.
[15] Indictment at ¶ 18. *See also* Exhibit 5 – ABE's April 25, 2020, PPP loan Borrower Application Form to Northeast Bank.
[16] Indictment at ¶ 19. *See also* Exhibit 6 – ABE's April 26, 2020, PPP loan Borrower Application Form to Northeast Bank.
[17] Indictment at ¶¶ 13-15, 18-19.
[18] Indictment at ¶¶ 13-15, 18-19.

**Defendants Also Seek (and Obtain) a PPP Loan for ABE Through Meridian**

Meanwhile, on April 24[19] and April 25, 2020,[20] BAVER, on behalf of ABE, also personally and directly submitted separate PPP loan Borrower Application Forms for ABE to Meridian Bank. On these two application forms, both of which BAVER likewise signed and certified on behalf of ABE, BAVER again attested that ABE had 430 employees and an average monthly payroll of either $4,769,583 or $4,770,583.[21]

But again, as alleged in the Indictment, at the time of these applications, ABE had no average monthly payroll and no employees.[22]

Even so, on May 11, 2020, Meridian Bank funded a PPP loan to ABE for $10,000,000.[23]

And on July 23, 2020, BAVER transferred $150,000 of ABE's PPP loan funds to Company X to invest in a film entitled *No Man of God*.[24]

**The Superseding Indictment**

On December 15, 2021, a grand jury returned an Indictment in this case, charging BAVER with eight separate counts of making false statements designed to influence a bank, in violation of 18 U.S.C. § 1014, as well as a single count of money laundering, in violation of 18 U.S.C. § 1957. On June 29, 2022, the grand jury returned the Superseding Indictment in this case, adding ABE as a defendant and charging the Defendants with the same nine counts as alleged in the initial Indictment.

---

[19]  Indictment at ¶ 16. *See also* Exhibit 7 – ABE's April 24, 2020, PPP loan Borrower Application Form to Meridian Bank.
[20]  Indictment at ¶ 17. *See also* Exhibit 8 – ABE's April 25, 2020, PPP loan Borrower Application Form to Meridian Bank.
[21]  Indictment at ¶¶ 17-18. *See also* Exhibits 7-8.
[22]  Indictment at ¶¶ 17-18.
[23]  Indictment at ¶ 22.
[24]  Indictment at ¶ 24.

II

**THE MOTION TO DISMISS SHOULD BE DENIED**

    A.    **Defendants' Motion Improperly Asks This Court to Resolve Disputed Factual Issues**

Defendants' arguments for dismissal of Counts 1-8 (and, ultimately Count 9) are premised on what they argue is a fact that is "not in dispute" – that is, that the Defendants submitted only one "final" PPP application.[25] The United States disputes this factual statement. As alleged in the Indictment, over the course of two weeks, BAVER, on behalf of ABE, prepared and submitted numerous PPP loan applications.[26] The Defendants now attempt to insert language that appears nowhere in the Indictment by claiming that BAVER only submitted one "final" PPP application, and that this is an undisputed fact the Court may consider. The allegations in the Indictment make clear that the number of submitted PPP applications is a disputed factual issue, and the United States objects to the Court's consideration of this as an "undisputed" fact for purposes of considering the Defendants' motion to dismiss.

The starting place for this Court's review of the Defendants' motion to dismiss is not the claims or facts produced by the parties, but rather, the language of the Indictment.[27] In this case, the Indictment alleges that Defendants submitted multiple PPP applications.[28] Where operative facts are disputed and where the government objects to the Court's consideration of facts that are alleged to be undisputed, Rule 12 does not authorize the Court to dismiss the counts.[29] Both Rule 12(b) and controlling Tenth Circuit case authority limit the nature of what a court can resolve in a motion to dismiss. As the Defendants' motion concedes, the factual issue of whether the Defendants submitted

---

[25] Def. Motion at 6.
[26] Indictment, ¶¶ 12-20.
[27] *See, e.g., United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)("Courts should refrain from considering evidence outside the indictment when testing its legal sufficiency.").
[28] Indictment, ¶¶ 12-20.
[29] *Id.*, at 1088. *See also United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010).

only one application is necessary to decide their legal claims regarding Counts 1-8 (and ultimately, Count 9).[30] Because a disputed factual issue that is material to the charged crimes exists, Defendants' motion to dismiss should be denied.

