IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**ALLISON MARIE BAVER,**<br><br>    **Defendant.** | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO RELEASE GRAND JURY TRANSCRIPTS AND DISMISS COUNTS 1–8**<br><br>Case No. 2:21-cr-00520-JNP<br><br>District Judge Jill N. Parrish |

Before the court are two motions filed by Defendant Allison Marie Baver ("Ms. Baver"). The first is a motion to release the grand jury transcripts that relate to the indictments filed against Ms. Baver. Am. Mot. Release Grand Jury Tr., ECF No. 82. The second is a motion to dismiss counts 1–8 of the second superseding indictment. Mot. Dismiss, ECF No. 83. The court DENIES both motions.

**FACTUAL BACKGROUND**

On December 15, 2021, a grand jury indicted Ms. Baver on eight counts of violating 18 U.S.C. § 1014 (False Statement to a Bank) and one count of violating 18 U.S.C. § 1957 (Money Laundering). Indictment, ECF No. 1. Ms. Baver had obtained a $10 million Paycheck Protection Program ("PPP") loan for her company, Allison Baver Entertainment, LLC ("ABE"). *Id.* at 3–7. The government alleged that in order to obtain the PPP loan, Ms. Baver misrepresented the fact that ABE had around $4,000,000 of monthly payroll expenses when, in fact, ABE had zero monthly

payroll, and that ABE employed between 100–430 employees when, in fact, ABE had no employees. *Id.*

On June 10, 2022, Ms. Baver filed a motion to dismiss the indictment. Def.'s Mot. Dismiss Counts 1–9, ECF No. 28. On June 29, 2022, the Government filed a superseding indictment that mooted the motion to dismiss filed by Ms. Baver on June 10, 2022. *See* Superseding Indictment, ECF No. 35; Order Denying as Moot Mot. Dismiss, ECF No. 38. The superseding indictment added ABE as a codefendant and removed language concerning attempted violations of Section 1014. ECF No. 35.

Ms. Baver and ABE (collectively, "Defendants") then jointly filed another motion to dismiss alleging that counts 1–8 of the Superseding Indictment were multiplicitous and that the Government could not provide evidence demonstrating that Defendants were liable on count 6. Defs.' Mot. Dismiss, ECF No. 39. On November 1, 2022, this court held a hearing on the motion. After considering briefing and oral argument, this court issued a written decision on December 7, 2022, denying Defendants' motion to dismiss. Order Denying Defs.' Mot. Dismiss, ECF No. 63. The court noted that it would be inappropriate, *at the pretrial stage*, to determine whether the evidence sufficiently demonstrated that Defendants had violated 18 U.S.C. § 1014. *See id.* at 16.

On January 24, 2023, Ms. Baver filed a motion to release the grand jury transcripts. ECF No. 82. On January 31, 2023, Ms. Baver filed another motion to dismiss counts 1–8 of the second superseding indictment. ECF No. 83. On February 8, 2023, the Government filed an omnibus response addressing both of the motions filed by Ms. Baver. Omnibus Resp., ECF No. 84. On February 21, 2023, Ms. Baver filed a reply brief. Def.'s Reply, ECF No. 87.

Ms. Baver asks the court to consider the following in evaluating her motions: an affidavit signed by FBI Special Agent Jason Henrikson ("Henrikson Affidavit"), Seizure Aff. Ex. 1, ECF

No. 82-1, additional documents that Ms. Baver provided to the Government as part of her reverse proffer, ECF Nos. 82-15–82-19, and the initial indictment, ECF No. 1.

