SCOTT KEITH WILSON, Federal Public Defender (#7347)
KRISTEN R. ANGELOS, Assistant Federal Defender (#8314)
ROBERT K. HUNT, Assistant Federal Defender (#5722)
**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF UTAH**
Attorneys for Defendant
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010
Email:   kris_angelos@fd.org and robert_hunt@fd.org

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | **MOTION TO SEVER COUNT 10 AND MEMORANDUM IN SUPPORT** |
| Plaintiff, | |
| v. | |
| ALLISON MARIE BAVER, | Case No. 2:21-cr-00520-1 |
| Defendant. | Honorable Judge David Sam |

Defendant Allison Marie Baver ("Ms. Baver"), by and through counsel, Kristen R. Angelos and Robert K. Hunt, submits this Motion to Sever Count 10's Contempt Charge from Counts 1-9 of the Second Superseding Indictment.    Specifically, Count 10 of the Second Superseding indictment must be severed because it does not meet the standards for joinder set forth in Rule 8(a).   Even if Count 10 met the standard under Rule 8(a), Count 10 should be tried separately to avoid unfair prejudice.

<u>**ARGUMENT**</u>

I.  **JOINDER OF THE CONTEMPT COUNT WITH THE FALSE STATEMENTS AND MONEY LAUNDERING COUNTS VIOLATES RULE 8(a) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

Rule 8(a) of the Federal Rules of Criminal Procedure permits a defendant to be charged in a single indictment with multiple offenses when the offenses are sufficiently related. *U.S. v. Bagby*, 696 F.3d 1074, 1086 (10th Cir. 2012).   Offenses cannot be joined in one indictment unless they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." F.R.C.P 8(a); *U.S. v. Hutchinson*, 573 F.3d 1011, 1026 (10th Cir. 2009).   Rule 8(a) is construed broadly to enhance the efficiency of the judicial system.   *United States v. Jones*, 530 F.3d 1291, 1298 (10th Cir. 2008).   While the requirements of Rule 8 are generous, they "cannot be stretched to cover offenses . . . which are discrete and dissimilar and which do not constitute parts of a common scheme or plan." *United States v. Richardson*, 161 F.3d 728, 733 (D.C. Cir. 1998). "A vague thematic connection among offenses may not support joinder." *United States v. Buchanan*, 930 F. Supp. 657, 662 (D. Mass 1996).

Most courts only look to the face of the indictment to determine whether joinder is proper.   1A Wright & Leipold, Federal Practice and Procedure §144 at 41-42 (2020 ed.) (footnotes omitted); *See, e.g., United States v. Howell,* 17 F.4th 673, 686 (6th Cir. 2021) (the propriety of joinder is determined from the face of the indictment); *United States v. Mink*, 9 F.4th 590, 603 (8th Cir. 2021) (the determination of whether joinder is proper is made from the face of the indictment).   Some courts, however, have looked beyond the face of the indictment at other evidence to determine if joinder is proper.   *See, e.g., U.S. v. Carson*, 455 F.3d 336, 372 (D.C.

Cir. 2006) ("the propriety of joinder is determined as a legal matter by evaluating only the indictment [and] any other pretrial evidence offered by the government.")   The Tenth Circuit has not specifically addressed this issue, although a leading case in the circuit about joinder, *United States v. Hill*, found joinder was proper, but only examined the indictment itself in coming to that conclusion.   786 F.3d 1254, 1272 (10th Cir. 2015).   Some district courts within the Tenth Circuit, however, have decided under their interpretation of Tenth Circuit case law that it is appropriate to "analyze a Rule 8(a) challenge by reviewing the indictment as well as representations made by the government in briefing."   *See, e.g., United States v. Burgess*, 2021 WL 2414124, at *1 (E.D. Okla. June 14, 2021).

In the present instance, the current Second Superseding Indictment fails the test of Rule 8(a), even broadly construed.   Contempt is unrelated to false statements and money laundering in all of the ways that matter under Rule 8(a).   Count 1-9 (false statements and money laundering) and Count 10 (contempt) do not charge 1) offenses of the same or similar character, 2) the same act or transaction, or 3) a common scheme or plan.   Docket ("Dkt") 47, *Second Superseding Indictment*.

First, contempt is not of the same or similar character to money laundering and false statements.   In determining what constitutes the "same or similar character," courts generally find joinder to be proper when the counts "refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps."   *U.S. v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011).   "[F]actors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims" are helpful

in assessing whether the acts are of the "same or similar" character for purposes of Rule 8(a). *U.S. v. Jawara*, 474 F.3d 565, 578 (9th Cir. 2007).

Contempt does not have a single element in common with money laundering or false statements.   The offenses of money laundering and false statements, by contrast, are inextricably linked.   To convict a defendant of a false statement designed to influence a bank, the government must establish that 1) the defendant made a false statement or report, and 2) that he did so for the purpose of influencing in any way the action of a bank.   *See Williams v. United States*, 458 U.S. 279, 284 (1982) (quoting §1014).   To convict a defendant of money laundering, the government must prove that the defendant 1) engaged or attempted to engage, 2) in a monetary transaction, 3) in criminally derived property, 4) knowing that the property is derived from unlawful activity, and 5) that the property is, in fact, derived from specified unlawful activity. *United States v. Huff*, 641 F.3d 1228, 1230 (10th Cir. 2011), citing *United States v. Baum*, 555 F.3d 1129, 1131 (10th Cir. 2009).   The false statement provided to a bank is often what satisfies the "specified unlawful activity" element of the money laundering statute.   Here, the alleged conduct involved PPP loan applications containing false information, and a money transfer arising out of the money derived from those applications.   The Second Superseding Indictment makes clear in Count 9 (money laundering) that "such property was derived from the specified unlawful activity of False Statement to a Bank as alleged above."   Dkt. 47, ¶ 25.   The explicit reference of the "false statement" as part of the money laundering charge demonstrates why these charges are properly joined in the indictment.

By contrast, the offense of contempt bears no relation to either the false statement or money laundering statute.   The offense of contempt involves three essential elements: "1) a

violation, 2) of a clear and reasonably specific order, and 3) the violation was willful."   The

United States Department of Justice Archives, Criminal Resource Manual 701-799, 753

"Elements of the Offense of Contempt." January 2020. (citing *United States v. Nynex Corp*, 8

F.3d 52, 54 (D.C. Cir. 1993)); *see also United States v. Voss*, 82 F.3d 1521, 1525 (10th Cir.

1996)(*citing Cooper v. Texaco, Inc.*, 961 F.2d 71, 72 n. 3 (5th Cir. 1992)("There are three

elements to contempt under 189 U.S.C. §401(3);(1) a reasonably specific order, (2) violation of

the order, and (3) the willful intent to violate the order.")).   None of these elements overlaps or

relates in any way to elements of § 1014 or § 1957 – the other charges in the Second Superseding

Indictment.   The Second Superseding Indictment's linking of the contempt conduct to the

money laundering and false statement charges is an attempt to connect an offense that is

fundamentally dissimilar.

Further support for misjoinder comes from the statutes themselves.   The titles of the

crimes of money laundering, giving false statements, and contempt are also instructive in

understanding how contempt is unrelated to the other charges.   The title of 18 USC §1014 (false

statements designed to influence a bank) is "[l]oan and credit applications generally," and the

title of 18 USC §1957 (money laundering) is "[e]ngaging in monetary transactions in property

derived from specified unlawful activity."   It is quite obvious to see how these two sections are

related to one another – both involve money, banks, and financial instruments generally.

In stark contrast to these titles, the title of 18 USC § 401 (contempt) is "power of court."

This section is entirely about the power of the court.   In general, this charge has absolutely

nothing to do with financial crimes.   This section allows a court to punish "disobedience or

resistance to its lawful writ, process, order, rule, decree, or command."   18 USC § 401(c).   The

purpose of a criminal contempt charge is to "vindicate the authority of the court." *Latrobe Steel Co. v. United Steelworkers of America, AFL-CIO*, 545 F.2d 1336, 1343 (3d Cir. 1976).   "Its proceedings are separate from the actions which spawned them."   *Id*.   "There is no denial here that a criminal contempt is punishable in an independent proceeding divorced from the original cause, in the course of which it may have occurred."   *Yates v. United States*, 227 F.2d 848, 850 n.4 (9th Cir. 1955).

While "criminal contempt [also] seeks to punish past acts of disobedience," *Latrobe Steel Co*. at 1336, this does not mean that all acts of criminal conduct constitute disobedience and would thus be properly joined under Rule 8(a).   Such a reading would render the Rule superfluous.   Although criminal conduct is "disobedience" generally – this sweeps too broadly and would essentially permit joinder of any and all criminal charges.   For "the same or similar character" provision of Rule 8(a) to have meaning, it must be narrowly applied, especially in situations like Ms. Baver's where permitting joinder will lead to the sort of prejudice addressed in Rule 404(b) of the Federal Rules of Evidence.   Rule 404(b) prohibits the admission of other bad acts evidence in order to show the defendant's bad character and her propensity to act in conformity therewith.   "A broad reading of the 'similar character' provision of Rule 8(a) would invite the very sort of irrelevant 'bad character' reasoning prohibited under Rule 404(b)".   *U.S. v. Buchanan*, 930 F.Supp. 657, 665-666 (D. Mass 1996).   The contempt charge here is a direct result of Ms. Baver's alleged failure to obey an order of the judge, over two years later, and simply represents the court's ability to punish for noncompliance with its orders.   Thus, the offense of contempt cannot be properly joined to the other charges because it is not of a similar character to money laundering or false statements to a bank.

6

The evidence available to support these charges also supports their dissimilarity.   The extent of evidentiary overlap is very minimal, or perhaps even non-existent between counts 1-9 and count 10.   The alleged evidence used to support the false statements and money laundering consists of PPP loan applications, the statements on those applications, and the transfer of those PPP funds.   The alleged evidence used to support the contempt charge in this instance is a grand jury subpoena and whether Ms. Baver failed to comply with the order by failing to produce bank documents of Allison Baver Entertainment LLC ("ABE").   Moreover, the underlying documents requested, which were not produced and resulted in the contempt charge, covered a broad range of time, specifically October 2019 through December 2020.   This is significant because counts 1-9 only involve the time period of April 2020, and count 10 only involved the time period of July 2020.   Indeed, it is not clear from the Second Superseding Indictment whether these documents are related to the underlying allegations or for what purpose the government wanted these documents.   In fact, the Government seized the PPP loan money from ABE in October 2020, as such, defense counsel is unclear why the Government needed ABE's bank records for November and December of 2020.   Moreover, since counts 1-9 all involve conduct occurring in April of 2020, defense counsel is unsure why it was necessary for ABE to produce bank records from October 2019-February 2020, the months prior to the loan application.   Indeed, in some ways, the Government's request of these specific time periods seems to be based on a fishing expedition.   Moreover, the Government already had bank records from the bank accounts surrounding the PPP loan as they cited them in the affidavit for the seizure warrant that resulted in the seizure of around 9.5 million dollars of the PPP money. *See* Dkt. 82, Exhibit 1, Seizure Warrant.

The evidence arising out of the contempt charge is of a distinct character and involves only whether the Ms. Baver failed to comply with a court order.   Because the contempt charge shares neither similarity in its elements, statutory placement, or evidentiary overlap with the false statement and money laundering charges, the contempt charge cannot be said to be of a "similar character" to the other charges.   The only similarity in these charges is the identity of the Ms. Baver – and her alleged role in both ---- at very different and distinct times ---- and that is simply not enough to justify joinder under Rule 8(a).   *See e.g., United States v. Mackins*, 315 F.3d 399, 412-413 (4th Cir. 2003) (finding the district court's joinder was error where the "only connection" between the counts was the defendant); *United States v. Hawkins*, 776 F.3d 200, 209 (4th Cir. 2015) (finding joinder of offense was improper because "nothing ties [the offense] together except the defendant.").   Two or more charges cannot be joined simply because the defendant is the same; the offenses must be of the "same or similar character."

Second, the Second Superseding Indictment fails to connect the contempt offense as part of the same "act or transaction" as the money laundering and false statement offenses.   But this makes sense, as the contempt charge involves separate and discrete conduct from that of money laundering.   "Transaction" in Rule 8(a) requires that the joined offenses have a logical relationship with each other.   *See, e.g., U.S. v. Cardwell*, 433 F.3d 378, 386-87 (4th Cir. 2005) (charges must be logically related, not just temporally related).   Courts have held that the term is "flexible," but often determine that there is a logical relationship between offenses when there are large areas of overlapping proof, temporal relatedness, or other logical relationships between the offenses.   *See, e.g., U.S. v. Anderson*, 642 F.2d 281, 284 (9th Cir. 1981) (when the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate).

8

The Tenth Circuit frequently relies on temporal proximity to conclude that joinder is appropriate. *See, e.g., United States v. Buckley*, 216 F.3d 1088 (10th Cir. 2000) ("the temporal proximity of only four days between the bank robbery and . . . flight from arrest" permitted joinder); *United States v. Bagby*, 216 F.3d 1088 (10th Cir. 2000) (holding that a three month difference in timing did not preclude joinder, while also acknowledging that usually cases upholding joinder involve even closer time proximity). Similarly, in *U.S. v. Olsen*, the Tenth Circuit explained that perjury statements were properly joined, but only because all fifteen counts arose from a single transaction – the defendant's grand jury testimony. 519 F.3d 1096, 1102. Thus, the offenses were both temporally and logically related.

In this instance, by contrast, the offense of contempt is not temporally or logically related to the other charges. The contempt charge involves separate and discrete conduct from that of false statements and money laundering. The false statements and money laundering counts all involve conduct that occurred between April 13th and July 23rd of the year 2020. The alleged false statements all occurred during an 11- day period in April, while the alleged money laundering occurred on one day: July 23rd of 2020. The contempt offense, by contrast, involved an incident occurring on or about July 1 of 2022 – a full two years after the events which led to the other charges. No temporal proximity exists between the contempt and the earlier offenses Ms. Baver is charged with because the alleged false statements and money laundering had concluded years before. In contrast, the money laundering and false statement charges share extremely close temporal proximity. Accordingly, the fact that the offense alleged in Count 10 occurred two years after the other alleged offenses is further proof that Counts 1-9 are not properly joined with Count 10 in the Second Superseding Indictment.

9

Additionally, the alleged evidence for the contempt charge is not logically related to the alleged evidence for the other charges.   In order to "determin[e] whether offenses are based on 'acts or transactions connected together,' the predominant consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to ensure that a given transaction need only be proved once."   *Baker v. U.S.*, 401 U.S., 401 F.2d 958, 971 (D.C. Cir. 1968).   In Ms. Baver's case, joinder does not serve the goals of economy and convenience since the evidence related to the contempt charge does not relate and overlap with the other counts.   There is no repetition of evidence between the false statement, money laundering, and contempt charges.   The contempt evidence will surround an order of the court to provide ABE bank records, and steps taken by Ms. Baver to comply or not comply after the order was imposed.   Since the alleged evidence is completely separate, resolving these counts separately would not involve repetition of evidence.   Thus, judicial economy is not served by joinder in Ms. Baver's case.

Third, there is no overarching plot connecting these counts in this case.   In trying to determine whether there is a "common scheme or plan," some courts look at "whether the commission of one of the offenses either depended upon or necessarily led to the commission of the other" or whether the "proof of the one act either constituted or depended upon proof of the other."   Jawara, 474 F.3d at 574 (9th Cir. 2007 (citations omitted).   Here, the evidence alleged in the Second Superseding Indictment does not support any contention that the contempt charge somehow facilitated the false statements or alleged money laundering.   This is especially true given that those events had occurred years before.   The false statements and money laundering are based on a common scheme or plan, arising from the PPP loan applications and money

transfer to a specified movie, i.e., No Man of God.   In contrast, the contempt charge, as explained above, was about resisting a lawful order from a judge. The contempt conduct did not arise as part of a fraudulent scheme – it was not part of the PPP loan application or money transfer, nor was it related to those schemes.   The Second Superseding Indictment lacks any allegation that the contempt charge is part of a common scheme or plan, or is part of the same transaction.   Count 10 of the Second Superseding Indictment cites the date of the subpoena and other dates leading up to the alleged refusal to turn over documents.   Nothing on the face of the Second Superseding Indictment links the contempt to the money laundering and false statement charges. In essence, it fails to connect the dots.   Because the Second Superseding Indictment lacks this demonstration of connection, the contempt charge cannot be properly be joined under Rule 8(a).

Indeed, in *U.S. v. Halper*, the government argued that the defendant's scheme to defraud the Medicaid system produced the income which he then failed to report on his personal tax returns.   The court concluded that the offenses neither depended upon nor necessarily led to the commission of the other.   590 F.2d 422, 429 (2d Cir. 1978).   Thus, although there may have been some sort of "connection," it simply was not enough to permit joinder.   *Id*.   Similarly, in *United States v. Oaks*, the court found that the Defendant's scheme to commit bribery and his scheme to obstruct justice were two distinct efforts, lacking a shared objective.   285 F. Supp.3d 876, 879-80 (D. Md. 2018).   Just as in these cases, Ms. Baver's alleged crimes were two distinct efforts, and the Second Superseding Indictment has failed to allege how they shared the same objective.

The criminal contempt charge should be severed because it is not of the same or similar character, is not based on the same act or transaction, and is not part of a common scheme or plan as the other charges in the Indictment.

## II.      EVEN IF PROPERLY JOINED, COUNT 10 SHOULD BE TRIED SEPARATELY FROM THE OTHER COUNTS PURSUANT TO RULE 14

Rule 14 provides that "the court may order separate trials of counts" if joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14.   *See also, United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) ("[T]he district court may sever counts which are properly joined if it appears the defendant is prejudiced by their joinder.").   The Due Process clause of the United States Constitution similarly protects a defendant such as Ms. Baver from undue prejudice, and therefore requires severance when "there is a serious risk that a joint trial would compromise a specific right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."   *Zafiro v. United States*, 506 U.S. 534, 539 (1993).   Severance is appropriate when an individual's right to a fair trial is threatened or actually deprived.   *United States v. Holland*, 10 F.3d 696, 699 (10th Cir. 1993).   The decision to grant a severance is "within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice." *United States v. Hill*, 786 F.3d 1254, 1272 (10th Cir. 2015) (quoting *United States v. Valentine*, 706 F.2d 282, 289 (10th Cir. 1983).

*United States v. Foutz* specifically elaborates that severance may be justified if "(1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or (3) the jury may

12

conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition."   540 F.2d 733, 736 (4th Cir. 1976).

First, severance of the contempt offense is necessary to avoid prejudice in the event that Ms. Baver wishes to testify regarding some counts and invoke the Fifth Amendment regarding others.   *See Cross v. U.S.*, 335 F.2d 987, 989 (D.C. Cir. 1964) (held that joinder was prejudicial where such joinder confounded the accused in making his defense since he wished to testify on one count and to remain silent on the other)1.

It is anticipated that Ms. Baver will seek to exercise her right to testify with regard to Counts 1-9.   As noted in prior motions filed with the Court on this matter, Ms. Baver has asserted that when she was applying for the PPP loan, she was forthright to banks regarding the fact that the PPP loan was for the future hiring of employees and that at the time of the PPP loan she had no payroll, just anticipated future payroll.   However, with regard to Count 10, Ms. Baver may wish to exercise her right to remain silent, as this count simply involves the failure to act, specifically the failure of Ms. Baver to provide bank documents, which the Government already had (as noted above) and which was occurring during a period when Ms. Baver's attorneys were filing motions on her and ABE's behalf.   Joinder of these counts puts Ms. Baver in an untenable situation and severely inhibits her from properly making her defense in each matter.

---

1  A defendant who wishes to remain silent on some counts and testify on other counts must demonstrate "a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *U.S. v. Martin*, 18 F.3d 1515, 1518-1519 (10th Cir. 1994) (*quoting United States v. Valentine*, 706 F.2d 282, 291 (10th Cir. 1983)).

Second, severance is necessary because the jury would have difficulty compartmentalizing the charges of money laundering and false statements from the contempt charge, and could be swayed to convict on the false statement and money laundering charges based on the evidence heard about the unrelated contempt charge.  *See, e.g., U.S. v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) (joinder of felon in possession charge with armed bank robbery and related firearms charges was abuse of discretion because of "overwhelming probability" jurors would not adhere to court's instructions and would be swayed by evidence of prior convictions to convict defendant on unrelated charges); *U.S. v. Holloway*, 1 F.3d 307, 312 (5th Cir. 1993) (joinder was an abuse of discretion because jury was unfairly influenced to judge defendant based on who defendant was and not on material evidence). Prejudice and the risk of an unreliable verdict in this case seem self-evident, if a single jury hears evidence related to false statements and money laundering while considering a contempt allegation, and vice versa.   The elements of the money laundering and fraud counts are far more complex, and the evidence more voluminous.   Contempt, on the other hand, is quite straightforward.   If the government is able to carry its burden of proof on the simpler charge of contempt, there is a real possibility that jurors could conclude that anyone who would disregard a court order would knowingly disregard financial laws as well.   The jury may conclude from the evidence surrounding the contempt charge that Ms. Baver is a lawbreaker and therefore a person of poor moral character and quite likely to break other laws as well.   Such inferences are improper, yet likely to occur.2   This is a

---

2  It is important to note that jury instructions cannot be considered an adequate safeguard against such prejudice. As the Supreme Court acknowledged in *Bruton v. United States*, 391 U.S. 123 (1968), "[t]he naïve assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction."   *See also United States v. Riggi*, 541 F.3d 94, 104 (2d Cir. 2008). Even a properly instructed jury is likely to conflate the contempt charge with the false statements/money laundering charges.

risk that is not worth taking.   Joinder is not appropriate because of the undue prejudice it would cause Ms. Baver.

Third, severance is necessary so that the government is required to carry its burden of proof.   There is a very real risk that including the contempt charges will lower the government's burden of proof on the fraud and money laundering charges.   This is because the jury confusion explained above has the collateral consequence of lowering the government's burden of proof. The potential spillover from the easy to understand count (contempt) to the harder to understand counts (money laundering and false statements) effectively allows the government to satisfy a lower burden of proof.

While it is true that there is a liberal policy in favor of joinder among most courts, it is important to not lose sight of the reason that joinder is favored.   The liberal policy in favor of joinder is based on the fact that "[t]he rules are designed to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial."   *Bruton v. United States*, 391 U.S. 123, 123 n.6 (1968).   Significantly, in Ms. Baver's case, failure to sever would result in prejudice and an unfair trial, without furthering the main purpose behind joinder, i.e., judicial economy. Lowering the government's burden of proof is an unacceptable consequence of joinder in this case.   There is no judicial economy to be served by joinder because the contempt charge is discrete – the government can prove the contempt was willful without proving a motive for it in the underlying charges.   Joinder does not serve the interest of judicial economy, but does risk a considerable amount of prejudice toward Ms. Baver.

15

Rule 14 provides that – even if multiple counts were properly joined under Rule 8 – a court may order separate trials if consolidation for trial would "appear to prejudice [the] defendant." *United States v. Tarango*, 396 F.3d 666, 675 (5th Cir. 2005).   Whether to grant severance under Rule 14 rests squarely within the discretion of the district court.   *U.S. v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).   A district court has "very broad" discretion to sever in order to avoid unfair prejudice, or to deny such relief.   *United States v. Wiseman*, 172 F.3d 1196, 1211 (10th Cir. 1999), *abrogated on other grounds by Rosemond v. United States*, 572 U.S. 65 (2014).   "When joinder of either defendants or offenses causes the actual or threatened deprivation of a fair trial," however, "severance [pursuant to Rule 14] is no longer discretionary."   *United States v. Butler*, 494 F.2d 1246, 1256 (10th Cir. 1974). And where, as here, there is significant threat of such an unfair trial, severance is entirely appropriate and within the bounds contemplated by Rule 14.

## CONCLUSION

For the reasons noted above, the Court must grant Ms. Baver's motion for a severance and order the trial of Counts 1-9 to be separate from the trial of Count 10.   Count 10 does not meet the standard for joinder as set forth in Rule 8(a).   Even supposing it did, Count 10 should be tried separately to avoid unfair prejudice.

DATED this 8th day of May, 2023.

/s/ Kristen R. Angelos
KRISTEN R. ANGELOS
Assistant Federal Defender


/s/ Robert K. Hunt
ROBERT K. HUNT
Assistant Federal Defender

16