TRINA A. HIGGINS, United States Attorney (#7349)
JENNIFER K. MUYSKENS, Assistant United States Attorney (DC#475353)
JAMIE Z. THOMAS, Assistant United States Attorney (#9420)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ALLISON MARIE BAVER, <br><br> Defendant. | Case No. 2:21-CR-00520 JNP <br><br> UNITED STATES' TRIAL BRIEF <br><br> District Judge Jill N. Parrish |

The United States, by and through the undersigned Assistant United States Attorneys, respectfully submits this trial brief in anticipation of the trial to be held in this case.

## STATEMENT OF THE CASE

A. TRIAL STATUS

Trial is set to begin against defendant ALLISON BAVER ("BAVER") on Monday, June 26, 2023, before the Court on a 10-count Second Superseding Indictment. The United States anticipates that it will present its case-in-chief in approximately 3-4 days and expects to call approximately 16-18 witnesses. The vast majority of these witnesses reside out-of-state and are traveling to Utah for their testimony. Pursuant to the Court's Second Amended Trial Order (ECF 78), copies of marked exhibits, an exhibit list, and a witness list will be provided to the Court on June 20, 2023.

1

B.  CHARGES

Counts 1-8 of the indictment allege that BAVER made False Statements to a Bank, in violation of 18 U.S.C. § 1014, arising from the submission of multiple PPP loan applications on behalf of ALLISON BAVER ENTERTAINMENT LLC ("ABE") to two different banks, Northeast and Meridian.[1] As this Court previously summarized, "Counts 1, 2, 3, 4, 7, and 8 arise from the PPP loan applications submitted to Northeast Bank through Lendio. Counts 5 and 6 arise from the PPP loan applications submitted directly to Meridian Bank."[2] BAVER is also charged with one count of Money Laundering, in violation of 18 U.S.C. § 1957, relating to the transfer of $150,000 of the PPP loan proceeds for a film titled "No Man of God." Count 10 alleges the defendant committed criminal Contempt of Court, a violation of 18 U.S.C. §401(3), by failing to comply with two court orders to produce records in response to a grand jury subpoena issued to ABE.

As it relates to Counts 1-8, in prior pleadings and arguments to this Court, BAVER has alleged that the number of PPP applications submitted was not due to separate efforts to obtain multiple loans; rather, she alleges that earlier PPP loan applications to each bank were "drafts" or preliminary submissions. The United States filed a Motion in Limine for a ruling that all PPP applications submitted by BAVER are admissible as intrinsic evidence of Counts 6 and 8. (ECF 126). As noted in that motion, if the Court rules that the evidence of all PPP loan applications submitted to Northeast and Meridian on behalf of ABE is admissible as intrinsic evidence for the "final" applications charged in Counts 6 and 8, then the United States anticipates that it will move this Court for leave to dismiss Counts 1-5 and 7. If that motion to dismiss is made and granted by

---

[1] ABE is also charged in the Second Superseding Indictment. On June 13, 2023, this Court severed ABE because ABE continues to remain unrepresented in this criminal case. (ECF 145).
[2] Memorandum Decision and Order Denying Motion to Dismiss, p. 6 (ECF 63). In the same Order, the Court described in detail each count and what was alleged in the indictment. (ECF 63).

this Court, the dismissal of those counts will resolve some of the potential issues identified in the Court's Memorandum Decision and Order (ECF 63), will simplify the verdict form, and will render moot some of the proposed jury instructions about a "completed" or "final" application.

To prove a violation of 18 U.S.C. § 1014 (False Statements to a Bank), the United States must prove each of the following elements beyond reasonable doubt: (1) the bank was federally insured; (2) the defendant made a false statement to the bank; (3) the defendant knew the statement was false when she made it; and (4) the defendant intended to influence the actions of the bank in connection with PPP loan applications.

To prove a violation of 18 U.S.C. § 1957 (Money Laundering) as alleged in this case, the United States must prove each of the following elements beyond reasonable doubt: (1) the defendant knowingly engaged, or attempted to engage, in a monetary transaction in and affecting interstate commerce; (2) the monetary transaction involved criminally derived property of a value greater than $10,000; (3) the property was derived from a false statement to a bank; (4) the defendant acted knowingly, that is, with knowledge that the transaction involved the proceeds of a criminal offense; and (5) the transaction took place in the United States.

To prove a violation of 18 U.S.C. § 401(3) (Criminal Contempt), the United States must prove each of the following elements beyond reasonable doubt: (1) the court entered a reasonably specific order; (2) the defendant had actual knowledge of the court order; (3) the Defendant disobeyed or disregarded the order; and (4) the defendant acted willfully in disobeying or disregarding the court order.

C.  SUMMARY OF ANTICIPATED EVIDENCE

The United States anticipates the evidence at trial will show:

1.  Counts 1-8 (False Statements to a Bank)

ABE was a limited liability company that was registered in the State of Utah and began operations on October 9, 2019. ABE was a single-member LLC, managed by BAVER. ABE had no corporate office; it's principal place of business was BAVER's personal residence.

ABE had no employees and paid no wages from January 1, 2020 through March 2020. ABE's payroll records reflect no employees and no paid wages until June 2020, after receipt of the $10 million PPP loan proceeds.

To be clear, ABE was not a fictional entity. In early 2020, BAVER, through ABE, was trying to obtain rights to and/or develop several entertainment projects. These projects were: (1) a reality show titled America's Angels; (2) a short film titled "Monsters"; and (3) a film titled "Dead Princess". None of these projects were in production or even pre-production. To date, none of these projects have been produced. As of April 2020, BAVER had preliminary discussions with A&E to price out how much money ABE would have to pay A&E to put "America's Angels" on the air *after* ABE had developed, produced, and created the episodes. BAVER had also entered an agreement to purchase the rights to the script for the short film "Monsters" but no money had been paid. ABE had also retained the services of an attorney for $5,000.

In late March 2020, BAVER, acting on behalf of ABE began seeking SBA loans for ABE and BAVER's other struggling/defunct businesses. BAVER's applications for EIDL loans were denied for ABE and two other entities controlled exclusively by BAVER. Around the same time, BAVER was notified the HOA intended to foreclose on its lien on her residence for her failure to pay outstanding fees.

Beginning on or about April 13, 2020, BAVER began filling out PPP loan applications through Lendio. In total, she filled out, certified, and electronically signed numerous applications

during the time period April 13, 2020 – April 26, 2020. Each application requested a $10 million loan. The average monthly payroll listed in each application varied, from $4 million (the minimum amount necessary to obtain a $10 million loan) to more than $4.7 million. The number of employeee was initially listed as 100, then 105, until the number of employees reached 430. Lendio subsequently submitted these applications to Northeast Bank for their review.

At the same time that BAVER was utilizing Lendio's services, she personally submitted PPP loan applications to several financial institutions, including Utah First Credit Union ("Utah First") and Meridian Bank ("Meridian").

The PPP loan application submitted to Utah First sought $10 million, claimed $4 million in average monthly payroll, and claimed 430 employees. In an email to Utah First on April 21, 2020, BAVER wrote that ABE has "no past payroll history." BAVER also stated 200 jobs were impacted. In multiple emails between April 21, 2020, through April 23, 2020, Utah First informed BAVER that she was not eligible for a PPP loan because she had no payroll history either in 2019 or from January 2020 through February 2020. Utah First cited and copied the SBA guidance and instructions in those email communications. Utah First also informed BAVER on April 21, 2020 that "we cannot, under any circumstance, use future expected payroll to determine a loan amount." On April 23, 2020, Utah First informed BAVER that the PPP program rules do not allow funding when there is no documented payroll prior to February 15, 2020. Utah First further wrote: "The PPP loan program does not allow you to fund future expenses."

With this knowledge, one day later, on April 24, 2020, BAVER began submitting PPP loan applications to Meridian. In these applications, she claimed more than $4.7 million in average monthly payroll and 430 employees. Notably, BAVER's communications to Meridian do not expressly state that she has "no past payroll history." Rather, BAVER includes more ambiguous

5

language in her communications.

BAVER's payroll numbers and number of employees were based exclusively on rough budgets for the production of "America's Angels," "Monsters," and "Dead Princess." In reality, none of these projects was close to production or the hiring of employees for the show. A witness will testify that, in June 2020, these projects were only in the development stage. In sum, the evidence will show that the employee and wages claimed for April through June 2020 were not based on reality. The projects simply were not at a stage where the production crews and other employees would or could be utilized at any point in the near future.

For all these PPP loan applications (to Northeast and Meridian Bank), BAVER certified "in good faith" that her claims were "true and accurate in all material respects." BAVER further certified that she was eligible for a PPP loan.

On or about April 27, 2020, Meridian approved the funding of a $10 million PPP loan to ABE. Meridian employees will state that they were not aware that ABE had no employees and had no payroll at the time of the loan.

Shortly after receiving the PPP loan, BAVER contacted A&E and stated that she had received "financing" for "America's Angels." BAVER also contacted an individual involved in the "Monsters" film and stated she had received a PPP loan to fund the film.

After receiving the $10 million, BAVER transferred more than $70,000 to two businesses that she exclusively controlled – Lash Media, and High Rise Realty. High Rise Realty then used PPP loan proceeds to pay off BAVER's outstanding HOA dues to prevent the planned foreclosure on her personal residence. ABE also used PPP loan proceeds to pay for travel expenses, food, and other non-payroll costs.  In addition, ABE used $150,000 of PPP loan proceeds to help finance a film called "No Man of God."

Tax filings reflect that ABE paid approximately $177,000 in wages for a total of 9 employees. No employees were hired or paid by ABE prior to obtaining the PPP loan. The only record of any payment by ABE to any independent contractor prior to obtaining the PPP loan is a payment of $5,000 to an attorney. Notably, the United States was not able to perform a full financial analysis to determine if there were any other independent contractors paid prior to the PPP loan because ABE and BAVER refused to comply with the grand jury subpoena for ABE's records.

    2.   Count 9 (Money Laundering)

On or about July 23, 2020, ABE transferred $150,000 of PPP loan proceeds from its Meridian account (x8439) to Company X to invest in a film titled "No Man of God." ABE is listed as a "Producer" in the agreement with Company X.

    3.   Count 10 (Criminal Contempt)

On or about May 6, 2022, ABE was served with a subpoena duces tecum authorized by the grand jury to produce certain documents. ABE's prior counsel, Blake Hamilton and Scott Garrett, were served with the subpoena after they informed the United States that they were authorized and willing to accept service of the subpoena for ABE. The subpoena called for "[d]ocuments reflecting any bank account (other than bank accounts held at Meridian Bank) in the name of Allison Baver Entertainment, or controlled by Allison Baver Entertainment, or used by Allison Baver Entertainment, during the time period from October 2019 through December 2020." The subpoena required production of documents by June 15, 2022.

On June 14, 2022, Judge Stewart signed a written order in which he denied ABE's attempt to quash the subpoena. Judge Stewart's order explained that BAVER was accused of making false statements to a bank, and money laundering, in relation to Paycheck Protection Program ("PPP")

loan applications for ABE. Judge Stewart found a direct connection between the charges against BAVER and the subpoena request, finding "documents concerning bank accounts controlled or used by ABE are likely to provide relevant information to the grand jury's investigation." Judge Stewart further found that "grand jury's subpoena specifies the materials to be produced with sufficient particularity."

On June 28, 2022, Judge Stewart denied BAVER's motions to intervene and to quash the subpoena. Again, Judge Stewart issued a written order explaining his decision. Judge Stewart explained that ABE was an LLC and, as such, was not permitted to invoke a right against self-incrimination. The order also concluded that "an individual holding records for an entity cannot rely on their personal privilege against self-incrimination to avoid disclosure." Judge Stewart ordered ABE to comply with the subpoena by no later than June 30.

The evidence will establish that BAVER was aware of the grand jury subpoena and the two June 2022 orders issued by Judge Stewart.

ABE did not comply with the subpoena on or before June 30, 2022, as ordered by Judge Stewart. Instead, on July 8, 2022, BAVER – (not ABE) – filed notice that it was appealing the court's decision to the United States Court of Appeals for the Tenth Circuit. On August 30, 2022, the Tenth Circuit dismissed BAVER's appeal, concluding that it lacked jurisdiction to consider BAVER's interlocutory appeal.

On September 14, 2022, Judge Stewart issued an Order to Show Cause as to why BAVER and ABE should not be held in contempt for failing to comply with the subpoena and his prior orders. Judge Stewart ordered a response to the subpoena to be filed on or before September 28, 2022.

On September 28, 2022, BAVER and ABE did not comply with the show cause order, but instead filed a motion requesting that Judge Stewart stay the subpoena to allow this Court (Judge Parrish) to decide BAVER and ABE's motion to dismiss the superseding indictment.

On November 21, 2022, Judge Stewart issued a Memorandum Decision and Order denying BAVER and ABE's motion to stay the subpoena. Judge Stewart described his prior orders requiring compliance with the subpoena. Judge Stewart noted that:

> [T]he subpoena at issue was issued to ABE over six months ago. This Court has continually rejected Ms. Baver and ABE's various requests for orders of the Court allowing noncompliance with the subpoena. Despite directly ordering ABE to comply with the subpoena, Ms. Baver[ ] and ABE continue to ignore the subpoena and defy the orders of the Court. Given the strong public interest in an effective grand jury investigation and Ms. Baver and ABE's repeated delays and ongoing failure to comply with the subpoena, the Court cannot find good cause to stay the subpoena.

The November 21, 2022 order ABE to comply with the grand jury subpoena immediately.

Shortly after Judge Stewart issued the order, the United States specifically inquired of BAVER's prior counsel if a copy of Judge Stewart's order needed to be served on or otherwise provided to BAVER. Prior counsel informed the United States that he had provided a copy of the order to the defendant. Prior counsel also represented to the Court that he no longer represented BAVER in the grand jury matter at the time the November 21, 2022 order was issued. To the extent BAVER challenges her knowledge of the grand jury subpoena, or the two June 2022 orders issued by Judge Stewart, her receipt of the November 21, 2022 order in a non-privileged communication from prior counsel is evidence of her knowledge of the orders.

To date, ABE has not complied with the grand jury subpoena. BAVER has, at all times, been the sole officer of ABE and the person in exclusive control of ABE.

D.  INTERPRETER

The United States does not anticipate the need for an interpreter for any party or any witness in this case.

E.  CUSTODY STATUS

The Defendant is not in custody.

F.  PRETRIAL MOTIONS

The following pretrial motions, notices, objections or requests are pending:

<u>The United States' Motions/Requests:</u>

1. Notice of Intent to Introduce Factual Testimony, or in the Alternative, Intent to Introduce Expert Testimony of Kandace Zelaya (ECF 101);

2. Motion to Unseal Documents (ECF 105);

3. Motion in Limine to Preclude Evidence of Victim Negligence (ECF 108);

4. Notice of Stipulated Exhibits (ECF 116)

5. Notice of Intent to Use Certified Documents under Fed. R. Evid. 902(4) (ECF 125);

6. Motion in Limine for a Ruling that All PPP Applications Submitted by Defendants are Admissible as Intrinsic Evidence (ECF 126);

7. Request to Amend Proposed Joint Final Instruction No. 34 (ECF 127);

8. Objections to Defendant's Proposed Jury Instructions (ECF 128); and

9. Motion to Permit Testimony by Two-Way Live Video (filed under seal).

<u>BAVER's Motions/Requests:</u>

1. Motion to Exclude Witness Nick Patel (filed under seal)

2. Motion in Limine to Exclude Evidence Involving Neighbor and Homeowner

      Association (ECF 113);

3. Motion in Limine to Admit Supporting Documentation (ECF 117);

4. Motion in Limine to Admit Good Faith Letter (ECF 118);

5. Motion in Limine to Admit Carl Kruelle Email (ECF 121);

6. Request to Amend Defendant's Jury Instruction No. 32 and Objections to Government's Jury Instruction No. 32 (ECF 122);

7. Motion in Limine to Exclude Defendant's Prior Loan and Tax History (ECF 123);

8. Request for Amendment of Proposed Joint Final Jury Instruction No. 34 (ECF 137);

9. Motion in Limine Seeking Partial Redaction of the Government's Exhibits 71 and 72 (ECF 140); and

10. Motion to Quash Blake Hamilton's Testimony (ECF 150).

G. STIPULATIONS

The parties have not yet agreed to any stipulations as to any facts to be proved at trial. However, the parties have stipulated to the admission of certain exhibits, as outlined in the Notice of Stipulated Exhibits (ECF 116). In addition, the United States has informed defense counsel that, while it objects to the admissibility of a number of exhibits proposed by the defense, the United States will not be objecting to the authenticity of any document should the Court deem it admissible at trial. The United States has also informed defense counsel that it will not require a witness to "perfect" or authenticate a document or statement, should the Court determine that the document or statement is admissible at trial.

H. DISCOVERY

The United States has complied with its discovery obligations. Consistent with our ongoing discovery obligations, any new information that is discovered during trial preparations will be or

has already been provided to the defense. The United States requested and received certain documents from the defense as reciprocal discovery. Both parties complied with the Court's deadlines regarding the exchange of proposed exhibits.

I. EXPERT WITNESSES

The United States does not intend to call any expert witnesses. It is the position of the United States that the proposed testimony from an SBA employee, Kandace Zelaya, about the PPP loan program is lay witness testimony. Out of an abundance of caution, the United States provided detailed notice of this testimony to the Court and counsel (ECF 101). The United States respectfully requests a ruling on whether any portion of Ms. Zelaya's proposed testimony constitutes expert opinion testimony. The United States has not received notice of any potential expert witnesses for the defense.

## LEGAL ISSUES

A. ATTEMPTS TO ADMIT HEARSAY AS TO BAVER'S OWN STATEMENTS

The defense has stated their intent to introduce multiple out-of-court statements by BAVER and other third-parties. The admissibility of some of these statements is the subject of motions in limine; however, not all of the statements have been identified or briefed. BAVER'S out-of-court statements (as well as the out-of-court statements of witnesses) are hearsay unless BAVER can point to an available hearsay exception. The United States has repeatedly advised the defense about its intent to object to the admissibility of hearsay exhibits and testimony.

It is axiomatic that a party's own prior out-of-court statements offered for the truth of the matter asserted are hearsay statements and inadmissible under Federal Rule of Evidence 801(c), unless there is an applicable exception. Defense has asserted that at least some of these out-of-court statements qualify under the "state of mind" exception located at Federal Rule of Evidence

12

803(3). Statements explaining *what* the defendant's then-existing state of mind are within Rule 803(3). Statements explaining *why* the defendant had that state of mind are not exempt from the hearsay prohibition. Further, while Rule 803(3) allows statements of future intent, statements of past intent remain inadmissible hearsay. *See Shepard v. United States*, 290 U.S. 96, 105–06 (1933). In addition, statements of memory or belief by the defendant or a third party repeating the defendant's statments are expressly excluded by Rule 803(3). Further, statements made to law enforcement, after-the-fact, about why the defendant did what she did and what she was thinking in the past do not qualify for admission under Rule 803(3).

The United States submits that there may be some hearsay statements or exhibits that are admissible for purposes of impeachment of a witness, or some other exception. The admissibility of those statements cannot be determined until trial. The United States is raising its hearsay concerns simply to flag this issue with the Court given the quantity of out-of-court hearsay statements the defense has indicated they intend to try to admit at trial.

B.    PRIVILEGE CONCERNS RELATING TO CONTEMPT CHARGE

The United States subpoenaed prior counsel for BAVER to testify at trial about matters falling outside the attorney-client privilege – that is, prior counsel's act of providing a grand jury subpoena and several court orders enforcing the subpoena to BAVER, as well as statements made by counsel to the United States and the court, and actions taken by prior counsel in court. Prior counsel advised the United States that he was authorized to accept the grand jury subpoena on behalf of ABE, and he was also sent the court orders by the Court as the representative of ABE and BAVER. Prior counsel also advised the United States that he had provided a copy of Judge Stewart's November 2020 order to BAVER. The United States does not intend to inquire about advice or any matter covered by the attorney-client privilege. However, the defense has indicated,

in at least one filing, that BAVER did not have knowledge of the court orders that are the subject of the contempt charge. The defense has further suggested that BAVER's failure to comply with court orders was due to the withdrawal of prior counsel five months after the issuance of the court orders.

On June 16, 2023, BAVER filed a motion to quash the subpoena to prior counsel. The United States will file a response forthwith, and in advance of the pretrial conference. That pleading will more fully lay out the position of the United States. The United States is identifying this issue because a discussion of any waiver of attorney-client privilege, as well as the scope of subject matter waiver may be necessary prior to the start of trial.

C.  INTENT TO DECEIVE AND AWARENESS OF FALSITY BY BANK

BAVER has indicated, in multiple motions in limine filed with the Court, that she seeks to admit evidence that she informed the bank of her intent to use the PPP proceeds to prospectively hire employees. Should evidence be elicited at trial regarding the bank's awareness of the falsity of the statement regarding ABE's number of employees and average monthly payroll, or evidence regarding BAVER's intent on how she would spend the proceeds, the United States will seek to supplement proposed instruction number 32 to include the following language:

"The awareness of a false statement or the complicity of a bank is not a defense to the charge of False Statement to a Bank.[3] In addition, an absence of an intent to deceive the bank is

---

[3] *See, e.g.*, *United States v. Johnson,* 585 F.2d 119, 123-25 (5th Cir. 1978) ("The [bank's] awareness of the fraud is not relevant" to whether a violation of § 1014 occurred); *United States v. Blumenthal,* 945 F.2d 280, 282-82 (9th Cir. 1991) (affirming trial court's refusal to give jury instructions on bank officers' collusion with the defendant as the instructions did not advance a "legally sound" theory; *United States v. Brennan*, 832 F. Supp. 435, 448 (D. Mass. 1991) (section 1014 focuses on a defendant's intent to influence the bank by making false statements, not on whether the bank was actually influenced; "it was of no consequence whether or not a bank official knew the statements were false when submitted"), *aff'd,* 994 F.2d 918 (1st Cir. 1993).

not a defense to the charge. The only intent the government is required to prove is an intent to influence the bank's actions.[4]

DATED this 16th day of June, 2023.

Respectfully submitted,

TRINA A. HIGGINS
United States Attorney

By: /s/ *Jennifer K. Muyskens*
Jennifer K. Muyskens
Jamie Z. Thomas
Assistant United States Attorneys

---

[4] There are two *mens rea* elements to the crime codified in section 1014: (1) knowledge of the falsity of the information submitted to the bank; and (2) the intent to influence the action of the bank. *See United States v. Erskine,* 588 F.2d 721, 722 (9th Cir. 1978); *see also United States v. Sparks,* 67 F.3d 1145, 1151-52 (4th Cir. 1995) ("The presence or absence of an intent to deceive is simply irrelevant to the defendant's guilt; the only specific intent that matters for purposes of § 1014 is the intent to influence the bank's actions."); *United States v. Madsen,* 620 F.2d 233, 235 (10th Cir. 1980) (in a case alleging a violation of section 1014, "[t]he trial court properly recognized that the only intent necessary was an intent to influence the bank, and not an intent to harm the bank or to profit personally.").