IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALLISON MARIE BAVER,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS IN LIMINE (ECF NOS. 118, 121, 123, 126), DENYING MOTIONS IN LIMINE (ECF NOS. 91, 108, 113), GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE (ECF NO. 117, 140), OVERRULING DEFENDANT'S OBJECTION (ECF NO. 110), DENYING GOVERNMENT'S MOTION TO PERMIT WITNESSES TO TESTIFY VIA TWO-WAY LIVE VIDEO (ECF NO. 149), AND DENYING DEFENDANT'S MOTION TO QUASH SUBPOENA FOR BLAKE HAMILTON'S TESTIMONY (ECF NO. 150)**<br><br>Case No. 2:21-cr-520-JNP-CMR<br><br>District Judge Jill N. Parrish |

Defendant Allison Marie Baver ("Ms. Baver") and Allison Baver Entertainment, LLC ("ABE") (collectively, "Defendants") were charged with eight counts of making false statements to a bank in violation of 18 U.S.C. § 1014, one count of money laundering in violation of 18 U.S.C. § 1957, and one count of contempt of court in violation of 18 U.S.C. § 401(3). Second Superseding Indictment, ECF No. 47. On June 13, 2023, the court sua sponte severed the trials for this case to avoid prejudicing Ms. Baver as ABE still had not retained counsel. Ms. Baver's trial on these charges is currently scheduled to begin on June 26, 2023. Before the court are two motions in limine (ECF Nos. 108, 126) and one motion to permit witnesses to testify through live two-way video testimony

(ECF No. 149) filed by the Government, and seven motions in limine (ECF Nos. 91, 113, 117, 118, 121, 123, 140), an objection to the Government's notice of intent to introduce a witness (ECF No. 110), and a motion to quash the subpoena for Blake Hamilton's testimony (ECF No. 150) filed by Ms. Baver.

The Government has filed a motion in limine to admit all Paycheck Protection Program ("PPP") applications submitted by Ms. Baver as intrinsic evidence. ECF No. 126. During oral argument on June 20, 2023, the court GRANTED this motion. The court then GRANTED the Government's motion to dismiss counts 1–5, and 7. The Government also asks the court to preclude evidence and argument concerning possible negligence by the lenders, loan processors, or the United States Small Business Administration ("SBA"). ECF No. 108. Finally, the Government asks the court to permit two of its witnesses to testify through live two-way video. ECF No. 149.

The first motion filed by Ms. Baver is a motion to exclude Nick Patel, a Meridian Bank employee, from testifying at trial.  ECF No. 91. The second motion is a motion to exclude evidence of disputes between Ms. Baver and her neighbor and Ms. Baver and her Homeowners Association ("HOA"). ECF No. 113. Ms. Baver requests that the court admit documentation that she submitted in support of her PPP loan applications. ECF No. 117. Specifically, Ms. Baver asks the court to admit a Good Faith Certification Letter, ECF No. 118, and an email that she sent to an employee at Meridian Bank. ECF No. 121. Ms. Baver asks the court to exclude evidence of her prior loan and tax history. ECF No. 123. Ms. Baver also asks the court to either redact portions of government exhibits 71 and 72 or exclude the exhibits entirely. ECF No. 140. Ms. Baver also objects to the Government's notice of intent to call Kandace Zelaya ("Ms. Zelaya") as a witness. ECF No. 110.

Finally, Ms. Baver asks the court to quash the subpoena for the testimony of Blake Hamilton, who Ms. Baver and ABE retained as former counsel. ECF No. 150.

The court first addresses the motions filed by the Government and then moves to the motions filed by Ms. Baver.

## ANALYSIS

I.    **Motion in Limine to Admit all PPP Loan Applications Submitted by Defendants to Meridian Bank or Northeast Bank as Intrinsic Evidence of Count 6 and Count 8 (ECF No. 126)[1]**

The United States asks the court to admit all PPP applications that Ms. Baver signed and submitted to Northeast Bank and Meridian Bank as intrinsic evidence of counts 6 and 8 in the Second Superseding Indictment. ECF No. 126. Ms. Baver does not object to this motion.

On October 19, 2022, a grand jury indicted Ms. Baver on eight counts of false statement to a bank in violation of 18 U.S.C. § 1014, one count of money laundering in violation of 18 U.S.C. § 1957, and one count of contempt of court in violation of 18 U.S.C. § 401(3). ECF No. 47. Counts 1, 2, 3, 4, 7, and 8 arise from PPP loan applications submitted to Northeast Bank through Lendio, a third-party lending software. *Id.* Counts 5 and 6 arise from PPP loan applications that Defendants submitted directly to Meridian Bank. *Id.* The application that generated count 6 eventually resulted in the $10,000,000 PPP loan from Meridian Bank to ABE. *Id.*

On July 26, 2022, Defendants filed a motion to dismiss the indictment. ECF No. 39. Defendants asserted that the PPP loan applications corresponding to counts 1–5 were drafts of the final application that was submitted to Northeast Bank (corresponding to count 8). *Id.* Similarly,

---

[1] The court granted this motion orally during the final pretrial conference hearing on June 20, 2023.

Defendants asserted that count 5 was a draft of the final application that was submitted to Meridian Bank (corresponding to count 6). *Id.* Defendants argued that counts 1–5, 7, and 8 were multiplicitous with count 6, and accordingly, should be dismissed. *Id.*

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997) (internal citation omitted). The court acknowledged the multiplicity concerns, but declined to dismiss the counts given the early stage of the proceedings. *See* ECF No. 63 at 15 ("If the court becomes convinced that the counts are multiplicitous . . . the court can address these concerns through a variety of remedies, such as requiring the United States to elect between counts prior to trial. . . . But at this stage, the court declines to dismiss the counts due to multiplicity concerns.").

The Government now asks the court to admit the PPP applications identified in Counts 1–5, 7, and 8, as well as any other applications that Ms. Baver submitted to Meridian Bank or Northeast Bank during this time period as intrinsic evidence of counts 6 and 8. The Government "anticipates that it will move this Court for leave to dismiss Counts 1–5 and 7" if the court admits the corresponding applications as intrinsic evidence for the final applications. ECF No. 126 at 5 n.2. This will then "resolve some of the potential [multiplicity] issues" the court previously identified. *Id.*

Multiplicity and the admissibility of prior wrongs are distinct concepts. However, in conducting the analysis for both, the court asks whether the alleged acts are part of the same criminal transaction. *See United States v. Patterson*, 760 F. Supp. 2d 1116, 1120 ("The issue of multiplicity may arise when a defendant is faced with an indictment charging multiple violations of the same statute from relatively contemporaneous conduct" and "[i]n such situations, the central question is often whether the underlying conduct is part of the same transaction or comprises

4

distinct episodes that can be punished separately."); *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (internal quotations omitted) ("Other act evidence is intrinsic—and thus not subject to Rule 404(b)—when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.").

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. The Government cannot introduce evidence of other crimes, wrongs, or acts committed by the defendant to establish that the defendant has the propensity to commit the charged offense. Fed. R. Evid. 404(b). This exclusion "does not apply to other act evidence that is intrinsic to the crime charged." *United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir.1997); *United States v. Parker*, 553 F.3d 1309, 1314–15 (10th Cir. 2009) ("[E]vidence of acts or events that are part of the crime itself, or evidence essential to the context of the crime, does not fall under the other crimes limitations of Rule 404(b)"). Intrinsic evidence is still "subject to the requirement of [Federal Rule of Evidence] 403 that its probative value is not substantially outweighed by the danger of unfair prejudice." *United States v. Lambert*, 995 F.2d 1006, 1007–08 (10th Cir.1993).

Ms. Baver has been charged with violating 18 U.S.C. § 1014 (False Statement to a Bank), which consists of the following elements: 1) defendant "made a false statement" 2) "to a federally insured bank" 3) "knowing the statement was false" and 4) "intending to influence the bank." *United States v. Copus*, 110 F.3d 1529, 1535 (10th Cir. 1997). As an initial matter, the court is persuaded that the prior submitted PPP applications are relevant. A jury may find that the multiple submissions are important in determining whether Ms. Baver *knowingly* made false statements, and her *intent* in so doing.

If the Government declines to prosecute counts 1–5 and 7, then the submissions corresponding to these counts are uncharged crimes. The Government argues that although the evidence of these counts corresponds to uncharged crimes, Rule 404(b) does not apply because the evidence is intrinsic to counts 6 and 8. *Irving*, 665 F.3d at 1212 (explaining that Rule 404(b) does not apply to intrinsic evidence). "[I]ntrinsic evidence is that which is 'directly connected to the factual circumstances of the crime and provides contextual or background information to the jury.'" *Id.* (internal citation omitted). To prove that the other PPP applications are intrinsic, the Government must demonstrate that the other applications are (1) "inextricably intertwined" with the charged counts, (2) "part of a single criminal episode," or (3) "necessary preliminaries to the crime charged." *Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)).

The court is persuaded that the other submissions are intrinsic evidence of counts 6 and 8. Ms. Baver has previously represented that the prior submissions to Meridian Bank and Northeast Bank were drafts of the final applications. The "draft submissions" were submitted within two weeks of the "final submissions." ECF No. 38 at 8. The court is persuaded that the prior submissions to Northeast Bank and Meridian Bank were part of the alleged single criminal episode of making false statements to banks to obtain a $10 million PPP loan, and thus, intrinsic evidence. *See United States v. Leutwiler*, 446 F. App'x 970, 972 (10th Cir. 2011) (concluding that testimony concerning destruction of incriminating evidence and collusion to deceive law enforcement agents was part of a single criminal episode of unlawful possession of a machine gun).

Having concluded that the prior submissions are admissible as intrinsic evidence, the court moves to its Rule 403 analysis. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

6

the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The court is persuaded that the introduction of the prior submissions will not prejudice Ms. Baver. The "draft submissions" giving rise to counts 1–5 and 7 are listed as independent counts in the second superseding indictment and evidence relating to these counts would be admissible at trial. Moreover, the court is confident that the risk of jury confusion is low as a jury can distinguish draft applications from final applications. Thus, the court admits the prior PPP applications that Ms. Baver submitted to Meridian Bank and Northeast Bank—and specifically, those giving rise to counts 1–5 and 7—as intrinsic evidence of counts 6 and 8. ECF No. 126.

## II. Motion in Limine to Preclude Evidence and Argument Concerning Possible Negligence by the Victim Lenders, Loan Processors, or the United States Small Business Administration (ECF No. 108)

Next, the Government asks the court to preclude Ms. Baver from introducing evidence and making arguments concerning victim negligence and from minimizing the magnitude of the financial loss at trial. ECF No. 108. The court addresses the victim negligence argument first.

Specifically, the Government requests that the court prohibit Ms. Baver from criticizing "any lender or loan processor or the SBA's internal controls." *Id.* at 5. In support of this argument, the Government cites *United States v. Callipari*, 368 F.3d 22 (1st Cir. 2004) *vacated on other grounds*, 543 U.S. 1098 (2005). The United States prosecuted Mr. Callipari for conspiracy to commit wire fraud, wire fraud, and obstruction of an SEC investigation. *Id.* at 37. The trial court permitted Mr. Callipari to cross-examine his co-conspirator's supervisor concerning knowledge of the co-conspirator's history of substance abuse, the company's investigative procedures, and whether the company had adequate procedures in place to prevent employees from engaging in

unauthorized self-dealing transactions. However, the district court "restrict[ed] further cross-examination on the well-founded concern that suggestions of 'blaming the victim' might turn into a 'fishing expedition' that would confuse the issues for the jury and unfairly prejudice the government's case." *Id.* at 38 (internal citation omitted).

The Government asserts—and the court agrees—that victim blaming is not a defense to fraud. *See United States v. Frenkel*, 682 F. App'x 20, 22 (2d Cir. 2017) ("Frenkel's argument that the district court erred in precluding him from arguing that Citigroup was negligent fails because a victim's negligence is not a defense under the federal fraud statutes."). However, contrary to the Government's argument, the district court in *Callipari* did not impose, as the Government requests here, a blanket proscription on arguments related to lender negligence. Rather, the court allowed Mr. Callipari "a reasonable opportunity to cross-examine government witnesses on his purported defense theory" and then restricted Mr. Callipari's counsel from cross-examining witnesses on irrelevant issues. *Callipari*, 368 F.3d at 38.

At this point in the proceedings, the court has no reason to suspect that Ms. Baver will victim blame or make lender negligence arguments to confuse the jury. Ms. Baver has previously asked the court to consider emails that she sent to SBA representatives regarding ABE's eligibility for a PPP loan. ECF No. 82 at 13. Ms. Baver has also indicated that she intends to challenge the "intent to influence [a] bank" element of a § 1014 violation by contesting the definition of a completed application. *See* ECF No. 117 at 7 ("For Meridian Bank and Northeast Bank to have acted upon Ms. Baver's four-page application form, they would need information and documents in addition to the four-page application form before her loan application package would be complete and the bank would review and act upon it.").

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks omitted). While "evidence of individual lender behavior" is not a proper fraud defense, "evidence of the lending standards generally present in the industry" is relevant and admissible in determining the materiality of the false statement and whether the defendant intended to influence a bank. *United States v. Lindsey*, 850 F.3d 1009, 1018 (9th Cir. 2017). Although Ms. Baver cannot introduce "evidence of the behavior of individual lenders—for instance, evidence of specific prior bad loans or particular mistakes by underwriters—defendants may attack materiality though industry practice." *Id.* "[D]efendants can offer testimony about the types of information, such as household income or assets, that lenders typically consider, as well as evidence of how much weight the industry generally gives to statements about such information." *Id.*

The court is persuaded that the Government's request is premature and overly broad. The Government requests that the court preclude Ms. Baver from introducing "*any* criticism" of internal control procedures by the banks involved, loan processors, or the SBA. ECF No. 108 at 5**.** Such a restriction would prevent Ms. Baver from introducing the defense above and violate her Sixth Amendment right to present a complete defense. Moreover, the Government has indicated that it intends to introduce a witness who will testify on the purpose of the PPP, the guidance provided by the SBA, and the SBA's limited role in the administration of PPP loans. ECF No. 101. It would be unfair for the court to allow the Government to present all this information concerning the PPP implementation process, and then prohibit Ms. Baver from making "any veiled references to the speed that the PPP loan program was put together or any policy interests in distributing funds." ECF No. 108 at 5. In short, the court DENIES the request made by the Government to

preclude Ms. Baver from making any arguments or introducing any evidence concerning lender, loan processor, or SBA negligence.

Second, the Government asks the court to prohibit Ms. Baver from making arguments that the PPP loan "resulted in only a minimal financial loss." ECF No. 108 at 5. The court agrees that this would be an improper defense. *See United States v. Kellerman*, 432 F.2d 371, 376 (10th Cir. 1970) ("The degree of potential harm or lack thereof is no defense, and the trial court properly excluded testimony bearing on such a theory."). However, as the Government itself concedes, Ms. Baver has not indicated that she intends to make this argument. ECF No. 108 at 5 ("The Government does not know on what basis the defense would try to make arguments concerning this guarantee or the seizure of funds . . . ."). At this juncture, the Government's request is premature.

In short, the court DENIES the motion filed by the Government to preclude Ms. Baver from making the foregoing arguments because the requests are either too broad or premature. ECF No. 108.

## III. Motion to Permit Witnesses "J.H." and "A.L." to Testify by Two-Way Live Video Conference (ECF No. 149)

The Government asks the court to permit two of its witnesses ("J.H." and "A.L.")[2] to testify at trial via two-way live videoconference. ECF No. 149. The Government asserts that both J.H. and A.L. are critical witnesses who cannot appear due to health-related concerns. Ms. Baver

---

[2] The Government filed this motion under seal, presumably because it contains personal health information about the witnesses. To protect the privacy of the witnesses, the court refers to the witnesses by their initials.

objects and asserts that permitting the witnesses to testify through live video violates her Sixth Amendment rights. ECF No. 151.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. "[T]he Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). Live in person testimony is important because "physical presence, oath, cross-examination, and observation of demeanor" ensure "that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings." *Maryland v. Craig*, 497 U.S. 836, 846 (1990).

However, this right is not absolute. *Id.* at 850. In *United States v. Gigante*, the Second Circuit affirmed the district court's decision to permit a witness to testify through two-way video. *Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) ("The facts of Savino's fatal illness and participation in the Federal Witness Protection Program, coupled with Gigante's own inability to participate in a distant deposition, satisfy this exceptional circumstances requirement . . . .").

Although the right to face to face confrontation is not absolute, this "does not . . . mean that it may easily be dispensed with." *Craig*, 497 U.S. at 850. Other circuits have concluded that two-way video testimony violates a defendant's confrontation clause rights. *See United States v. Carter*, 907 F.3d 1199, 1207 (9th Cir. 2018); *United States v. Yates*, 438 F.3d 1307, 1313–15 (11th Cir. 2006) (en banc); *United States v. Bordeaux*, 400 F.3d 548, 554–55 (8th Cir. 2005). And courts within this circuit have noted that "[e]xcept in rare cases, the prosecution's use of live or recorded video testimony without the defendant having the ability to confront the witness face-to-face violates a defendant's Confrontation Clause rights—absent a showing of unavailability and prior

11

opportunity to confront the witness." *United States v. DeLeon*, 423 F. Supp. 3d 1210, 1236 (D.N.M. 2019).

The court is sympathetic to J.H. and A.L.'s health concerns, but it is not persuaded that their concerns constitute an exceptional circumstance.[3] *See Gigante*, 166 F.3d at 79 ("At this hearing, an emergency medicine physician employed by the Federal Witness Protection Program testified that he had examined Savino and that 'it would be medically unsafe for [Savino] to travel to New York for testimony.'"). The witnesses' health conditions are not new, and although the trial date in this matter has been set for months, the Government has not moved to depose the witnesses under Rule 15 and did not even notify defense counsel of its desire to present video testimony until approximately three weeks ago. Indeed, prior to Ms. Baver notifying the court of technological concerns with live video testimony, the court was not aware that the Government was planning for witnesses to testify through live video. In order to preserve Ms. Baver's Sixth Amendment rights, the court DENIES the Government's motion. ECF No. 149.

## IV.    Motion in Limine to Exclude Witness Nick Patel (ECF No. 91)

Having addressed the evidentiary motions filed by the Government, the court moves to those filed by Ms. Baver.

Nick Patel ("Mr. Patel") is an employee of Meridian Bank who worked on processing ABE's loan application. Both parties agree that Mr. Patel is competent and possesses relevant

---

[3] The Government notes that J.H. is immunocompromised, has familial obligations, and has not travelled since the COVID-19 pandemic began. A.L. experiences pain and inflammation when she travels, although defense counsel has alleged that she recently travelled to Europe to attend the Cannes film festival.

personal knowledge. ECF Nos. 96, 98. Ms. Baver asks the court to exclude Mr. Patel from testifying at trial because the Government has allegedly tainted his testimony.

In October 2020, after the Government seized approximately $9.5 million of the $10 million PPP loan that Meridian Bank made to ABE, Ms. Baver retained Pamela L. Johnston (Ms. Johnston) as counsel to negotiate a pre-indictment resolution with the Government. ECF No. 91 at 2–3. Ms. Johnston prepared a 123-page PowerPoint presentation ("Johnston PowerPoint"), which she provided to the Government during a reverse proffer meeting on December 8, 2020. *Id.*

The Government had interviewed Mr. Patel in connection with ABE's PPP loan application prior to the reverse proffer. ECF No. 96 at 3 n.3. After the reverse proffer, in February 2021, the Government conducted a second interview with Mr. Patel. *Id.* During that interview, the Government showed Mr. Patel the Johnston PowerPoint. Ms. Baver alleges that by doing so, the Government intentionally tainted Mr. Patel's testimony in violation of Rules 615 and 410(a)(4) of the Federal Rules of Evidence.

As a preliminary matter, the court is convinced that Mr. Patel has relevant information under Rule 401 because Mr. Patel was a Meridian Bank employee who processed Ms. Baver's loan application. However, the court is not persuaded to allow Mr. Patel to testify about information he learned about this case after he processed the loan. *See* Patel Interview, ECF No. 91-2 at 48 ("So, I mean, looking back, I -- I think knowing what we know now, we -- we would have done things differently, asked more questions kind of looked into things a bit more and probably not have made this loan, looking back and knowing what we know now."). Mr. Patel is providing lay witness testimony. "Rule 701(a) requires lay-witness opinion testimony to be based on the witness's 'first-hand knowledge or observation.'" *United States v. Powers*, 578 F. App'x 763, 770 (10th Cir. 2014) (internal citation omitted). While Mr. Patel may testify as to what he did and what he knew at the

13

time that he processed the loan, he cannot opine as to how he hypothetically would have acted if additional information was available when he initially processed the loan.

The court moves to Ms. Baver's Rule 615 argument. "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. Some circuits have interpreted Rule 615 to only apply in the literal context of excluding witnesses from the courtroom during trial. *See United States v. Baca*, 447 F. Supp. 3d 1232, 1235 (D.N.M. 2020) (collecting cases). However, "Tenth Circuit precedent indicates that the scope of sequestration under rule 615 is considerably broader than exclusion from the physical courtroom . . . ." *United States v. Deleon*, No. CR 15-4268 JB, 2018 WL 1871418, at *2 n.1 (D.N.M. Apr. 17, 2018). Rule 615 prohibits a witness from disclosing "part of what he said on the stand" to a second witness standing outside the courtroom waiting to testify. *United States v. Johnston*, 578 F.2d 1352, 1354 (10th Cir. 1978). Witnesses who are queued to testify cannot "discuss[] the case with other witnesses." *United States v. Greschner*, 802 F.2d 373, 375 (10th Cir. 1986). Parties cannot circumvent Rule 615 by reading trial transcripts instead of hearing live testimony. *See United States v. Robertson*, 895 F.3d 1206, 1215–16 (9th Cir. 2018); *United States v. Friedman*, 854 F.2d 535, 568–69 (2d Cir. 1988).

But Rule 615 does not prohibit witnesses from discussing the case under all circumstances. *See United States v. Staten,* No. 1:10-CR-00179, 2013 WL 1703396, at *5 (M.D. Pa. Apr. 19, 2013) ("Defendant has failed to identify any legal authority standing for the proposition that Rule 615 is violated—or that a reversible error occurs—where witnesses are not excluded from the courtroom despite the fact that no sequestration order was in effect and no request to exclude witnesses was made."). Ms. Baver has not provided any authority suggesting that Rule 615 applies in the absence of a sequestration order. And here, Ms. Baver has acknowledged that "no official

14

sequestration order was in effect" during Mr. Patel's interview. ECF No. 98 at 7. Thus, the court is convinced that Rule 615 is inapplicable.

Moreover, even if the Government had violated Rule 615, excluding Mr. Patel would not be the appropriate remedy. Exclusion is reserved for the most egregious violations. *See Friedman*, 854 F.2d at 568 (internal quotations omitted) ("[T]he exclusion of testimony is a serious sanction, appropriate only where the defendants have suffered actual prejudice, and there has been connivance by the witness or counsel to violate the rule."). In summary, the court is not persuaded that the Government committed a Rule 615 violation by showing Mr. Patel the Johnston PowerPoint, let alone committed a violation warranting the wholesale exclusion of Mr. Patel's testimony.

Having addressed the Rule 615 argument, the court moves to the Rule 410(a)(4) argument. "[A] statement made during plea discussions with an attorney for the prosecuting authority [is not admissible against the defendant who made the plea or participated in the plea discussions] if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Fed. R. Evid. 410(a)(4).

Ms. Baver argues that the Government violated Rule 410(a)(4) by showing the Johnston PowerPoint, which was stamped "CONFIDENTIAL SETTLEMENT DISCUSSION" and "Covered by the Settlement Privilege, FRE 408, 410 and FRCP 11(f)" to Mr. Patel. ECF No. 91-1. But Ms. Baver misunderstands Rule 410. Rule 410(a)(4) excludes statements made by the defendant in advance of a plea deal from being admitted against the defendant at trial. *United States v. Ruminer*, 786 F.2d 381, 385 (10th Cir. 1986). Rule 410 does not impose a duty of confidentiality upon the Government.

If the Johnston PowerPoint was covered by the settlement privilege, it would be inadmissible at trial. However, no rule prohibits a witness who has viewed the Johnston PowerPoint from testifying at trial. While Mr. Patel may not testify about what he learned from the slides, the Government has represented that it "intends to follow the Rules of Evidence and limit its questions to appropriate and admissible matters about which Mr. Patel has personal knowledge." ECF No. 96 at 9. This requires, as the court previously explained, that Mr. Patel will not be permitted to testify as to how information that later transpired would have impacted his previous decisions. Furthermore, Ms. Baver can cross-examine Mr. Patel at trial regarding any possible Government taint.

Thus, while the court agrees with Ms. Baver that the Government did not exercise sound judgment by showing Mr. Patel the Johnston PowerPoint, this is neither a violation of Rule 615 or Rule 410 nor warrants the exclusion of Mr. Patel's testimony. Accordingly, the court DENIES the motion to exclude Mr. Patel as a witness. ECF No. 91.

## V.      Motion in Limine to Admit Good Faith Letter (ECF Nos. 118)

Ms. Baver asks the court to admit the Good Faith Letter that she submitted to both banks along with her four-page application form.[4] Ms. Baver argues that the letter should be admitted pursuant to the rule of completeness or as a statement of her present intent. The Government asks the court to exclude the Good Faith Letter as hearsay.

Hearsay is an out of court statement that is offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Hearsay is generally inadmissible. Fed. R. Evid. 802. However, "[a]

---

[4] The Good Faith Letter is one of the documents included in Ms. Baver's motion to admit supporting documentation. ECF No. 117.

statement by a party is not hearsay when offered by the opposing party." *United States v. Harry*, 816 F.3d 1268, 1279 (10th Cir. 2016) (explaining that under Rule 801(d)(2), the Government may introduce the text messages sent by the defendant as evidence, but in the absence of a hearsay exception, the defendant cannot introduce his own text messages). In other words, while the Government may introduce the four-page application form submitted by Ms. Baver, unless a hearsay exception applies, Ms. Baver cannot introduce the documents that she submitted.

Ms. Baver argues that the Good Faith Letter should be admitted under Rule 106. "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." Fed. R. Evid. 106. "The rule of completeness, both at common law and as partially codified in Rule 106, functions as a defensive shield against potentially misleading evidence proffered by an opposing party." *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1089 (10th Cir. 2001). A statement that "(1) explains the admitted evidence, (2) puts the admitted evidence in context, (3) does not itself mislead the jury, and (4) ensures that the jury can fairly and impartially understand the evidence" may be admitted under Rule 106. *United States v. Williston*, 862 F.3d 1023, 1038–39 (10th Cir. 2017).

The court is persuaded that the Good Faith Letter, which was submitted along with the four-page application form, is necessary to provide context to the employment and payroll statements made in the four-page application form. The Government argues that because the four-page form, standing alone, is clear, no further documents may be admitted under Rule 106 to clarify

17

it.[5] But the purpose of Rule 106 is not just to clarify ambiguity, but also to provide context and ensure that the jury can fairly and impartially understand the evidence. *Williston*, 862 F.3d at 1039. The Good Faith Letter provides additional detail about ABE's employment and payroll numbers. Ms. Baver submitted the letter simultaneously with the four-page application. Excluding the letter and portraying the situation as Ms. Baver submitting a standalone PPP application would unfairly prejudice Ms. Baver. Thus, the court is persuaded to admit the letter pursuant to Rule 106.

Alternatively, the Good Faith Letter is admissible pursuant to Rule 803(3) to show "the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health) . . . ." Fed. R. Evid. 803(3). Rule 803(3) "allows the admission of an extrajudicial statement, not to prove the truth of the matter asserted, but to show a future intent of the declarant to perform an act *if the occurrence of that act is in issue*." *United States v. Freeman*, 514 F.2d 1184, 1190 (10th Cir. 1975) (emphasis added).

The Government asserts that the statements of intent contained in the Good Faith Letter are admissible only if Ms. Baver actually "perform[ed] the intended acts." ECF No. 142 at 5. The Government cites *United States v. Pyron*, 113 F.3d 1247 (10th Cir. 1997) in support. But *Pyron* can be distinguished because "Mr. Pyron [did] not contest the fact [that] he did neither of those acts." *Id.* at *2. Ms. Baver has not made such a concession and the Government admits that within five months of receiving the PPP loan, ABE employed six individuals. ECF No. 142 at 5. As long as the occurrence of the act is in question, the statement of future intent is admissible.

---

[5] The Government also suggests that Rule 106 does not apply because the form is provided in full without redactions. ECF No. 142 at 3 ("The United States is not seeking to redact the form in any way."). But Rule 106 does not only apply to documents with redactions. It also applies when a party introduces *all of a writing* and it permits the opposing party to introduce *any other writing*.

In short, the court is persuaded to admit the Good Faith Letter pursuant to Rule 106 of the Federal Rules of Evidence. Alternatively, the letter may be admitted as a statement of Ms. Baver's state of mind under Rule 803(3). Thus, the court GRANTS the motion in limine. ECF No. 118.

## VI.    Motion in Limine to Admit Email to Carl Kruelle (ECF No. 121)

Ms. Baver asks the court to admit an email that she sent to Carl Kruelle ("Mr. Kruelle"), a Meridian Bank employee, the day before she submitted her PPP loan application to Meridian Bank. In the email, Meridian Bank employees inform Ms. Baver of other documents that she needs to provide in order for Meridian Bank to process her PPP loan application. ECF No. 104-38. Ms. Baver argues that the email, like the Good Faith Certification letter, should be admitted under Rules 106 or 803(3).

The Government argues that the email is irrelevant because Ms. Baver's intent to deceive a bank is not an element of a § 1014 violation. *See United States v. Madsen*, 620 F.2d 233, 235 (10th Cir. 1980) ("[T]he only intent necessary was an intent to influence the bank, and not an intent to harm the bank or to profit personally.").  However, the email is relevant to whether Ms. Baver intended to influence the actions of a bank, which is the fourth element of a § 1014 violation. If a bank refused to process a PPP loan without certain documents, the provision or absence of these documents impacts the determination of intent.

Furthermore, the email, which was sent a day prior to Ms. Baver's application form, provides relevant context for the application. Like with the Good Faith Letter, it would unfairly prejudice Ms. Baver for the jury to consider the application in the absence of this email. Ms. Baver submitted her PPP loan application and the accompanying documents to Meridian Bank after contacting employees at Meridian Bank. She could not include the information contained in

the email on the four-page application form. The court is persuaded that the email chain is admissible under Rule 106 and thus GRANTS the motion in limine. ECF No. 121.

## VII.   Motion in Limine to Admit Supporting Documentation (ECF No. 117)

In addition to the Good Faith Letter and the email chain, Ms. Baver asks the court to admit documents that were submitted either in conjunction with the PPP applications or that she claims are necessary to provide context for the applications. Specifically, Ms. Baver requests that the court admit the following documents submitted to Meridian Bank: 1) the PPP loan application table of contents, 2) ABE articles of incorporation, 3) ABE business registration, 4) ABE form 2553 S-Corp, 5) driver's license, 6) seasonal payroll audit, 7) payroll budget, and 8) 7A program calculator. ECF No. 117 at 3. In addition, Ms. Baver requests that the court admit the additional documents submitted to Northeast Bank: 1) lawyer engagement letter, 2) lawyer payment, and 3) documents corresponding to ABE projects in development. *Id.* Ms. Baver argues that these documents should be admitted pursuant to Rule 106 of the Federal Rules of Evidence.

The Rule 106 arguments made in this motion and the Government's objections are duplicative of the arguments made in the motions concerning the Good Faith Letter (ECF No. 118) and email chain (ECF No. 121). The court initially agrees with Ms. Baver that it is important for the jury to consider the four-page application along with the other documents that she submitted to the banks and that Rule 106 permits inclusion of these documents. However, Rule 403 permits the court to strike cumulative evidence. Having reviewed the lawyer engagement letters and entertainment project related documents submitted to Northeast Bank, the court concludes that

they are cumulative.[6] Therefore, the court GRANTS IN PART and DENIES IN PART Ms. Baver's motion. The court admits the supporting documents that Ms. Baver submitted to Meridian Bank (corresponding to ECF Nos. 104-3–104-19) and excludes the additional documents that Ms. Baver submitted to Northeast Bank (corresponding to ECF Nos. 104-19–104-37).

## VIII. Motion in Limine to Exclude Evidence Involving Neighbor and Homeowners' Association (ECF No. 113)

Defendants ask the court to exclude any evidence involving Ms. Baver's neighbor and any evidence relating to Ms. Baver's dispute with her HOA. ECF No. 113. As a preliminary matter, the Government has indicated that it does not intend to include evidence concerning Ms. Baver's dispute with her neighbor in its case in chief. ECF No. 109 at 4 n.1. Accordingly, the court only addresses evidence arising from the HOA dispute.

In December 2011, Ms. Baver registered Lash Media, LLC ("Lash Media") with the State of Utah. ECF No. 109 at 3. In May 2014, Ms. Baver registered High Rise Realty, LLC ("High Rise Realty") with the State of Utah. *Id.* Ms. Baver is the registered agent and 100% owner of both of these entities. *Id.* High Rise Realty is listed as owning the townhome in which Ms. Baver currently resides. *Id.*

As of April 2020, High Rise Realty owed dues to the HOA, which had been unpaid for over two years. The HOA held a lien on the townhome and informed Ms. Baver that it intended to foreclose on its lien. In May 2020, shortly after ABE received the $10 million PPP loan, ABE

---

[6] As an example, the court does not believe that two movie scripts, each over one-hundred pages in length, provides additional relevant information to the jury.

transferred over $18,000 to High Rise Realty. In June 2020, High Rise Realty paid the HOA dues on the townhome. During the same period, ABE transferred $57,589.81 to Lash Media.

First, Ms. Baver asserts that the dispute with her HOA should be excluded under Rule 402 as "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. During the final pretrial hearing, Ms. Baver argued that the Government has not provided evidence demonstrating that ABE deposited proceeds from the PPP loan with High Rise Realty prior to the repayment of the HOA dues. The Government represented that it could provide Ms. Baver with records connecting the PPP proceeds to the HOA payments. The court proceeds with this analysis under the assumption that the Government will provide these records. However, if the Government fails to establish that the proceeds were transferred to High Rise Realty prior to the HOA payment, then evidence of the HOA payments is inadmissible.

Assuming that some of the PPP proceeds were deposited with High Rise Realty, how the loan proceeds were spent is relevant to whether Ms. Baver made false statements and intended to influence the banks. It also serves as motive evidence for both the § 1014 and § 401(3) charges.

Alternatively, Ms. Baver asserts that the HOA transactions should be excluded under Rule 404 because "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404. But Rule 404 does not apply in this situation. The Government, contrary to Ms. Baver's assertion, is not introducing her dispute with the HOA "to insinuate that because she has had HOA payment disputes, she is someone who is more likely to break laws." ECF No. 113 at 3. The transactions are either intrinsic evidence of the § 1014 and § 401(3) violations, or admissible as evidence of her motive in committing the charged violations. *See United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir. 2001) ("[F]inancial evidence [that] is

introduced to show a sudden change in a person's financial status" is admissible as both motive evidence and circumstantial evidence of the crime.).

Ms. Baver's Rule 403 argument is also unconvincing as the court is not persuaded that a jury will convict Ms. Baver of violating 18 U.S.C. § 1014 because of an emotional response to learning that Ms. Baver did not pay her HOA dues on time. ECF No. 113 at 7.

Thus, the court DENIES the motion to exclude evidence involving the HOA. ECF No. 113.

## IX.   Motion in Limine to Exclude Ms. Baver's Prior Tax and Loan History (ECF No. 123)

Ms. Baver asks the court to exclude evidence of her prior loan and tax history. ECF No. 123. Specifically, Ms. Baver objects to the introduction of four letters that relate to other SBA loan applications that she submitted around the same time as the PPP applications. The SBA denied all three of Ms. Baver's other applications based on her creditworthiness. In addition, Ms. Baver also asks the court to exclude evidence of a dispute arising between Ms. Baver and the IRS concerning a 2010 tax matter. Ms. Baver asks the court to exclude this evidence as either irrelevant pursuant to Rule 402 or in the alternative, overly prejudicial pursuant to Rule 403.

The Government asserts that the exhibits are relevant evidence of Ms. Baver's motive. The Government argues that the loan applications, which were rejected one week prior to the PPP applications, are evidence of Ms. Baver's financial problems. ECF No. 144. Similarly, while the tax dispute between Ms. Baver and the IRS concerned her 2010 taxes, the Government seeks to introduce a letter from April 2020 wherein Ms. Baver requests relief for the overdue taxes.

Although the Government cites cases from other circuits that permit evidence of a defendant's financial hardship to establish a defendant's motive to commit a financial crime, the Tenth Circuit prohibits the introduction of "poverty evidence." *United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir. 2001). "Traditionally, evidence of poverty has not been admissible to show

a motive for committing crime. Not only would allowing such evidence be unduly prejudicial to poor defendants, but it does not, in fact, prove much—even wealthy people may commit financial crimes in hope of amassing still more money." *Id.* The only argument that the Government has presented for inclusion of exhibits 62c, 63c, 64b, 65, and 66, is that the exhibits establish Ms. Baver's financial distress. *See* ECF No. 144. However, the court is not persuaded by this argument for inclusion in light of Tenth Circuit precedent concluding that such a purpose is improper.

Ms. Baver argues that the exhibits should be excluded under Rule 402. The court agrees. "Irrelevant evidence is inadmissible." Fed. R. Evid. 402. Four of the five exhibits that Ms. Baver seeks to exclude relate to applications to other SBA loan programs. Both parties agree that unlike the PPP, which does not consider an applicant's creditworthiness, an applicant's eligibility for the other three SBA loan programs referenced in the exhibits depends heavily on creditworthiness. ECF Nos. 123, 144. The court is not persuaded that Ms. Baver's applications to other loan programs are relevant to the current proceeding. Similarly, the court is not persuaded that attempts to settle a tax deficiency arising in 2010 relate to the charged offenses. Because the court is persuaded that Ms. Baver's prior tax and loan history is irrelevant, the court GRANTS the motion filed by Ms. Baver to exclude exhibits 62c, 63c, 64b, 65, and 66. ECF No. 123. Even if the exhibits are tangentially relevant, they are more prejudicial than probative under Rule 403.

## X.   Motion in Limine to Redact Portions of Government Exhibits 71 and 72 (ECF No. 140)

Ms. Baver asks the court to redact or exclude government exhibits 71 ("First Order") and 72 ("Second Order"), which correspond to two orders issued by Judge Ted Stewart in the parallel sealed civil forfeiture case. Specifically, Ms. Baver asks the court to redact the legal reasoning contained in the orders.

Ms. Baver does not contest that the orders are relevant. After all, in order to demonstrate a violation of 18 U.S.C. § 401(b)(3), the Government must prove that "the court's order is sufficiently specific so as to put the alleged contemnor on notice." *United States v. Voss*, 82 F.3d 1521, 1525 (10th Cir. 1996). Ms. Baver asserts that while the orders may be relevant, the legal analysis contained therein is irrelevant to the matter of her compliance and will only confuse the jury. Moreover, Ms. Baver argues that the legal analysis is prejudicial. The jury may misinterpret her previous objections to the subpoena as evidence of contempt. The Second Order explains that Ms. Baver's Fifth Amendment right against self-incrimination does not protect her from complying with the subpoena against ABE.

The court addresses the Second Order first. "[O]nce a defendant invokes his right to remain silent, it is impermissible for the prosecution to refer to any Fifth Amendment rights which defendant exercised." *United States v. Burson*, 952 F.2d 1196, 1201 (10th Cir. 1991). Ms. Baver has indicated that she may exercise her Fifth Amendment right against self-incrimination with respect to the contempt charge. ECF No. 99. However, the Second Order reveals that Ms. Baver previously attempted to exercise her Fifth Amendment right to avoid complying with the subpoena directed at ABE. From this, a jury may improperly infer her guilt in this proceeding. But "one's earlier invocation of his constitutional privilege cannot be used at trial." *United States v. Larranaga*, 787 F.2d 489, 500 (10th Cir. 1986); *United States v. Sandoval*, 680 F. App'x 713, 720 (10th Cir. 2017) (quoting *Miranda v. Arizona*, 384 U.S. 436, 468 & n.37 (1966)) ("It is axiomatic that the government cannot 'penalize an individual for exercising his Fifth Amendment privilege' and the 'prosecution may not, therefore, use at trial the fact that [a defendant] stood mute or claimed his privilege in the face of accusation.'"). The court is persuaded that the discussion of

Ms. Baver's prior attempt to exercise her Fifth Amendment rights contained in the Second Order is unfairly prejudicial.

Moreover, the legal reasoning is not relevant to the charged violations.[7]  Because the legal reasoning is not relevant, and is unfairly prejudicial to Ms. Baver, the court agrees with Ms. Baver that the portions of the order that reference the Fifth Amendment arguments must be redacted. During the final pretrial conference, the parties agreed to confer on the appropriate redactions.

Having addressed the Second Order, the court moves to the First Order. Unlike the Second Order, the court is not persuaded that the first order contains prejudicial information. The First Order is only two pages long and the legal analysis provides relevant context. The court is convinced that redacting sentences from the First Order would cause unnecessary jury confusion.

Thus, the court DENIES Ms. Baver's motion to redact the legal analysis contained in the First Order, and GRANTS Ms. Baver's motion to redact the Fifth Amendment arguments contained in the Second Order. ECF No. 140.

## XI.    Objection to Kandace Zelaya's Testimony (ECF No. 110)

Ms. Baver objects to the Government's notice of intent to introduce factual testimony or in the alternative, expert testimony by Ms. Kandace Zelaya ("Ms. Zelaya"). The Government indicated that it intended for Ms. Zelaya, an attorney with the United States Small Business Administration ("SBA"), to provide "factual information regarding the SBA, its programs, and the Paycheck Protection Program ("PPP")." ECF No. 101 at 1–2. Ms. Baver asks the court to

---

[7] If Ms. Baver argues at trial that she refused to comply with the Second Order because of her Fifth Amendment right, which directly contradicts the Second Order, or that as a result of the redactions, the Second Order is non-specific, the legal analysis contained therein becomes relevant and the Government may introduce an unredacted copy of the order.

exclude Ms. Zelaya's testimony for the following reasons: (1) the notice of expert witness filed by the Government is deficient, (2) Ms. Zelaya's testimony is irrelevant under Rule 401, (3) Ms. Zelaya's testimony will confuse the jury, and (4) Ms. Zelaya's "[o]pinion [i]mpermissibly [e]ncroaches the [j]ury's province." ECF No. 110 at 7.

As a preliminary matter, the court is concerned about the scope of Ms. Zelaya's testimony. The court will not permit Ms. Zelaya to opine on her interpretation of the law. Contrary to the claim made by the Government in its jury instruction objections, "the SBA's rules and policies governing PPP loans are [*not*] properly the subject of lay witness testimony." ECF No. 128 at 17. It is the role of the court alone to instruct the jury as to the law. *See United States v. Geddes*, No. 1:15-CR-93-TC-CMR, 2022 WL 742705, at *1 (D. Utah Mar. 11, 2022). For example, if the Government intends to introduce the guidance that the SBA provided for calculating seasonal business payroll, ECF No. 101 at 6–7, the proper mechanism for doing so is through a jury instruction and not through Ms. Zelaya's testimony. Ms. Zelaya will also not be permitted to testify as to the information contained in Ms. Baver's application or the factors that lenders may consider influential as Ms. Zelaya did not personally review or approve Ms. Baver's loan application.

The Government asserts that it will restrict Ms. Zelaya's testimony to factual matters of which she has personal knowledge. These matters include other relevant SBA loan programs, the SBA's PPP review procedure, information the SBA provided on its website, and the SBA's purpose in drafting guidance and documents.

"At the defendant's request, the government must disclose to the defendant, in writing, . . . any testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief, or during its rebuttal to counter testimony that the defendant

has timely disclosed under (b)(1)(C)." Fed. R. Crim. P. 16. Rule 702 provides a set of rules governing the admissibility of expert witness opinion testimony. *See* Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise [if the following conditions are met] . . . .").

However, if the witness is not providing opinion testimony, the defendant is not entitled to notice pursuant to Rule 16. *See United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002) ("As the challenged testimony proffered no opinion, lay or expert, but simply the witnesses' personal experience relating to a subject bearing directly upon the appropriateness of a jury inference, we reject the claim that the [Defendants] were entitled to Rule 16 discovery."); *United States v. Logsdon*, No. CR-12-298-D, 2013 WL 5755614, at *2 (W.D. Okla. Oct. 23, 2013) ("Rule 702 and *Daubert* [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)] are applicable only to proposed expert opinions, however, and the requirements do not apply to a lay witness testifying to facts derived from examining evidence.").

Here, so long as Ms. Zelaya's testimony conforms with the court's constraints, Ms. Zelaya will not provide expert opinion testimony. Ms. Baver effectively concedes as much by characterizing "Ms. Zelaya's anticipated testimony" as "merely a rote recitation of the law, and banking procedures." ECF No. 110 at 4. "[T]he fact that a witness may, by education or training, potentially qualify to serve as an expert witness does not compel the conclusion that his testimony constitutes an expert opinion governed by Fed. R. Evid. 702." *Logsdon*, 2013 WL 5755614, at *2. In other words, the Government does not need to provide Ms. Baver with notice of Ms. Zelaya's testimony because Ms. Zelaya is not providing expert testimony in the form of an opinion. ECF No. 101 at 2. Accordingly, the court overrules Ms. Baver's objections concerning notice deficiencies.

Alternatively, Ms. Baver asks the court to exclude Ms. Zelaya's testimony as irrelevant under Rule 401. Ms. Baver argues that information on other lending programs implemented by the SBA and loan forgiveness rates are "completely irrelevant to the singular question relating to the SBA/PPP loan—whether Ms. Baver submitted a false statement to a bank on a PPP loan application form." ECF No. 110 at 5–6. The court disagrees. The fact that "[a]pproximately 92% of all PPP loans were ultimately forgiven" and the SBA guaranteed 100% of PPP loans, instead of the 50–90% typical in other SBA loan programs, provides relevant context. ECF No. 101 at 10. A jury may use this information in assessing Ms. Baver's motives and determining whether she "intend[ed] to influence the bank." *Copus*, 110 F.3d at 1535 (explaining the elements of a § 1014 violation).

Ms. Baver contends that even if Ms. Zelaya's testimony is relevant, it should be excluded under Rule 403 because it will confuse a jury. ECF No. 110 at 6. The court is persuaded that a jury can distinguish background information concerning SBA loan programs from the PPP loan application process. Moreover, at this stage of the proceedings, the court is not persuaded that Ms. Zelaya's testimony is needlessly cumulative. Although Defendants assert that other bank employees will testify about the PPP loan applications, the court is unaware of any witnesses who can provide the same information concerning the SBA review process as Ms. Zelaya. If Ms. Zelaya's testimony becomes redundant or improper at trial, the court will exclude it at that juncture.

Similarly, the court is unconvinced by Ms. Baver's argument that Ms. Zelaya will provide an opinion that improperly encroaches on the province of the jury through her testimony. Ms. Zelaya's testimony will be limited to her personal factual knowledge of the SBA. While Ms. Zelaya may refer to Ms. Baver's PPP application in order to testify on why the SBA

29

designed the PPP application in the way it did, she will not comment on Ms. Baver's specific answers or opine as to whether the application demonstrates the elements of the charged offenses.

In short, the court concludes that Ms. Zelaya is not providing expert testimony in the form of an opinion under Rule 702, and that the Government is not required to provide notice of Ms. Zelaya's testimony under Rule 16 of the Federal Rules of Criminal Procedure. Moreover, while the court is restricting the scope of Ms. Zelaya's testimony, she should not be excluded under Rule 403 from testifying. Thus, the court OVERRULES Ms. Baver's objection. ECF No. 110.

## XII.    Motion to Quash Blake Hamilton's Testimony (ECF No. 150)

On June 1, 2023, the Government subpoenaed Mr. Blake Hamilton ("Mr. Hamilton") to testify at trial. ECF No. 150 at 2. Mr. Hamilton served as former counsel for Ms. Baver and ABE in both this case and in the parallel civil forfeiture proceeding. *Id.* Ms. Baver asks the court to quash the subpoena against Mr. Hamilton because it violates her attorney-client privilege. ECF No. 150.

On June 19, 2023, the Government filed its response. ECF No 154. The Government provided the court with the questions that it intends to ask Mr. Hamilton at trial and clarified that it "does not intend to elicit any testimony from Mr. Hamilton that is protected by the attorney-client privilege." *Id.* at 1. Mr. Hamilton's testimony is relevant because the Government must prove

that Ms. Baver had actual knowledge of Judge Stewart's orders in order to prove the 18 U.S.C. § 401(3) contempt of court violation.[8]

"The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal citation and quotation omitted). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and [the] administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). However, not all communications between an attorney and his client are covered by the attorney-client privilege. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995) ("[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege."). Communications "must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).

The party asserting attorney-client privilege has the burden of demonstrating its applicability. *See In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999). "The party must bear the burden as to specific questions or documents, not by making a blanket claim." *Id.* Furthermore, attorney-client privilege does not apply to communications from a third-party to the client that are conveyed vis-à-vis the attorney. *See In re Grand Jury Proc.*, 616 F.3d at 1183 ("Where questions

---

[8] While the court agrees that Mr. Hamilton's testimony is relevant to determining Ms. Baver's knowledge, it does not agree with the Government's characterization of the briefs filed by Ms. Baver. Ms. Baver's objection to the "willfulness" element of contempt contained in the jury instructions (ECF No. 137), and her assertion that she had a right to object in the civil forfeiture proceeding (ECF No. 140) do not imply—as the Government suggests—that Ms. Baver intends to contest her knowledge of Judge Stewart's orders. The court will exclude Mr. Hamilton's testimony if it becomes redundant at trial.

only request information regarding communications where the attorney was acting as a 'conduit' for non-confidential information, the client may not invoke the attorney-client privilege.").

Having reviewed the questions that the Government intends to ask Mr. Hamilton, the court is persuaded that Mr. Hamilton's proposed testimony does not violate Ms. Baver's attorney-client privilege. Questions 1, 2, and 4 ask whether Mr. Hamilton represented Ms. Baver and ABE, which is public information. ECF No. 154. Questions 3 and 5–11 ask whether Mr. Hamilton represented Ms. Baver and ABE with respect to the subpoena, whether Mr. Hamilton filed motions in response to the subpoena, and whether Mr. Hamilton's clients authorized him to take these actions. *Id.* Mr. Hamilton does not need to reveal legal strategy or advice that he provided his clients in his testimony. Questions 12–24 concern Mr. Hamilton's response to Judge Stewart's orders. Specifically, the Government intends to ask Mr. Hamilton whether he read the orders and whether he informed Ms. Baver of the orders. *Id.* Communications from the court to ABE that were relayed through Mr. Hamilton are not covered by attorney-client privilege.

Moreover, Ms. Baver implicitly waives the attorney-client privilege if she argues that her former counsel's performance prevented her from forming the mens rea required for the contempt offense. *See United States v. Pinson*, 584 F.3d 972, 977 (10th Cir. 2009) ("This circuit, as well, has acknowledged the implied waiver of attorney-client privilege that arises when a party puts his counsel's advice in issue."). The court concludes that Mr. Hamilton's expected testimony does not violate attorney-client privilege. Therefore, the court DENIES the motion to quash the subpoena for Mr. Hamilton's testimony. ECF No. 150.

## CONCLUSION AND ORDER

For the foregoing reasons, the court orders the following:

1. The court DENIES Ms. Baver's motion to exclude witness Nick Patel. ECF No. 91.

2. The court DENIES the Government's motion to preclude evidence and argument concerning possible negligence by the victim, loan processors, or the United States Small Business Administration. ECF No. 108.

3. The court OVERRULES Ms. Baver's objection to the Government's notice of intent to introduce Ms. Kandace Zelaya. ECF No. 110.

4. The court DENIES Ms. Baver's motion to exclude evidence involving the dispute with her neighbor and homeowners association. ECF No. 113.

5. The court GRANTS IN PART and DENIES IN PART Ms. Baver's motion to admit supporting documentation. ECF No. 117.

6. The court GRANTS Ms. Baver's motion to admit her good faith letter. ECF No. 118.

7. The court GRANTS Ms. Baver's motion to admit her email to Carl Kruelle and Rocco Perate. ECF No. 121.

8. The court GRANTS Ms. Baver's motion to exclude her prior loan and tax history. ECF No. 123.

9. The court GRANTS the Government's motion to admit all PPP Applications submitted by Ms. Baver to Northeast Bank and Meridian Bank as intrinsic evidence of Counts 6 and 8. ECF No. 126.

10. The court GRANTS IN PART and DENIES IN PART Ms. Baver's motion for partial redaction of government exhibits 71 and 72. ECF No. 140.

11. The court DENIES the Government's motion to permit two of its witnesses to testify through two-way live video conference. ECF No. 149.

12. The court DENIES Ms. Baver's motion to quash the subpoena for Blake Hamilton's testimony. ECF No. 150.

DATED June 22, 2023.

BY THE COURT

Jill N. Parrish
United States District Court Judge