IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**ALLISON MARIE BAVER**<br><br>Defendant. | **MEMORANDUM DECISION & ORDER DENYING DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL**<br><br>Case No. 2:21-cr-00520-JNP<br><br>District Judge Jill N. Parrish |

Before the court is a motion for a judgment of acquittal filed by defendant Allison Marie Baver ("Ms. Baver"). ECF No. 174. The court DENIES the motion.

## BACKGROUND

A grand jury indicted Ms. Baver on eight counts of false statement to a bank in violation of 18 U.S.C. § 1014, one count of money laundering in violation of 18 U.S.C. § 1957, and one count of contempt of court in violation of 18 U.S.C. § 401(3). Second Superseding Indictment, ECF No. 47. Prior to trial, the court granted the Government's motion to dismiss counts 1–5 and 7. ECF No. 157. On June 26, 2023, this court held a trial on the contempt, money laundering, and two remaining false statement violations.

On June 28, 2023, after the Government had concluded its case in chief, Ms. Baver orally moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court orally denied Ms. Baver's motion. After concluding her defense later that day, Ms. Baver renewed her motion for a judgment of acquittal. The court took this motion under advisement. On June 29, 2023, the jury returned a verdict of guilty against Ms. Baver on all four of the charged

counts. ECF No. 172. The court then orally denied Ms. Baver's renewed motion. Ms. Baver now renews her motion for a judgment of acquittal.

## LEGAL STANDARD

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c). A district court may enter a judgment of acquittal only if "the evidence that defendant committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Brown*, 50 F. App'x 970, 976 (10th Cir. 2002). The trial court must "view the evidence in the light most favorable to the government . . . ." *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982).

## ANALYSIS

Ms. Baver makes the same arguments for acquittal in this motion that she previously raised during trial. The court addresses each argument in turn.

**I.  Contempt**

First, Ms. Baver asks the court to acquit her on the contempt charge because she asserts that "the criminal contempt charge should be against ABE [Allison Baver Entertainment, LLC], not Ms. Baver herself" and that the orders giving rise to the contempt charge were not reasonably specific. However, Ms. Baver's assertion that an individual cannot be held criminally liable for an entity's refusal to comply with a subpoena is incorrect. "[W]hen a subpoena or order unequivocally directs an organization to produce records, the persons who have knowledge of the court's action and who 'fail to take appropriate action within their power' to comply with the subpoena or order may be held in contempt." *United States v. Voss*, 82 F.3d 1521, 1526 (10th Cir. 1996) (internal citation omitted). As the only member of ABE, which is a single member limited

liability company, Ms. Baver has an obligation to comply with the subpoena. The fact that Ms. Baver could not assert her Fifth Amendment right against self-incrimination to avoid producing ABE's bank records does not imply that Ms. Baver "should not be the one having to answer to a criminal contempt charge." ECF No. 174 at 2.

Moreover, contrary to Ms. Baver's assertion, Judge Stewart unequivocally ordered ABE to produce its bank records. *See* Order Den. Mot. Quash Subpoena Duces Tecum (June 14, 2022), Case No. 2:22-sc-91-TS, Gov't Ex. 71 at 1 (denying the motion to quash and explaining that the subpoena orders ABE to produce "documents reflecting any bank account (other than bank accounts held at Meridian Bank) in the name of Allison Baver Entertainment, or controlled by Allison Baver Entertainment, or used by Allison Baver Entertainment, during the time period from October 2019 through December 2020."); Order Den. Allison Baver's Am. Mot. Intervene and Am. Mot. Quash Subpoena Duces Tecum (June 28, 2022), Case No. 2:22-91-TS, Gov't Ex. 72 at 3 ("ABE is ordered to comply with the grand jury subpoena no later than June 30, 2022."). Ms. Baver's former counsel testified that he had received the orders and had relayed them to Ms. Baver. Moreover, former counsel testified that on June 15, 2022, he sought an extension from the Government for ABE to comply with the subpoena. This serves as circumstantial evidence indicating that Ms. Baver was aware that compliance was necessary.

In short, the court is not persuaded by Ms. Baver's arguments relating to the contempt charge. To demonstrate a violation of 18 U.S.C. § 401(3), the Government must have proved that Ms. Baver willfully violated a reasonably specific court order. *See Voss*, 82 F.3d at 1525. The court is convinced that the Government met this burden at trial. The jury was provided with the two orders ordering ABE to comply with the  grand jury subpoenas and Ms. Baver's former counsel testified that he had received the court orders and relayed them to Ms. Baver. Viewed in the light

3

most favorable to the Government, this is more than sufficient for a reasonable jury to conclude that Ms. Baver violated § 401(3).

## II. Lendio

Second, Ms. Baver argues that the Government did not present sufficient evidence demonstrating that Ms. Baver made a false statement to Northeast Bank. Specifically, Ms. Baver asserts that because she submitted the Northeast Bank application through Lendio, which is a third-party middleman, and no one from Lendio testified that Ms. Baver had submitted the application, the Government failed to lay the foundation establishing that Ms. Baver submitted the application to Lendio.

The court is not persuaded that it was necessary for a Lendio employee to testify at trial. The applications that Ms. Baver submitted to Northeast Bank through Lendio were nearly identical to the applications that Ms. Baver submitted to Meridian Bank. Both sets of applications contain Ms. Baver's email address, ("allison@allisonbaver.com")[1] and her electronic signature. Ms. Baver does not contest the authenticity of her Meridian Bank application. Ms. Baver indicated in both sets of applications that she had $4,770,583 in average monthly payroll, 430 employees, and was requesting a $10 million Paycheck Protection Program (PPP) loan. Ms. Baver attached the same good faith certification letter explaining ABE's business to both applications. At trial, Ms. Baver specifically asked the court to admit any supporting documentation that had been submitted to Northeast Bank through Lendio that had not been included in the Meridian Bank application. Thus, the court is convinced that based on the similarity of the applications, a reasonable jury could

---

[1] Micah Stanford testified that he had corresponded with Ms. Baver through this email address.

conclude that Ms. Baver submitted the application to Lendio, which then forwarded the application to Northeast Bank.

### III. False Statements

Third, Ms. Baver argues that the Government did not establish her guilt beyond a reasonable doubt on the false statement charges because there was confusion during the initial PPP rollout period. Ms. Baver argues that the fact that the SBA was frequently updating its PPP eligibility guidelines and that banks were inundated with loan applications provides important context behind her false statements. Specifically, Ms. Baver asserts that she interpreted the employee number field on the PPP application form as referring to prospective employees.

In order to establish a violation of 18 U.S.C. § 1014, the Government must prove that Ms. Baver "made a false statement to a federally insured bank knowing the statement was false and intending to influence the bank." *United States v. Copus*, 110 F.3d 1529, 1535 (10th Cir. 1997). "The defendant need not have intended to harm the bank or to personally profit, and the bank need not have suffered actual loss in order to sustain these convictions." *United States v. Grissom*, 44 F.3d 1507, 1511 (10th Cir. 1995).

The fact that several bank employees testified that the guidance on the PPP was sparse and that banks were under a high amount of pressure to process PPP loans does not absolve Ms. Baver of making false statements to a bank. None of the bank employees or SBA representatives testified that they had told Ms. Baver that she could use prospective employee numbers in her PPP loan application. To the contrary, Micah Stanford of Utah First Credit Union testified that he explicitly informed Ms. Baver that ABE was ineligible for a PPP loan because it did not have prior payroll.

Ms. Baver asserts that she was forthright about her lack of payroll. Specifically, Ms. Baver notes that she informed Meridian Bank that she had no past payroll and had only hired one

5

employee in her introductory email. However, Nick Patel, the Meridian Bank employee who processed Ms. Baver's application, indicated that he had only skimmed the email. He also testified that when he emailed Ms. Baver requesting clarification on her payroll spreadsheet, Ms. Baver responded by informing him of a minor typographical error.

In light of the applications, testimony from bank employees and those who had worked with Ms. Baver in the entertainment industry, the court is persuaded that a reasonable jury could conclude that Ms. Baver knowingly made false statements to Northeast Bank and Meridian Bank with the intent to influence their actions with respect to her PPP loan applications in violation of 18 U.S.C. § 1014. Thus, the court DENIES Ms. Baver's motion for acquittal on the false statement counts.

### IV. Money Laundering

Fourth, Ms. Baver argues that the Government failed to present sufficient evidence to establish Ms. Baver's guilt on the money laundering count. To prove a violation of 18 U.S.C. § 1957, the Government must establish "that the defendant (1) engaged or attempted to engage, (2) in a monetary transaction, (3) in criminally derived property, (4) knowing that the property is derived from unlawful activity, and (5) that the property is, in fact, derived from specified unlawful activity." *United States v. Baum*, 555 F.3d 1129, 1131 (10th Cir. 2009) (quoting *United States v. Lake*, 472 F.3d 1247, 1260 (10th Cir. 2007)). The jury convicted Ms. Baver of engaging in money laundering by spending $150,000 of the proceeds from the PPP loan on the movie, *No Man of God*.

According to Ms. Baver, the letter that was provided by Lisa Whalen, the producer of *No Man of God*, undercuts the Government's argument concerning Ms. Baver's intent. Ms. Baver asks the court to interpret the letter, which states that a portion of the $150,000 would be used to retain workers, as evidence indicating that Ms. Baver intended to spend the money in a way that complied

6

with the PPP loan requirements. But how Ms. Baver intended to spend the proceeds is not an element of a § 1957 offense. The Government only needed to prove that Ms. Baver knew that the $150,000 was derived unlawfully and that she attempted to use the funds to engage in a monetary transaction.

Moreover, Ms. Whalen testified that she had only provided the letter after Ms. Baver specifically requested a letter stating that the funds would be used for employment. Ms. Whalen was uncomfortable with representing that the $150,000 would be used exclusively for employment and instead wrote that "[t]he $150,000 from Allison Baver Entertainment will be used for costs related to the delay of that production" and that "*No Man of God* is now starting pre-production in August in Los Angeles, CA and will employ approximately 40–45 crew and 24 cast." Company X COVID-19 Confirmation Delay, Def.'s Ex. 466. In light of Ms. Whalen's testimony and the letter that she had provided, the court rejects Ms. Baver's interpretation of the evidence.

Having established that the funds were derived from a § 1014 violation, the Government only needed to prove that Ms. Baver engaged or attempted to engage in a monetary transaction. Between the investment contract for *No Man of God*, *see* Signed Company X Investment & EP Term Sheet (July 17, 2020), Gov't Ex. 46(a), and Ms. Whalen's testimony and accompanying letter, a reasonable jury could conclude that Ms. Baver violated § 1957. Thus, the court DENIES Ms. Baver's motion for acquittal on the money laundering count.

## CONCLUSION & ORDER

For the aforementioned reasons, the court DENIES Ms. Baver's motion for judgment of acquittal. ECF No. 174.

DATED August 2, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge