TRINA A. HIGGINS, United States Attorney (7349)
JENNIFER K. MUYSKENS, Assistant United States Attorney (DC 475353)
JAMIE Z. THOMAS, Assistant United States Attorney (9420)
TRAVIS K. ELDER, Assistant United States Attorney (11987)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
travis.elder@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | MOTION FOR PRELIMINARY ORDER OF FORFEITURE |
|---|---|
| Plaintiff, | |
| vs. | Case No. 2:21-cr-00520-JNP |
| ALLISON MARIE BAVER, | Judge Jill N. Parrish |
| Defendant. | |

Pursuant to Fed. R. Crim. P. 32.2(b), 18 U.S.C. § 981(a)(1)(A) (applicable under 28 U.S.C. § 2461(c)), and 18 U.S.C. § 982(a)(1), the United States of America moves the Court to enter a Preliminary Order of Forfeiture that forfeits the following specific property to the United States:

- $9,014,830.76 seized from FIB 4629;
- $465,936.99 seized from Meridian Bank account ending in 8439;
- $33,932.39 seized from Meridian Bank account ending in 2022;
- $22,018.81 seized from Meridian Bank account ending in 4101; and
- All payments due and owing to Allison Baver Entertainment, LLC by Fintage Collection Account Management B.V. under the terms and conditions of a Collection Account Management Agreement entered into between ABE and Fintage Collection on June 6, 2020.

("Subject Properties"). The United States also requests the Court to impose a $10,000,000 forfeiture money judgment related to Ms. Baver's conviction on Count Six and a concurrent $150,000 forfeiture money judgment on Count Nine.

## FACTS

**A. The relevant charges and conviction.**

On October 19, 2022, a Second Superseding Indictment charged Allison Marie Baver in Count Six with False Statement Designed to Influence a Bank in violation of 18 U.S.C. § 1014 and in Count Nine with Money Laundering in violation of 18 U.S.C. § 1957. ECF 47.[1] The indictment notified the defendant that, upon conviction, the United States would seek forfeiture of: 1) under 18 U.S.C. § 982(a)(2),[2] any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of the scheme to defraud; and 2) under 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property. *Id*.

On July 13, 2023, a jury found the defendant guilty of various charges including Count Six and Count Nine. *See* Verdict Form, ECF 179.[3]

---

[1] Only the charges relevant for this forfeiture motion are noted.

[2] As explained below, the United States is pursuing forfeiture under 18 U.S.C. § 981(a)(1)(C) instead of 18 U.S.C. § 982(a)(2).

[3] As a result of dismissal of certain counts from the Second Superseding Indictment prior to the jury's deliberations, Count Six was listed on the verdict form as "I) Count," and Count Nine was listed on the verdict form as "III) Count."

2

**B. Property, real or personal, which constitutes or is derived from proceeds traceable to the defendant's conviction on Count Six for False Statement Designed to Influence a Bank in violation of 18 U.S.C. § 1014.**

Ms. Baver's convictions stem from her conduct in fraudulently obtaining a Paycheck Protection Loan (PPP) from Meridian Bank for her company, Allison Baver Entertainment, LLC (ABE) on April 25, 2020. ABE was a single-member LLC that was controlled exclusively by its sole member, Ms. Baver. ABE elected to be taxed as an S corporation, a pass-through entity. Ex. 1 (election by a Small Business Corporation). As proven at trial, Ms. Baver submitted a PPP loan application to Meridian Bank on April 25, 2020 (GX 16c).[4] In the application, Ms. Baver fraudulently represented that ABE had $4,770,583 in average monthly payroll and 430 employees. In reality, ABE did not have any payroll, nor any employees, and consequently, was not eligible for a PPP loan. As a result of the fraudulent loan application, Meridian Bank approved the application and ABE received the $10,000,000 PPP loan into ABE's Meridian Bank 2022[5] on May 11, 2020 (see ABE Meridian Bank Account Statements, GX 26, pg. 1). As shown at trial, the defendant opened multiple bank accounts at Meridian Bank to receive and hold the PPP loan proceeds.

On June 15, 2020, ABE transferred $5,000,000 of the PPP loan proceeds from ABE's Meridian Bank 8439 to ABE's First Internet Bank (FIB) 4629. GX 26, pg. 12; GX 31b, pg. 1. The prior balance of FIB 4629 was $0. GX 31b, pg. 1. On July 27, 2020, ABE transferred another $4,000,000 of the PPP loan proceeds from ABE's Meridian Bank 8439 to FIB 4629. GX

---

[4] Cited trial exhibits are attached to the motion and redacted according to the court's rules.

[5] All bank account references will include the bank name followed by the last four digits of the account.

3

26, pg. 23; GX 31d, pg. 1. As of September 30, 2020, FIB 4629 had a balance of $9,016,830.76. GX 31e. Pursuant to a seizure warrant authorized in the District of Utah by Magistrate Judge Daphne A. Oberg, on or about October 9, 2020, the Federal Bureau of Investigation seized $9,016,830.76 from FIB 4629 as proceeds of ABE's PPP loan from Meridian Bank. *See* In the Matter of the Seizure of Assets Listed in Attachment A, No. 2:20-mj-808-DAO.

Pursuant to the same seizure warrant, on or about October 9, 2020, the FBI seized $465,936.99 from ABE's Meridian Bank 8439; $33,932.39 from ABE's Meridian Bank 2022; and $22,018.81 from Meridian Bank 4101, as proceeds of ABE's PPP loan from Meridian Bank. *Id*.

C. **The property constituting any property, real or personal, involved in the defendant's conviction on Count Nine for Money Laundering in violation of 18 U.S.C. § 1957, and any property traceable thereto.**

As shown at trial, Ms. Baver paid $150,000 of the PPP loan proceeds to Company X Productions, LLC. GX 26, pg. 19; GX 27. This $150,000 payment was an investment in a film titled *No Man of God*. The $150,000 payment was charged as the money laundering offense in Count Nine for which the jury convicted Ms. Baver.

On December 15, 2021, Magistrate Judge Jared C. Bennett authorized a post-indictment restraining order in this case under 21 U.S.C. § 853(e)(1)(A). The order restrained all payments due and owing to ABE from Fintage Collection Account Management B.V. ("Fintage Collection") under the terms and conditions of the Collection Account Management Agreement (GX 45) entered between ABE and Fintage Collection on June 6, 2020. ABE was set to receive the payments under the Collection Account Management Agreement based on her $150,000

4

payment to Company X Productions, LLC. Accordingly, ABE's right to receive payments under the Collection Account Management Agreement is traceable to Ms. Baver's offense in Count Nine.

## ARGUMENT

**A. Forfeiture is mandatory.**

Forfeiture is a mandatory part of Mr. Baver's sentence. *United States v. McGinty*, 610 F.3d 1242, 1246 (10th Cir. 2010); *United States v. Tolliver*, 730 F.3d 1216, 1232 (10th Cir. 2013); *United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011) (subject to constitutional limitations, the district court has no discretion to reduce or eliminate mandatory criminal forfeiture). Rule 32.2(b)(1)(A) provides that "[a]s soon as practical after a verdict . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." The applicable forfeiture statutes include 18 U.S.C. §§ 981(a)(1)(C)[6] and 982(a)(1).

---

[6] The indictment forfeiture notice specified 18 U.S.C. § 982(a)(2) as the proceeds forfeiture theory for Ms. Baver's 18 U.S.C. § 1014 violations. Since the filing of the original indictment, ABE defaulted on the PPP loan on or about November 10, 2021. However, the Small Business Administration, which had guaranteed the loan, made Meridian Bank whole by paying Meridian Bank $10,000,000 plus interest of $161,193.95 related to the default. Section 982(a)(2) forfeitures require that the offense have adversely affected the involved financial institution. Since it is not clear now whether Meridian Bank was adversely affected because SBA made the bank whole, the United States is instead pursuing forfeiture under the alternative and substantially similar provision for forfeiting proceeds of 18 U.S.C. § 1014 violations in 18 U.S.C. § 981(a)(1)(C). Doing so is still in keeping with the noticing requirements of Rule 32.2(a), which only require that the government provide notice of its intent to seek forfeiture. *See, e.g.*, *United States v. Silvious*, 512 F.3d 364, 370 (7th Cir. 2008) ("Listing the wrong forfeiture statute did not prevent *Silvious* from receiving notice under Rule 32.2(a)"); *United States v. Joel*, No. 8:11CR89, 2012 WL 2499424, at *5-6 (M.D. Fla. June 5, 2012) (unpublished) (in a prosecution for wire fraud affecting a financial institution even though the government agreed it could not proceed with forfeiture under 18 U.S.C. 982(a)(2), the statute cited in its indictment, the government could still seek forfeiture of general wire fraud proceeds under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C); an incorrect forfeiture citation in an indictment does not deprive the defendants of the notice required by Rule 32.2(a) that the government

Under 28 U.S.C. § 2461(c) a "court shall order the forfeiture of the property as part of the sentence in the criminal case" of a defendant convicted of an offense where either civil or criminal forfeiture is authorized. Under 18 U.S.C. § 981(a)(1)(C), when a person is convicted of violating 18 U.S.C. § 1014, "any property, real or personal, which constitutes or is derived from proceeds traceable to" such offenses is subject to forfeiture.

Under Section 982(a)(1), when a defendant is convicted of violating 18 U.S.C. § 1957, a court "*shall* order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property" (emphasis added).

**B. The Court can forfeit specific assets and impose a criminal forfeiture money judgment.**

Forfeiture can include forfeiture of specific property and a forfeiture money judgment. *United States v. Gordon*, 710 F.3d 1124, 1166 (10th Cir. 2013) (affirming trial court's imposition of order of forfeiture that included money judgment and forfeiture of home, and later amendment of that order to include the forfeiture of substitute assets).[7]

---

intends to forfeit the crime's proceeds and the defendants suffered no prejudice), *report and recommendation adopted*, No. 8:11-CR-89-T-23TGW, 2012 WL 2451822 (M.D. Fla. June 27, 2012) *aff'd sub nom. United States v. Vernon*, 593 Fed. Appx. 883 (11th Cir. 2014). *United States v. Pate*, No. 4:14-CR-125, 2016 WL 6993478, at *3-4 (E.D. Tex. Nov. 30, 2016) (unpublished) (citing *Silvious* and holding that the government complied with Rule 32.2(a)'s notice requirement even if it cited the wrong forfeiture statute); *United States v. Riley*, No. 118CR00116JRSMJD, 2020 WL 7425595, at *2 (S.D. Ind. Dec. 18, 2020) (unpublished) (following *Silvious* and holding forfeiture appropriate under 18 U.S.C. 982(a)(1) even though that statute was not cited in the indictment's forfeiture notice)

[7] *See also United States v. Garza*, No. 10-7046, 407 Fed. Appx. 322, 323-25 (10th Cir. 2011) (unpublished) (trial court properly imposed money judgment of $750,000 representing proceeds of drug crime, and then amended forfeiture order to include real property as a substitute asset); *McGinty*, 610 F3d. at 1246 (trial court erred by failing to impose forfeiture money judgment in addition to the forfeiture of specific property).

*Forfeiture of Specific Property*

When the United States seeks forfeiture of specific property, "the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A).

Forfeitures of criminal proceeds include "property a defendant would not have obtained or retained but for the commission of the criminal offense." *United States v. Evanson*, No. 2:05CR805-TC, 2008 WL 3107332, at *3 (D. Utah Aug. 4, 2008) (unpublished) (ordering forfeiture of specific items of property that were purchased from proceeds of fraud scheme, including real property and vehicles). Proceeds is also defined in 18 U.S.C. § 981(a)(2). Under that provision, the proceeds definition varies depending on whether the case involves "illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes" or "lawful goods or lawful services that are sold or provided in an illegal manner." Fraudulently obtaining a loan is not a lawful good or service, but is an unlawful activity, so the proceeds definition in 18 U.S.C. § 981(a)(2)(A) applies. *Compare United States v. Nacchio*, 573 F.3d 1062, 1090 (10th Cir. 2009) (finding the proceeds definition in 981(a)(2)(B) to an insider trading crime because "the illegality inhered in his selling securities ('lawful goods') in an unlawful manner, i.e., 'on the basis of material, nonpublic information.'"); *United States v. Mincey*, 800 F. App'x 714, 730 (11th Cir. 2020) (unpublished) (applying proceeds definition in 981(a)(2)(A) to defendant convicted of stealing "government money by enrolling students without high school diplomas or the equivalent credential and coaching those students to lie on their FAFSAs in

7

order to fraudulently obtain federal student loan monies" and "then us[ing] the fraudulently obtained student loan monies for his own benefit). Under Section 981(a)(2)(A) proceeds include:

> property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

When a defendant is convicted of money laundering, property "involved in" the offense, or any property traceable to such property, is subject to forfeiture. Such property includes the illegal proceeds being laundered, and "any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense." *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998) (quotations omitted). In money laundering forfeitures, the term "proceeds" means gross receipts, not profits. *United States v. Bader*, 678 F.3d 858, 893-94 (10th Cir. 2012) (proceeds means profits for the purpose of the money laundering statute only where an illegal gambling operation is involved). Property "facilitates" the commission of a crime when it makes the crime easier to commit or harder to detect).[8]

*Forfeiture Money Judgment*

In some cases, the United States cannot forfeit specific property because a defendant may have spent, hidden, or squandered all or a portion of the criminal proceeds. For this reason, the United States may also seek a personal forfeiture money judgment against a defendant. Rule

---

[8] Under 18 U.S.C. § 981(a)(2)(C):

> In cases involving fraud in the process of obtaining a loan or extension of credit, the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim.

This provision is inapplicable. Even though Meridian Bank was made whole by the SBA, SBA is owed at least $10,161,193.95 on ABE's PPP loan.

32.2(b)(1)(A) allows the United States to seek a money judgment and provides that the "the Court must determine the amount of money that the defendant will be ordered to pay."

The Tenth Circuit has said that "*in personam* money judgments are appropriate under criminal forfeiture." *See McGinty*, 610 F.3d at 1246 (adopting the reasoning of its sister circuits that criminal forfeiture money judgments are authorized, and that the "government is entitled to a money judgment against [a defendant] for the money he obtained from his criminal activity."); *see also United States v. Kingston*, No. 2:18-CR-00365-JNP, 2023 WL 2634692, at *2 (D. Utah Mar. 24, 2023) (unpublished) (recognizing *McGinty* and the authority of courts to issue forfeiture money judgments).

Forfeiture money judgments prevent a defendant from "ridding himself of his ill-gotten gains to avoid the forfeiture sanction." *Id.* Furthermore, such judgments ensure equal punishment between defendants who spend or hide the proceeds of their crime and those who keep criminal proceeds or spend them on forfeitable assets. *United States v. Grose*, No. 10-6277, 461 Fed. Appx. 786, 806-07 (10th Cir. 2012) (unpublished) ("Congress sought to punish equally the thief who carefully saves his stolen loot and the thief who spends the loot on wine, women, and song."). Indeed, "[t]o conclude otherwise would enable wrongdoers to avoid forfeiture merely by spending their illegitimate gains prior to sentencing." *United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014).

The court determines the amount of a money judgment by determining the value of the proceeds generated by the crime. *See McGinty*, 610 F.3d at 1246 (the forfeiture money judgment is equivalent to what is forfeitable under the applicable forfeiture statute; under 18 U.S.C. §

982(a)(2) a "district court must order forfeiture of any and all proceeds of the offense and any property derived from those proceeds."). This is true regardless of whether the defendant currently has possession of directly traceable property, dissipated the assets subject to forfeiture, or even has any assets to satisfy the judgment. *See, e.g.*, *id.* (recognizing that "our sister circuits have uniformly recognized that money judgments representing the unlawful proceeds are appropriate" and holding that trial court erred in refusing to enter a money judgment).

### C. Forfeiture determination procedures

In deciding the forfeiture, the "court's determination may be based on evidence already in the record, . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). Such information may include reliable hearsay because forfeiture is part of sentencing and the rules of evidence do not apply to sentencing proceedings. *Kingston*, 2022 WL 16948816 at *2.

"If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty." Fed. R. Crim. P. 32.2(b)(1)(B). The government must establish the amount of the money judgment by a preponderance of the evidence. *Bader*, 678 F.3d at 893; *Kingston*, 2022 WL 16948816 at *2.

If this Court "finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment." Fed. R. Crim. P. 32.2(b)(2)(A). Importantly, "[u]nless doing so is impractical, the Court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4)." Fed.

R. Crim. P. 32.2(b)(2)(B). Finally, Rule 32.2(b)(4)(B) provides that the court "must also include the forfeiture order, directly or by reference, in the judgment."

**D. Ms. Baver is liable for a $10,000,000 forfeiture money judgment related to her 18 U.S.C. § 1014 conviction and a concurrent money judgment of $150,000 related to her 18 U.S.C. § 1957 conviction.**

In this case, Ms. Baver's false statements to Meridian Bank resulted in her company, ABE, receiving a $10,000,000 PPP loan from Meridian Bank. "For purposes of criminal forfeiture, the 'proceeds' of a fraudulently obtained loan equal the amount of the loan." *Newman*, 659 F.3d at 1244; *see also United States v. Peters*, 257 F.R.D. 377, 387-89 (W.D.N.Y. 2009) (defendant who fraudulently obtains a line of credit is liable to forfeit the gross value of the assets he thereby acquired). Consequently, the Court should impose a $10,000,000 forfeiture money judgment against Ms. Baver for her conviction on Count Six.

A $10,000,000 money judgment is also appropriate even though the proceeds were paid to Ms. Baver's company because forfeitures under 18 U.S.C. § 981(a)(1)(C) include any proceeds a person obtained indirectly from the crime. The United States has established that ABE was a single-member LLC registered as an S corporation (pass through entity) that the defendant exclusively owned and controlled. Allison Baver was the sole signer on all ABE's bank accounts at Meridian Bank and First Internet Bank. Allison Baver controlled all the transfers of criminal proceeds between and among ABE's various bank accounts. A person "obtains" proceeds "indirectly" when those proceeds are paid to a corporation controlled by the person. *Cf. United States v. Peters*, 732 F.3d 93, 103-104 (2d Cir. 2013) (because 18 U.S.C. § 982(a)(2) makes defendant liable for property obtained "directly or indirectly," he is liable for

11

proceeds obtained by a corporation that he dominates or controls, even if he did not directly obtain the money himself).

Ms. Baver was also convicted of laundering $150,000 of the PPP loan proceeds in an investment in the film *No Man of God*. Consequently, the Court should impose a concurrent forfeiture money judgment of $150,000 against Ms. Baver for her conviction on Count Nine. A concurrent money judgment is appropriate to avoid double counting. *See United States v. Brown*, No. 04-cr-159, 2006 WL 898043, *4 (E.D.N.Y. 2006) (unpublished) (if the defendant is found liable to pay a money judgment under two different theories in the same case, but the judgments relate to the same funds—i.e., the proceeds of a fraud and the property involved in laundering the fraud proceeds—the judgments run concurrently).

The proposed preliminary order of forfeiture also provides that these money judgments will be reduced by the value the United States obtains from successfully forfeiting any specific assets.[9]

### E. The Court should order the forfeiture of the Subject Properties.

Based on the evidence at trial, the jury's verdict of guilty on Counts Six and Nine of the Second Superseding Indictment, the information provided with this motion, and under 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), the defendant committed an offense for which forfeiture is authorized and the requisite nexus between the Subject Properties and the offense is evident.

---

[9] Assuming the forfeiture of the specific assets sought for forfeiture in this motion is successful, and no third party is successful in the ancillary proceeding, when the United States moves for a final order of forfeiture it will discount the money judgments by the value of the specific assets (to the extent such value is conclusively known).

Accordingly, the United States requests that the Court so find and order all right, title, and interest in the Subject Properties preliminarily forfeited to the United States.

Once the order is entered, the Attorney General (or designee) should be authorized to seize the property, conduct any discovery proper in identifying, locating, or disposing of the property subject to forfeiture, and commence proceedings that comply with any statutes governing third-party rights. Fed. R. Crim. P. 32.2(b)(3).

In this case, the applicable statute governing third-party rights is 21 U.S.C. § 853(n) with further procedures for the ancillary proceeding provided in Fed. R. Crim. P. 32.2(c). The proposed order requires the United States to comply with these provisions and provides a roadmap for addressing any third-party petitions.

## CONCLUSION

Therefore, the United States asks the Court to enter the enclosed preliminary order of forfeiture. Additionally, as required by Fed. R. Crim. P. 32.2(b)(4)(B), the United States requests that the Court orally announce the forfeiture at the defendant's sentencing and reference the forfeiture order in the judgment.

Respectfully submitted,

TRINA A. HIGGINS
United States Attorney


*/s/ Travis K. Elder*
Travis K. Elder
Assistant U.S. Attorney