IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALLISON MARIE BAVER,<br><br>Defendant. | **MEMORANDUM DECISION & ORDER ON MOTION FOR PRELIMINARY ORDER OF FORFEITURE**<br><br>Case No. 2:21-cr-00520-JNP<br><br>District Judge Jill N. Parrish |

Before the court is the Government's motion for preliminary order of forfeiture. ECF No. 186 ("Mot."). For the reasons set out below, the Government's motion is **GRANTED**.

**BACKGROUND**

In October 2019, Allison Baver created Allison Baver Entertainment, LLC ("ABE"), a film production company that she hoped would allow her to crack into the entertainment industry. Ms. Baver is the sole member and registered agent of ABE. In 2020, after the outbreak of the COVID-19 pandemic, Ms. Baver submitted eight Paycheck Protection Program ("PPP") loan applications on behalf of ABE. At the time of submission, ABE neither had employees for whom it had paid salaries and payroll taxes, nor had it paid any independent contractors. ABE also did not have payroll expenses. As a result, ABE was not eligible for a PPP loan under the terms of that program.

In ABE's PPP loan applications, however, Ms. Baver represented that ABE did, in fact, have employees and a payroll. On May 11, 2020, as a result of these representations, Meridian Bank funded a $10,000,000 PPP loan to ABE. After ABE defaulted on the loan, the Small Business

Administration ("SBA"), an independent federal agency that had guaranteed the loan, "made Meridian Bank whole by paying Meridian Bank $10,000,000 plus interest . . . related to the default." Mot. at 5 n.6.

On December 15, 2021, a grand jury charged Ms. Baver with eight counts of making a false statement to a bank under 18 U.S.C. § 1014 and one count of money laundering under 18 U.S.C. § 1957. The indictment, as well as the Second Superseding Indictment filed the following October, declared the Government's intent to seek forfeiture pursuant to 18 U.S.C. § 982(a)(2) (the criminal forfeiture statute) upon any conviction on 18 U.S.C. § 1014. On July 13, 2023, a petit jury found Ms. Baver guilty of violating 18 U.S.C. §§ 1014 and 1957.

On August 29, 2023, the Government moved for a preliminary order of forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) (the civil forfeiture statute)[1] for the § 1014 conviction and 18 U.S.C. § 982(a)(1) for the § 1957 conviction. The Government seeks an order forfeiting the following specific property to the United States:

(1)  $9,014,830.76 seized from a First Interstate Bank ("FIB") account ending in 4629;

(2)  $465,936.99 seized from Meridian Bank account ending in 8439;

(3) $33,932.39 seized from Meridian Bank account ending in 2022;

(4) $22,018.81 seized from Meridian Bank account ending in 4101; and

(5) All payments due and owing to Allison Baver Entertainment, LLC by Fintage Collection Account Management B.V. under the terms and conditions of a Collection

---

[1] The Government, in its motion and proposed preliminary order of forfeiture, at times cites 18 U.S.C. § 981(a)(1)(A) instead of 18 U.S.C. § 981(a)(1)(C) as applicable to forfeiture following violations of 18 U.S.C. § 1014. The court understands this to be a scrivener's error.

Account Management Agreement entered into between ABE and Fintage Collection on

June 6, 2020.

Mot. at 1. The Government also seeks a $10,000,000 forfeiture money judgment related to Ms.

Baver's conviction on Count Six and a $150,000 forfeiture money judgment related to her

conviction on Count Nine.[2]

## ANALYSIS

The Government declared its intention to seek forfeiture for the 18 U.S.C. § 1014 charge

under the criminal forfeiture statute, 18 U.S.C. § 982(a)(2), in the charging instruments. However,

it now seeks forfeiture under the civil forfeiture statute, 18 U.S.C. § 981(a)(1)(C), because it doubts

that Meridian Bank was adversely affected by Ms. Baver's fraudulent statements insofar as it was

made whole by the SBA. Because of this post-conviction pivot, Ms. Baver asserts several

arguments in response to the Government's motion: (1) First, Ms. Baver argues that she was not

provided adequate notice of the Government's intent to seek forfeiture under the Federal Rules of

Criminal Procedure; (2) second, Ms. Baver argues that she never obtained the money at issue; (3)

third, Ms. Baver argues that she is entitled to a deduction from the forfeiture amount; and (4)

finally, she argues that the Government's proposed forfeiture order would constitute an excessive

fine under the Eighth Amendment.

---

[2] "Because § 981 and § 982 require the forfeiture of property derived from or involved with a criminal offense, these statutes do not specifically authorize courts to enter a money judgment against a criminal defendant. However, circuit courts, including the Tenth Circuit, have inferred the authority to enter a money judgment." *United States v. Kingston*, 2023 U.S. Dist. LEXIS 52260, at *5 (D. Utah Mar. 24, 2023) (collecting cases).

I.      Notice

Rule 32.2(a) of the Federal Rules of Criminal Procedure states that "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Ms. Baver argues that the Government ought to be bound to the "applicable statute" it cites in the charging instruments. The Government, however, contends that it should be permitted to adjust its forfeiture theory.

Multiple federal appellate courts have permitted the government to seek forfeiture under statutes not cited in the charging instrument. *See United States v. Silvious*, 512 F.3d 364, 370 (7th Cir. 2008) ("Here, the indictment informed [the defendant] that the government intended to seek forfeiture, and it identified the targeted assets. Listing the wrong forfeiture statute did not prevent [the defendant] from receiving notice under Rule 32.2(a)."); *United States v. Waits*, 919 F.3d 1090 (8th Cir. 2019); *United States v. Waits*, 830 F. App'x 790, 790 (8th Cir. 2020) (unpublished) ("[T]he district court did not err by ordering forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Although the indictment cited only 18 U.S.C. § 982, [the defendant] had adequate notice that the government intended to seek forfeiture.").

Ms. Baver cites, in support of her argument, the Second Circuit's decision in *United States v. Annabi*, 746 F.3d 83 (2nd Cir. 2014), which she claims refutes the above-cited authorities' permissive reading of Rule 32.2(a). But *Annabi* does not speak to Ms. Baver's circumstances and is distinguishable in two crucial ways. First, there, the Government failed to correct its error prior to the entry of final judgment, and the Second Circuit expressly limited its

holding to that circumstance. *Id*. at 86.[3] Second, *Annabi*'s holding was expressly qualified

"inasmuch as the uncharged forfeiture statute resulted in harsher forfeiture . . . than that sought in

the indictment." *Id*. at 84.

Neither of these conditions are met here. First, the Government seeks to correct its error

prior to the entry of final judgment. In this way, the Government's conduct comports to the standard

ostensibly contemplated by the Eighth Circuit in *Waits*, because the Government announced its

new forfeiture theory "in its motion." 919 F.3d at 1096. Second, the civil forfeiture statute would

provide no harsher forfeiture or penalty than would be provided under the criminal forfeiture

statute. Ultimately, *Annabi* stands for a narrower proposition than Ms. Baver suggests, and need

not be read to conflict with the principles articulated by the other circuit courts to have considered

this issue.

## II.      Whether Ms. Baver Obtained the Funds

Next, Ms. Baver argues that the money at issue is not subject to forfeiture because she

never "obtained" it under the logic of the Supreme Court's decision in *Honeycutt v. United States*,

581 U.S. 443, 445 (2017).

The civil forfeiture statute, 18 U.S.C. § 981(a)(1)(C), makes subject to forfeiture "[a]ny

property, real or personal, which constitutes or is derived from proceeds traceable to a violation of

section . . . 1014." Section 981(a)(2)(A), in turn, defines "proceeds" to mean "property of any kind

---

[3] "We hold that where the Government fails to invoke an applicable forfeiture provision in the indictment, *and fails to correct that error prior to entry of a final judgment*, forfeiture must be limited to that authorized by the statute cited as the basis for forfeiture, and of which the defendant had notice." *Annabi*, 746 F.3d at 86 (emphasis added).

obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto."

In *Honeycutt*, the Court determined that a coconspirator who did not personally acquire property had never "obtained" it, meaning that it was not forfeitable under the plain language of another forfeiture statute, 21 U.S.C. § 853, foreclosing co-conspirator joint-and-several liability for forfeiture purposes under § 853. 851 U.S. at 448. But *Honeycutt*, while instructive, is not directly on point. The Government doesn't seek forfeiture under 21 U.S.C. § 853, and Ms. Baver is not a co-conspirator. Instead, Ms. Baver is defending against forfeiture under § 981 as the owner and agent responsible for directing ABE's funds. Although § 981(a)(2)(A) defines forfeitable property by its being "obtained" by a defendant (much like § 853), it nonetheless remains unclear whether the Court's reasoning in *Honeycutt* applies to § 981(a)(1)(C) in the first place. *Accord United States v. Kingston*, 2023 U.S. Dist. LEXIS 52260, at *10 n.2 (D. Utah Mar. 24, 2023). A circuit split on this question has emerged and the Tenth Circuit has so far declined to answer the question. *See United States v. Channon*, 973 F.3d 1105, 1115-16 (10th Cir. 2020).

Even assuming that the logic of *Honeycutt* ought to be imported into the § 981(a)(1)(C) forfeiture context, however, there is ample reason to believe that Ms. Baver obtained the funds in such a way that would justify forfeiture. This court has already determined that a criminal defendant obtains funds when he "exercise[s] a degree of control over the fraudulently obtained funds that would justify holding him responsible for their dissipation." *United States v. Kingston*, 2023 U.S. Dist. LEXIS 52260, at *11 (D. Utah Mar. 24, 2023).[4] And, importantly, this court

---

[4] In fairness, the issue of who obtains property (outside of the conspiracy context considered in *Honeycutt*) is less than clear and would no doubt benefit from further appellate guidance. *Accord United States v. Leyva*, 916 F.3d 14, 30 (D.C. Cir. 2019) ("The case law, however, was (and is) far

determined that an individual that controls a corporation can be liable for otherwise-forfeitable property nominally owned by the corporation. *Id*. at *10 (citing *SEC v. Metter*, 706 F. App'x 699, 702 (2nd Cir. 2017) (unpublished)).[5]

In determining what constitutes a relevant degree of control (ultimately, who has "control over the disposition of funds fraudulently obtained by [a] company"), this court considered, among other things, who "ultimately decide[s] where to transfer [] money," "transfer[s] money to entities he own[s] or control[s]," and "directly benefit[s]" from the money. *Id*. at *11. This court decided that being an officer and part owner of a corporate entity were not, by themselves, sufficient to signal control that would justify forfeiture.

Here, Ms. Baver was not simply an officer or part owner of ABE. More importantly, very much unlike the defendant in *Honeycutt*, she was certainly much more than "a salaried employee." 581 U.S. at 446. Instead, Ms. Baver was the sole member of ABE with an uncontested, controlling interest. She was the only person able to dictate the disposition and use of ABE's funds. Thus, consistent with this court's prior decision in *Kingston*, Ms. Baver obtained the funds under the terms of § 981(a)(1)(C).

## III.   Whether Ms. Baver is Entitled to a 18 U.S.C. § 981(a)(1)(C) Deduction

Next, because the SBA "made Meridian Bank whole by paying Meridian Bank $10,000,000 plus interest . . . related to the default," as the Government concedes, Mot. at 5 n.6,

---

from clear that property acquired by an organization cannot qualify as property 'obtained, directly or indirectly' by a leader of that organization.").

[5] The D.C. Circuit, in *Levya*, has also suggested that, even after *Honeycutt*, leaders of organizations may still be said to have obtained funds indirectly through their control over entities or employees. *See Levya*, 916 F.3d at 30-31 (discussing *United States v. Cano-Flores*, 796 F.3d 83, 92 (2015)).

Ms. Baver argues that she is entitled to a $10,000,000 deduction from the forfeiture. The relevant civil forfeiture statute states that

> [i]n cases involving fraud in the process of obtaining a loan or extension of credit, the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim.

18 U.S.C. § 981(a)(2)(C).

The Government, in turn, argues that the SBA should be understood to be a victim—in fact, if it weren't, the Government argues, the absurdity canon kicks in. The civil forfeiture statute, 18 U.S.C. § 981, which provides forfeiture for a range of statutory criminal offenses—does not define "victim," and there is little judicial interpretation of that term in context. As a result, the court turns to the statute under which Ms. Baver was convicted, 18 U.S.C. § 1014, to identify the victim of Ms. Baver's offense. Section 1014 provides:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the . . . a Federal Reserve bank, a small business investment company as defined in section 103 of the Small Business Investment Act of 1958 (15 U.S.C. 662), or the Small Business Administration in connection with any provision of that Act, a Federal credit union, an insured State-chartered credit union, any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, [,] any Federal home loan bank . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, or insurance agreement or application for insurance or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both.

18 U.S.C. § 1014.

Ms. Baver's conviction related to statements that influenced the action of Meridian Bank. Those statements also influenced the SBA. Thus, Ms. Baver's false statements influenced both

Meridian Bank *and* the SBA, which guaranteed the loan,[6] and induced a guarantee on false premises. As a result, the court concludes that it would be fair to understand the SBA as a "victim" for purposes of the civil forfeiture statute, 18 U.S.C. § 981(a)(2)(C). And since the SBA suffered financial loss, Ms. Baver is not entitled to a deduction.[7]

Additionally, the terms of Ms. Baver's promissory note executed with Meridian Bank indicate that, should the SBA pay Meridian Bank under then guarantee, "SBA may [] seek recovery on the Loan from Borrower," ECF No. 190-8 at 9, § B.ii. Accordingly, the court concludes that the debt was neither repaid nor satisfied.[8] Instead, the debt obligation should be understood to have been transferred from Meridian Bank to the SBA. Rather than simply disappearing, then, SBA's execution of the guarantee shifted the financial loss (and the debt obligation) to SBA, which, as holder of the debt with a contractual right to reimbursement, has suffered damages in excess of $10,000,000 as a result of Ms. Baver's fraudulent statements.[9]

---

[6] The court acknowledges that § 1014's reference to the SBA is ostensibly limited to SBA actions related to a 1958 Act, 15 U.S.C. § 661 *et seq*.

[7] The promissory note states that, "if the Borrower defaults on the SBA-guaranteed Loan," the SBA will have "suffer[ed] a loss." ECF No. 190-8 at 10, § H.

[8] In executing the promissory note, Ms. Baver additionally acknowledged that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014[.]" ECF No. 190-8 at 10, § E.

[9] This interpretation accords with other situations in which a loan guarantee is treated as the transfer of a debt—for example, in bankruptcy law, where guarantors of loans are understood to be creditors with interests in debt obligations. *E.g., In re C-L Cartage Co.*, 899 F.2d 1490, 1493 (6th Cir. 1990); *In re Finn*, 909 F.2d 903, 905 n.2 (6th Cir. 1990).

Thus, because (1) Ms. Baver's false statements influenced both Meridian Bank and the SBA, (2) the debt was not satisfied but was instead shifted between parties, and (3) there was financial loss to a victim, Ms. Baver is not entitled to a deduction under 18 U.S.C. § 981(a)(2)(C). Any alternative interpretation would contravene the plain design of the modern civil forfeiture scheme, which is (at least in part) directed to the punishment and deterrence of wrong-doing. *See Austin v. United States*, 509 U.S. 602, 618 (1993); *Calero v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686 (1974); *Leonard v. Texas*, 580 U.S. 1178, 1179 (2017) (Thomas, J., statement respecting denial of certiorari); *United States v. Channon*, 973 F.3d 1105, 1112-13 (10th Cir. 2020).

## IV.     Whether Forfeiture Would Constitute an Excessive Fine

Finally, Ms. Baver argues that the imposition of a $10,000,000 forfeiture order would constitute an excessive fine under the Excessive Fines Clause of the Eighth Amendment. "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). In *Bajakajian*, the Court considered, among other things, whether the amount ordered to be forfeited bore any "articulable correlation to [an] injury suffered by the Government." *Id*. at 340. Here, a jury found that Ms. Baver acted culpably, and that her fraudulent representations to Meridian Bank caused the bank to extend a $10,000,000 dollar loan. The Government guaranteed that loan, and ultimately paid that sum plus interest. A $10,000,000 forfeiture order is clearly proportional to the gravity of Ms. Baver's offense and bears a direct relation to an injury suffered by the Government in guaranteeing a fraudulently secured loan. Ms. Baver's Excessive Fines Clause argument is therefore without merit.

## CONCLUSION & ORDER

For the foregoing reasons, the Government's motion for preliminary order of forfeiture, ECF No. 186, is **GRANTED**. Concurrently with the filing of this memorandum decision, the court will issue a separate preliminary order of forfeiture.

DATED July 17, 2024.

BY THE COURT

Jill N. Parrish
United States District Court Judge