### B. Counts 1-5 and 7-8 Are Not Multiplicitous

The Defendants allege that Counts 1-5 and 7-8 are multiplicitous and should be dismissed. The Defendants' allegation is without merit.

#### 1. Relevant Legal Principles

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior."[31]

"The test for multiplicity is whether the individual acts alleged in the counts at issue are prohibited, or the course of conduct which they constitute. If the former, then each act is punishable separately. If the latter, there can be but one penalty."[32] Or, as the Supreme Court has stated, the Court must evaluate whether each count "requires proof of a fact which the other does not."[33] If each count requires proof of a distinct fact, there is no multiplicity problem.

In the context of § 1014 false statements, the parties appear to agree that "the making of several false statements in one single document constitutes only a single offense. . . ."[34] Contrary to the Defendants' position, however, the Tenth Circuit has held that § 1014 does *not* require the false document to be presented to the bank to amount to a violation.[35]

---

[30] Def. Motion at 6.
[31] *United States v. Frierson*, 698 F.3d 1267, 1269 (10th Cir. 2012) (quoting *United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007).
[32] *United States v. Mcullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (internal citation and quotation marks omitted).
[33] *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also United States v. Glanton*, 707 F.2d 1238, 1240 (11th Cir. 1983); *United States v. Kennedy*, 726 F.2d 546, 547-58 (9th Cir. 1984); *United States v. Gonzalez*, 933 F.2d 417, 424 (7th Cir. 1991); *Bins v. United States*, 331 F.2d 390, 393 (5th Cir. 1964).
[34] *United States v. Bolt*, 776 F.2d 1463, 1467 (10th Cir. 1985).
[35] *United States v. Johnson*, 732 Fed.Appx 638, 647-48 (10th Cir. 2018) (unpublished) ("If § 1014 prohibited 'making any false statement' *to* a federally insured bank 'for the purpose of influencing it in

Furthermore, the Ninth Circuit has held that the submission of multiple false documents as part of the same loan application constitute separate offenses under § 1014.[36] While the Tenth Circuit apparently has not directly addressed the issue, it has employed similar reasoning in interpreting § 1014's sister statute, 18 U.S.C. § 1001 (false statement to a federal officer).[37] In *Bettenhausen*, the defendant submitted several false documents to the IRS, all at one time, in support of a single tax return.[38] The United States charged four separate § 1001 violations – one for each document containing a false statement – and the defendant complained that the various false documents could only amount to a single violation. The Tenth Circuit disagreed, focusing on the language of the statute ("any false writing or document") and finding that "the statute aims at the making or using of each 'false writing or document' and intends the wrong connected with each to be a separate offense."[39]

In similar fashion, § 1014 also uses the singular term "any false statement or report. . . upon any application. . ." It follows, then, that the Court can employ similar logic in assessing separate violations under § 1014.

But even where the Court identifies a multiplicity error, "[m]ultiplicity is not fatal to an indictment."[40] "Indeed, the government may submit multiplicitous charges to the jury."[41]

---

any way," we might agree. But § 1014 contains no such language.") (some internal punctuation omitted) (emphasis in original).
[36] *Kennedy*, 726 F.2d at 547-48 (finding that § 1014 allows multiple convictions for separate documents submitted to a bank to obtain a single loan, where each document made the same false statement); *see also United States v. Miranne*, 688 F.2d 980, 985-86 (5th Cir. 1982) (holding that, where defendant made 41 copies of the same original, signed loan application, the 42 alleged counts of § 1014 false statements were not multiplicitous); *Glanton*, 707 F.2d at 1240 (holding that defendants three false signatures, while related, properly resulted in three separate § 1014 charges because "each false statement was made on a separate document.").
[37] *United States v. Bettenhausen*, 499 F.2d 1223 (10th Cir. 1974).
[38] *Id.* at 1234.
[39] *Id.*
[40] *Frierson*, 698 F.3d at 1269 (10th Cir. 2012) (quoting *Barrett*, 496 F.3d at 1095).
[41] *Frierson*, 698 F.3d at 1269 (quoting *United States v. Nickl*, 427 F.3d 1286, 1301 (10th Cir. 2005).

8

In such instances, the "principal danger" comes at sentencing with "the possibility that the defendant will receive more than one sentence for a single offense."[42] The Tenth Circuit has suggested a multiplicity error can be remedied in several ways: (1) by an election of counts by the prosecutor prior to trial;[43] (2) through the use of appropriate jury instructions at trial;[44] or (3) vacating the multiplicitous convictions post-trial.[45]

### 2. Counts 1-8 All Allege Separate Offenses

Here, as set forth in the Indictment, each of eight alleged § 1014 counts stem from eight separate PPP loan Borrower Application Forms. BAVER, on behalf of ABE, signed, certified, and dated each of these false documents across seven separate dates in April 2020: six with Lendio (Counts 1-4, 7-8), who ultimately forwarded them to Northeast Bank, and two directly with Meridian Bank (Counts 5-6). Each document contains multiple false statements, with the false statements often varying from document to document. And each count in the Indictment reflects a document that is unique in its combination of date, false statements, and bank.[46] As a result, each alleged § 1014 count requires proof of facts that the other does not, so there is no multiplicity error.

Defendants assert, however, that only one of these eight false documents was a "final" version, and that only this final version was submitted to a bank.[47]

---

[42] *Bolt*, 776 F.2d at 1467 (quoting *United States v. Hearod*, 499 F.2d 1003, 1005 (1974)) (internal quotation marks omitted).
[43] *Bolt*, 776 F.2d at 1467.
[44] *Id.*
[45] *Frierson*, 698 F.3d at 1269.
[46] Indictment at ¶ 20.
[47] Def. Motion at 8. Contrary to Defendants' assertion that the "undisputed evidence" shows that only one "final" application was submitted, the Indictment and ABE's eight PPP loan Borrower Application Forms contradict this claim. *See* Exhibits 1-8, attached hereto. Each of the eight Borrower Application Forms appear complete on their face, each is signed, each bears an electronic signature with date and time stamp, and each was submitted to a bank.

First, as set forth above, the Tenth Circuit has not required that false documents be submitted to a bank to violate § 1014.[48] But even if the Court required otherwise, the Indictment alleges that all eight of these false documents were actually submitted to banks.[49]

Either way, there is no multiplicity error in the Indictment, and the request to dismiss Counts 1-5 and 7-8 should be denied.[50]

### C.   Defendants' Factual Challenge to Count 6 Should Be Denied

Defendants next contend that the Court should dismiss Count 6 because the alleged false statements in the PPP loan Borrower Application Form were not "knowingly" false – not, they claim, when read in context with certain other documents. In effect, Defendants ask the Court to make an inappropriate factual determination that should properly be left for a jury. Their request should be denied.

#### 1.   Relevant Legal Principles

"An indictment returned by a legally constituted and unbiased grand jury. . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."[51]

Fed. R. Crim. Pro. 12(b)(1) allows a party to raise by pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*."[52] This rule "cautions the trial judge

---

[48] *Johnson*, 732 Fed.Appx at 647-48.
[49] Curiously, Defendants' own exhibits to their motion belie the claim that only one document went to a bank. For instance, while acknowledging that Meridian Bank received the Borrower Application Form referenced in Count 6, Defendants also include and cite to a report of an interview with Northeast Bank Senior Vice President Brian Pinheiro (Exhibit A) in which Pinheiro describes receiving "multiple applications" from ABE.
[50] As discussed in Section C below, and in Section A above, to the extent Defendants are attempting to raise a factual challenge to the Indictment, such challenges can only be appropriately resolved at trial, not through a Rule 12(b)(1) pre-trial motion to dismiss.
[51] *Costello v. United States*, 350 U.S. 359, 363 (1956).
[52] Fed. R. Crim. Pro. 12(b)(1) (emphasis added).

that [she] may consider on a motion to dismiss the indictment only those objections that are 'capable of determination without the trial of the general issue'. . . ."[53]

As such, an indictment may properly be dismissed if it fails to charge an offense.[54] "But it may not properly be challenged by a pretrial motion on the ground that it is not supported by adequate evidence."[55]

### 2. Defendants' Factual Disputes with the Indictment Should Be Resolved at Trial

Here, Defendants' motion to dismiss Count 6 asks the Court to resolve *the* ultimate factual issue in the case: whether Defendants knowingly lied about ABE's monthly payroll and number of employees. In support, Defendants rely upon a letter and an email, both of which they claim contradict the allegedly false statements on ABE's Borrower Application Forms.

The United States disputes the meaning and significance of these additional documents, especially within the context of all the evidence the United States expects to present at trial.[56] And reaching a conclusion on this ultimate factual issue – whether Defendants knowingly lied on ABE's PPP loan Borrower Application Forms – should only follow a careful assessment of *all* that evidence. A jury trial is the appropriate venue for this factual determination, not the Court in the context of a Rule 12(b)(1) pre-trial motion to dismiss.[57] In addition, the United States objects to the Court's

---

[53] *United States v. Knox*, 396 U.S. 77, 84 n.7 (1969).
[54] *United States v. King*, 581 F.2d 800, 802 (10th Cir. 1978).
[55] *Id. See also United States v. Erickson*, No. 2:05cr521-TS, 2006 WL 448861, at *1 (D. Utah Feb. 22, 2006) (unpublished) ("Both defendants acknowledge the well-settled general rule set forth by the Tenth Circuit in *United States v. King* that criminal defendants may generally not challenge the strength or weakness of the government's case or the sufficiency of the evidence supporting an indictment in a pretrial motion.").
[56] For instance, the United States contends that these additional documents only make it *more* obvious that Defendants' payroll and employee certifications were knowingly false.
[57] The Defendants' reliance upon a First Circuit case – *United States v. Colon-Munoz*, 192 F.3d 210 (1st Cir. 1997) – is misplaced. *Colon-Munoz* involved an appeal following a jury trial in which the Court was able to evaluate, in great detail, the sufficiency of all the evidence that was presented to the jury at trial; here, the Defendants ask this Court to simply accept their version of certain facts. Further, in *Colon-Munoz*, the disclosures to the bank were very different than what is alleged in this case; the United States believes that, within the context of all the evidence it will present at trial, the evidence is

11

consideration of the limited selection of documents cited by Defendants in resolving the motion to dismiss.

Accordingly, the Court should deny this motion and allow a jury to decide whether Defendants made knowing false statements in violation of § 1014.

### D. The Money Laundering Charge (Count 9) Should Stand

Finally, Defendants briefly argue that, if the Court dismisses all the § 1014 charges (Counts 1-8), it should then also dismiss the money laundering charge (Count 9), since the United States would no longer be able to prove that the funds at issue were "criminally derived."[58]

The United States acknowledges that, in the event of a dismissal of Counts 1-8, it would have a difficult time sustaining a prosecution on Count 9 alone. But as Defendants have not advanced any meritorious reason for dismissal of the prior counts, this request should also be denied.

### III

### CONCLUSION

None of Defendants' claims warrant dismissal of the charges in this case. For the reasons stated above, the Court should deny their motion to dismiss the Indictment.

DATED this 8th day of August, 2022

    Respectfully Submitted,
    TRINA A. HIGGINS
    United States Attorney

    */s/ Aaron Clark*
    AARON B. CLARK
    JENNIFER K. MUYSKENS
    Assistant United States Attorneys
    U.S. Attorney's Office for the District of Utah

---

sufficient to support the charges. A Rule 12(b) motion is simply not the appropriate mechanism for challenging the sufficiency of the evidence; rather, Rule 29 provides the appropriate avenue for relief for the Defendants.

[58] Def. Motion at 14.

12