On October 9, 2020, the United States submitted the Henrikson Affidavit to Magistrate Judge Daphne Oberg in support of an application for a seizure warrant. Seizure Aff., ECF No. 82-1 at 1. The Government applied for the warrant in order "to seize the loan proceeds of a scheme to defraud the Small Business Administration (SBA) . . . of $10,000,000 in Payment [sic] Protection Program (PPP) funds that were obtained by the owner of ABE, ALLISON MARIE BAVER (BAVER) through the submission of a fraudulent PPP loan application." *Id.* However, Ms. Baver asserts that the Henrikson Affidavit "[o]mitted and [m]isrepresented [e]vidence, and [i]nsinuated [m]isperceptions . . . ." ECF No. 82 at 4.

On December 8, 2020, the Government engaged in a reverse proffer with counsel for Ms. Baver. *Id.* at 12. Ms. Baver's now-former counsel provided the Government with several documents including an offer letter from A&E Network for the show America's Angels dated November 25, 2019, ECF No. 82-16, an engagement letter between ABE and a law firm dated December 20, 2019, ECF No. 82-17, emails concerning the production of the film "Dead Princess" from January 2020, ECF No. 82-18, and an engagement letter concerning production services for "Monsters" dated February 2, 2020, ECF No. 82-19. Ms. Baver contends that the Government did not present these documents to the grand jury. ECF No. 82 at 12–13.

On December 15, 2021, a grand jury indicted Ms. Baver on eight counts of making false statements to a bank and one count of money laundering. ECF No. 1. The initial indictment stated that "Allison Marie Baver, defendant herein, did knowingly *make and attempt to make* the false statements listed below for the purpose of influencing the actions of banking institutions . . . ." *Id.* at 6 (emphasis added). On June 10, 2022, Ms. Baver filed a motion to dismiss and argued that,

based on the preceding sentence, the indictment was defective. ECF No. 28 at 5. According to Ms. Baver, the Government had charged her with *attempting* to make a false statement to a bank even though 18 U.S.C. § 1014 does not criminalize attempted behavior. *Id.* On June 29, 2022, the Government filed a superseding indictment, which removed the contested sentence and added ABE as a codefendant. ECF No. 35. On October 19, 2022, the Government filed a second superseding indictment, which added a tenth count for contempt in violation of 18 U.S.C. § 401(3). ECF No. 47. The second superseding indictment also does not contain the attempt language in reference to the Section 1014 charges. *Id.*

## ANALYSIS

The two motions filed by Ms. Baver are interrelated. Ms. Baver asserts that the court should dismiss the indictment because prosecutorial misconduct occurred during the grand jury proceedings. ECF No. 83. The motion to dismiss, ECF No. 83, serves as justification for the release of the grand jury transcripts, ECF No. 82, but without the release of the grand jury transcripts, Ms. Baver cannot provide evidence that supports the motion to dismiss.

But the fact that a defendant files a motion to dismiss alleging prosecutorial misconduct during the grand jury proceedings does not require a court to order the release of the relevant grand jury transcripts. *See United States v. Neha,* 376 F. Supp. 2d 1222, 1226–27 (D.N.M. 2005) ("If the United States has misused the grand jury in the way that Neha suggests, Neha represents that he will seek to dismiss the superseding indictment. Neha has therefore shown a need. . . . [But] he has not shown the 'particularized need' that the case law requires him to show."). Rather, in analyzing these motions, the court first evaluates whether it should order the release of the grand jury transcripts and then moves to the motion to dismiss.

## I.      Grand Jury Transcript Release

Grand juries "deliberate[] in secret and may determine alone the course of [their] inquiry." *United States v. Calandra*, 414 U.S. 338, 343 (1974). Absent "particularized proof of irregularities in the grand jury process," a "grand jury proceeding is accorded a presumption of regularity . . . ." *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor J., concurring). The "'indispensable secrecy of grand jury proceedings' must not be broken except where there is a compelling necessity." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958) (internal quotation omitted). Disclosure of grand jury proceedings is disfavored for many reasons including "prevent[ing] the escape of those whose indictment may be contemplated," preserving the "utmost freedom to the grand jury in its deliberations," "prevent[ing] subordination of perjury or tampering with the witnesses," "encourag[ing] free and untrammeled disclosures by persons who have information," and "protect[ing the] innocent accused who is exonerated from disclosure . . . where there was no probability of guilt." *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n.10 (1979) (internal citations and quotations omitted).

Although public policy disfavors disclosure of grand jury proceedings, "prosecutors do not have carte blanche in grand jury matters." *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001) (citing *United States v. Jenkins*, 904 F.2d 549, 559 (10th Cir. 1990)). "[I]n certain situations disclosure of grand jury minutes and transcripts is appropriate where justice demands." *United States v. Pottorf*, 769 F. Supp. 1176, 1180 (D. Kan. 1991). Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) provides one such exception. "The court may authorize disclosure . . . of a grand-jury matter at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6. "Parties seeking grand jury transcripts under Rule 6(e) must show . . . that the need for disclosure is greater

than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222.

"To be entitled to production, the defendant must show a 'particularized need' for the documents that outweighs the public policy of grand jury secrecy." *Neha*, 376 F. Supp. 2d at 1224 (2005) (quoting *United States v. Warren*, 747 F.2d 1339, 1347 (10th Cir. 1984)). This burden is a heavy one. *Id.* at 1225 ("[A] party asserting a claim of grand jury abuse must shoulder a heavy burden."); *United States v. Nguyen*, 314 F. Supp. 2d 612, 617 (E.D. Va. 2004) (quoting *United States v. Abcasis*, 785 F. Supp. 1113, 119 (E.D.N.Y. 1992)) ("[A] defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'"). "[A]ttempts to engage in a fishing expedition in the hopes of discovering useful material" are insufficient. *Neha*, 376 F. Supp. 2d at 1224. Likewise, "conclusory or speculative allegations of misconduct" do not meet this burden. *United States v. Morgan*, 845 F. Supp. 934, 941 (D. Conn. 1994).

Ms. Baver requests that the court order the release of the grand jury transcripts because she believes that the prosecutor engaged in misconduct during the grand jury proceedings warranting dismissal of the indictment. Ms. Baver offers three reasons why she suspects the prosecutor engaged in misconduct: 1) the affidavit used to secure the seizure warrant allegedly contains misrepresentations and omissions, 2) the Government allegedly did not present the grand jury with exculpatory information, and 3) the initial indictment contained a legal error.[1] However, these three

---

[1] Ms. Baver presents this argument in her motion to dismiss, ECF No. 83, instead of in her motion to unseal grand jury transcripts. ECF No. 82. However, Ms. Baver is effectively claiming that errors in the initial indictment serve as another justification for releasing the grand jury transcripts.

allegations do not demonstrate a "particularized need" that warrants the disclosure of the grand jury transcripts.

A.    Henrikson Affidavit

The court first addresses Ms. Baver's allegations concerning the Henrikson Affidavit. The Government filed the Henrkison Affidavit in support of its application for a warrant to seize the PPP funds obtained by ABE. Seizure Aff. Ex. 1, ECF No. 82-1. Ms. Baver argues that paragraphs 2, 21, 25, 27, and 28–31 of the Henrikson Affidavit either misrepresent or omit facts, and thus, suggest that the grand jury proceedings were similarly defective.

As a preliminary matter, the court is not persuaded by Ms. Baver's argument that "[b]ecause the Indictment very closely tracks the evidence presented in the warrant affidavit, it is safe to infer that the problems infecting the warrant affidavit followed through to the presentation of evidence given the grand jury." Reply, ECF No. 87 at 8. The warrant affidavit and the indictment both concern the same factual matter—namely, whether Ms. Baver and ABE obtained PPP funds in violation of federal law. Thus, factual parallels between the warrant affidavit and the indictment are to be expected. Restated, the court is not persuaded that these factual similarities suggest that any defects in the Henrikson Affidavit were also present in the grand jury proceedings.

Furthermore, even if the court assumed that Ms. Baver's critiques of the Henrikson Affidavit also applied to the grand jury proceedings, these challenges are not material. The court analyzes each of Ms. Baver's objections concerning the Henrikson Affidavit in turn.

1)    Paragraph 2

---

Accordingly, the court addresses Ms. Baver's concerns on this matter alongside her other arguments for releasing the grand jury transcripts.

First, Ms. Baver alleges that paragraph 2 of the Henrikson Affidavit is misleading because it lists Ms. Baver, rather than ABE, as the owner of the bank accounts. ECF No. 82 at 5. Ms. Baver does not contest the fact that she owns the bank accounts, but rather asserts that, without language clarifying that Ms. Baver owns the account in her capacity as the representative of ABE, the affidavit "gives an impression that Ms. Baver placed the PPP loan in her personal accounts, instead of ABE's business accounts." *Id.*

Having reviewed the Henrikson Affidavit, the court disagrees. Paragraph two simply consists of a table listing the assets that the United States seeks to seize. ECF No. 82-1 at 1–2. There are four columns in the table: bank, account number, account owner, and amount of funds to be seized. *Id.* The purpose of the table is to describe, in a condensed format, the assets that the United States is attempting to seize. The court is unpersuaded that the table creates a misperception by failing to state that Ms. Baver owns the accounts in her capacity as a representative of ABE. Thus, even if the table had been presented to the grand jury, it would not have created the slightest inference of prosecutorial misconduct.

> 2)   Paragraph 21

Next, Ms. Baver asserts that paragraph 21 of the Henrikson Affidavit incorrectly states that ABE was assigned an EIN in October 2020, when ABE actually received its EIN in October 2019. ECF No. 82 at 5. According to Ms. Baver, "[t]his misstatement would arguably suggest . . . that when Ms. Baver submitted her PPP documents in April 2020, she had not even acquired an EIN . . . ." *Id.* According to Ms. Baver, "Agent Henrikson's misrepresentation makes it appear as if ABE, at the time of the application, was basically a shell company, not engaged in business, and not intending to hire . . . ." *Id.* at 6.

The Government concedes that the Henrkison Affidavit mistakenly stated that ABE received an EIN in 2020 instead of in 2019. ECF No. 84 at 11. However, the Government claims, and the court agrees, that this typo was a harmless error. The paragraph containing the mistake states: "State of Utah Certification of Organization showed ABE was formed on October 9, 2019. EIN Issuance letter from the IRS showed ABE had been assigned an EIN 84-3318720 on October 9, 2020." ECF No. 82-1 at 8. The first sentence states that ABE was established in 2019. It does not support an inference that the Government intentionally misstated the year in which ABE received its EIN in order to craft a narrative that Ms. Baver established ABE solely for the purposes of obtaining a PPP loan. The Henrikson Affidavit contains no other references to the EIN assignation date. Furthermore, all versions of the indictment indicate that Ms. Baver registered ABE in 2019 and none mention the EIN. ECF Nos. 1, 35, 47. In short, even if the EIN typo percolated to the grand jury proceedings—and there is no indication that it did—the court is not convinced that such an error was material.

> 3)    Paragraph 25

Third, Ms. Baver asserts that paragraph 25 of the Henrikson Affidavit, which states the following, is misleading:

> BAVER also submitted a document named PPP Loan Amount Calculator UPATED [sic], which listed ABE's payroll and payroll-related expenses for months ending March 31; April 30 and May 31, 2020, as $4,770,583. These figures appear to be false since, according to Utah Department of Workforces' information, ABE had no employees or payroll expenses for these months.

ECF No. 82-1 at 10.

Ms. Baver objects to Agent Henrikson's reference to information provided by the Utah Department of Workforces. According to Ms. Baver, Agent Henrikson should not have relied on

employment information from Utah in evaluating the credibility of her payroll numbers because ABE would primarily employ people from California, New York, and New Jersey. ECF No. 82 at 6. Ms. Baver argues that by reporting the Utah employment numbers, Agent Henrikson "omitted facts." *Id.* at 7. In other words, the Utah numbers are a misleading baseline.

However, the court notes that Ms. Baver does not contest the fact that ABE had no employees. Her criticism focuses entirely on Agent Henrikson's rationale for why he believes that ABE submitted inaccurate employment numbers. In other words, Ms. Baver apparently would have no objection to this paragraph had Agent Henrikson referenced the employment numbers from New York, New Jersey, and California, which also would have demonstrated that ABE had no employees or payroll expenses during this time period. Thus, the court is not persuaded that Ms. Baver's objections to paragraph 25 are material.

4)      Paragraph 27

Ms. Baver argues that paragraph 27 of the Henrikson Affidavit is misleading because it excerpts language from an email but does not provide the entire email and the associated email thread in full. On April 24, 2020, Ms. Baver sent an email to Carl Kruelle ("Mr. Kruelle") regarding ABE's eligibility for a PPP loan. Email Chain Baver, Kruelle, and Perate Ex. 10, ECF No. 82-10 at 4. Mr. Kreulle later forwarded that email to Rocco Perate ("Mr. Perate"), a senior vice president of Small Business Administration lending at Meridian Bank. *Id.* at 3. Meridian Bank provided the $10 million PPP loan to ABE. Second Superseding Indictment, ECF No. 47.

According to Ms. Baver, the entire email clarifies that

> (1) ABE is a new entertainment company; (2) that she only had one paid employee in January/February 2020 for the projects in operations that were slated to start production in Spring 2020 and which would employ 430 people; (3) that she spoke with one bank that indicated that if someone qualified from SBA could confirm

>               [ABE's loan eligibility] . . . that they would approve the loan
>               immediately.

ECF No. 82 at 8.

Furthermore, Ms. Baver argues that the complete email chain establishes that she was forthright

about her uncertainty concerning ABE's eligibility for a PPP loan.[2]

The court disagrees that the email in its entirety provides a materially different

understanding of the situation than that represented by language excerpted below. Paragraph 27

states:

>               Right now most banks are only accepting existing customers and the
>               ones I have spoken with require the past 12 months or Jan./Feb. 2020
>               payroll, which does not apply to *my new entertainment company*
>               because of the timeline, I had only paid an attorney for the projects
>               in operations. You see, we had a TV show and two films scheduled
>               to start production in Spring 2020 and these projects employ 430
>               people with PPP loan amount of $8.3M. One of the projects is a TV
>               that we received a distribution offer from A + E Network to air the
>               show Q4 this year! The show is called America's Angels and helps
>               women driven business, employs 80 people and will have a
>               substantial impact for women in closing the socioeconomic gap.

Seizure Aff. Ex. 1, ECF No. 82-1 at 10 (emphasis added).

First, the court is unpersuaded that the entire email is necessary to establish the fact that

ABE is a "new entertainment company." This language is contained in the excerpt itself. Second,

---

[2] At this juncture, the court is not evaluating whether the emails credibly establish that Ms. Baver
represented that ABE was a new company or that the employment numbers refer to projected
employment. This is a determination that requires weighing the credibility of the evidence and is
ill-suited for resolution at the current stage of the proceedings. *See United States v. Pope*, 613
F.3d 1255, 1259 (10th Cir. 2010) ("If contested facts surrounding the commission of the offense
would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize
its disposition before trial."). Here, the court narrowly addresses whether the excerpted language
has been taken out of context.

the court is unconvinced that the excerpted language mischaracterizes Ms. Baver's representations of ABE's employment numbers. Having reviewed the complete email chain, the only other language that refers to ABE's employment numbers are the following sentences from Ms. Baver's Good Faith Letter.

> Our slate of projects include America's Angels and two films and was scheduled to begin productions in the spring 2020, employing 430 people.
>
> [. . .]
>
> The timing of the pandemic has been right as we were gearing up to start productions and caused drastic financial investment losses preventing planned employment of these respective teams. For this reason, Allison Baver Entertainment is applying for the PPP loan of $8.3M to continue our operations and finance employment lost due to COVID-19. . . . We hope to save these jobs and with your loan approval grow Allison Baver Entertainment beyond these transformational times.

Good Faith Letter Ex. 23, ECF No. 82-23.

These sentences do not materially clarify Ms. Baver's representation of the employment situation in the excerpted paragraph. In short, the court is not convinced that paragraph 27 misrepresents the email chain as to ABE's status as a new company and Ms. Baver's representation of ABE's employment numbers.

Ms. Baver also contends that paragraph 27 excludes portions of the email that indicate that Ms. Baver was forthright about ABE's uncertain eligibility for a PPP loan. Ms. Baver's initial email to Mr. Kruelle states:

> [F]rom what folks at the SBA have told me is to work with a banks [sic] to qualify the loan using [a] different applicable time period for the payroll, which in my case would be the months disabled due to Covid-19.
>
> [. . .]

12

> I did speak to one bank who said if I can have someone qualified at the SBA confirm that the bank is allowed to qualify the loan for new businesses based on the COVID-19 losses during the months for the projects and hires scheduled for this applicable time period, they will approve the loan immediately. Do you know anyone who can please assist and provide that confirmation?

Email Chain Baver, Kruelle, and Perate Ex. 10, ECF No. 82-10 at 4. Mr. Kruelle then repeats to Mr. Perate that Ms. Baver has "been informed by the SBA that her firm qualifies which also seems to be borne out by SBA PPP website criteria. However, she's not confident the local Utah bank(s) she's approached would approve in a timely manner and other banks are unsure of SBA guidance as related to her Covid-19 impact." *Id.* at 3.

The court remains unpersuaded that omitting these sentences materially affected the meaning of the excerpted paragraph. The language from paragraph 27 is included as part of the Henrikson Affidavit, which states that the affidavit does not "include[] details of every aspect of this investigation" as it is being submitted for a limited purpose. Seizure Aff. Ex. 1, ECF No. 82-1 at 4. The purpose of a seizure affidavit is to seize property subject to forfeiture. *See* Seizure Warrant, ECF No. 82-2 at 2. "Where information has been omitted from an affidavit, we determine the existence of probable cause by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (internal quotations and citations omitted). Having reviewed the seizure warrant and the Henrikson Affidavit, the court is not persuaded that inclusion of the entire email would have altered the Magistrate Judge's determination of probable cause. And more importantly, the fact that Agent Henrikson excluded sentences that provide more context regarding ABE's eligibility does not imply that the prosecutor omitted similar context in presenting the case before the grand jury.

5)    Paragraphs 28–31

Ms. Baver asserts that Paragraphs 28–31 of the Henrikson Affidavit "give[] the perception that Ms. Baver may be moving money around in order to hide it—suggesting criminality." ECF No. 82 at 10. Having reviewed paragraphs 28–31, the court disagrees. These paragraphs simply list the accounts created by Ms. Baver and the transactions that occurred in these accounts. The fact that Ms. Baver can provide a clearer description of the financial situation by aggregating the transactions on an account level basis does not make Agent Henrikson's description misleading or suggest criminality.

Ms. Baver argues that the "largest error in the bucket is the likely inclusion of false and misleading evidence presented to the grand jury." Reply, ECF No. 87 at 7. However, the sole basis for this claim is that "when applying for a seizure warrant, the Government presented numerous, known, intentional, and substantial pieces of evidence that were either plainly false or deliberately misleading, and omitted other evidence which would have corrected deliberate misperceptions." *Id.* Having reviewed all five of the alleged errors in the Henrikson Affidavit, the court is persuaded that they are not material. Moreover, Ms. Baver has not provided any evidence that connects the Henrikson Affidavit to the grand jury proceedings. Thus, the court is unconvinced that Ms. Baver's allegations concerning the Henrikson Affidavit warrant the release of the grand jury transcripts.

B.    Failure to Present Exculpatory Information

Having addressed the Henrikson Affidavit, the court moves to Ms. Baver's allegation that the government failed to present exculpatory information to the grand jury. Ms. Baver attached twenty-three exhibits to this motion. She provided some of these exhibits, which she claims exonerate her, to the government as part of her reverse proffer. Ms. Baver asserts that "given what occurred with the seizure affidavit and warrant, there is reason to believe that false statements

and/or omissions were also made before the grand jury and no exculpatory evidence was provided to them in order to make an accurate and informed decision." ECF No. 82 at 14.

First, the court notes that Ms. Baver has not provided any evidence that substantiates her claim that the Government withheld exculpatory information from the grand jury. The court has already rejected Ms. Baver's attempts to use the Henrikson Affidavit to draw inferences about the grand jury proceedings. The fact that Ms. Baver presented the Government with information that she believes is exculpatory,[3] and the grand jury subsequently indicted her, does not necessarily suggest that the Government withheld the information from the grand jury.

Moreover, the Government does not have a duty to present exculpatory information to a grand jury. *See United States v. Williams*, 504 U.S. 36, 52 (1992) ("Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system."). "A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." *Calandra*, 414 U.S at 343–44. As the Supreme Court emphasized in *Williams*, requiring the prosecutor to present exculpatory evidence "would also be quite pointless, since it would merely invite the target to circumnavigate the system by delivering his exculpatory evidence to the prosecutor . . . ." 504, U.S. at 52.[4] In short, Ms. Baver has not presented facts that suggest that the

---

[3] Ms. Baver's assertion that the documents are exculpatory effectively asks the court to weigh the evidence. As the court has previously noted, such a determination is premature.

[4] Ms. Baver cites *United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990) and *United States v. Romano*, 706 F.2d 370, 374 (2d Cir. 1983) to support the proposition that prosecutors have a duty to present exculpatory evidence to the grand jury. However, these cases predate *Williams*, and neither of these decisions dismissed the indictments for prosecutorial misconduct. *See Brito*, 907 F.2d at 395 (internal quotation omitted) ("Despite these failings, however, we cannot conclude at

Government withheld exculpatory information from the grand jury. And, even if she had, it would not establish grounds for the release of the grand jury transcript because the government does not have a duty to provide such information to the grand jury under *Williams*.

      C.      Errors in the Initial Indictment

Ms. Baver's third justification for releasing the grand jury transcripts is that the initial indictment contained a legal error. The indictment stated that Ms. Baver violated 18 U.S.C. § 1014 because she "did knowingly *make and attempt to make* the false statements . . . ." Indictment, ECF No. 1 at 6 (emphasis added). However, 18 U.S.C. §1014 does not criminalize the attempted making of false statements. *See* 18 U.S.C. § 1014 ("Whoever knowingly makes any false statement or report, . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."). Although the Government removed the attempt language from the superseding indictment and the second superseding indictment, Ms. Baver asserts that "the Court should be concerned that the jury's decision to indict, could have been based on the belief that an attempt to make a false statement is sufficient under the law." ECF No. 83 at 6. According to Ms. Baver, the legal error in the first indictment may have tainted the subsequent indictments. ECF No. 87 at 5.

---

this time either that the single-witness policy constitutes such 'systematic and pervasive' prosecutorial misconduct as would undermine fundamental fairness, or that the rights of either defendant were violated before the grand jury."); *Romano*, 706 F.2d at 374 ("Even if it were to be assumed that there was some impropriety, dismissal of the indictment is not warranted.")

Alternatively, Ms. Baver argues that the DOJ guidelines state that "the prosecutor must present or otherwise disclose [substantial exculpatory evidence] to the grand jury before seeking an indictment against such a person." ECF No. 82 at 4 (quoting U.S. Dep't. Justice, *Justice Manual*, Section 9-11.233). But even if the court assumes that the prosecutor failed to adhere to DOJ guidelines, this does not warrant the release of grand jury transcripts or the dismissal of the indictment. *See Williams,* 504 U.S. at 53 (internal citation omitted) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.").

16

Contrary to Ms. Baver's claims, an error in the initial indictment does not lead to the presumption that subsequent indictments are also flawed, or that the entire grand jury process has been undermined. *See Flemmi*, 245 F.3d at 28 (explaining that the presumption of regularity "attaches even after the grand jury has returned an initial indictment. After all, superseding indictments setting forth new charges or adding new defendants are familiar fare."). The Government routinely files superseding indictments and "courts have held that the government may seek a superseding indictment which adds new charges or corrects errors in the original indictment at any time up to the time of the trial." *United States v. Frechette (Ross)*, No. CR. 89-146, 1990 WL 3184, at *3 (W.D. Pa. Jan. 9, 1990) (citing *United States v. Fisher*, 871 F.2d 444 (3d Cir. 1989)). "In interpreting an indictment, we are governed by practical rather than technical considerations." *United States v. Phillips*, 869 F.2d 1361, 1364 (10th Cir. 1988). "Superseding indictments to cure pleading defects or inartfully drafted charges are not only commonplace but have been held to be perfectly proper, not abusive and not violative of due process." *United States v. Sam Goody, Inc.*, 506 F. Supp. 380, 384 (E.D.N.Y. 1981).

Furthermore, "[c]hallenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face." *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986). In *Buchanan*, the Tenth Circuit rejected Defendant's argument that the indictment should have been dismissed because the prosecutor misstated the elements of the crime of aiding and abetting to the grand jury. *See id.* ("Such an attempt to prevent trial by attacking alleged legal errors in the grand jury proceedings is generally rejected. An indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits."). Restated, even if the grand jury transcripts revealed that the prosecutor incorrectly described the elements of a Section 1014

violation, an incorrect description alone does not establish prosecutorial misconduct warranting dismissal.

Ms. Baver asks the court to invade the secrecy of the grand jury proceedings because the government made an error in the initial indictment and, despite the fact that the government later corrected the error, the possibility remains that the corrections were inadequate. *See* Mot. Dismiss, ECF No. 83 at 5, n.2 ("In the absence of transcripts, however, there is no way of knowing what lies behind that correction."); Reply, ECF No. 87 at 3 ("The underlying errors which caused the faulty original Indictment may have carried through to both superseding indictments, marring their validity."). Ms. Baver is effectively asking the court to conduct a fishing expectation based on pure speculation. The court declines to do so.

In summary, Ms. Baver argued that objections to the Henrikson Affidavit, concerns with the Government withholding information during the grand jury proceedings, and a subsequently corrected legal error in the initial indictment cumulatively warrant the release of the grand jury transcripts. Having considered all three arguments, the court disagrees. Accordingly, the court DENIES Ms. Baver's request to release the grand jury transcripts.

## II.      Motion to Dismiss Counts 1-8

During oral argument, Ms. Baver indicated that the release of the grand jury transcripts is a prerequisite for the motion to dismiss the indictment. The motion to dismiss arises under Rule 12(b)(3)(A)(v) of the Federal Rules of Criminal Procedure, which authorizes the court to dismiss an indictment for "an error in the grand jury proceeding or preliminary hearing." Fed. R. Crim. P. 12. Having denied the motion to release the grand jury transcripts, the court also denies the motion to dismiss. ECF No. 83.

## CONCLUSION AND ORDER

For the aforementioned reasons, the court DENIES Ms. Baver's Motion to Release the Grand Jury Transcripts, ECF No. 82 and DENIES Ms. Baver's Motion to Dismiss Counts 1–8 of the Second Superseding Indictment. ECF No. 83.

DATED April 20, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge