TRINA A. HIGGINS, United States Attorney (#7349)
Attorney for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | Case No. 2:21-CR-00520 JNP |
|---|---|
| Plaintiff, | |
| vs. | UNITED STATES' SENTENCING MEMORANDUM |
| ALLISON MARIE BAVER, | |
| Defendant. | District Court Judge Jill N. Parrish |

The United States of America respectfully submits this Sentencing Memorandum in advance of Ms. Baver's sentencing for False Statements to a Bank, Money Laundering, and Criminal Contempt. For the reasons set forth below, the United States respectfully recommends that the Court sentence Ms. Baver to a period 78 incarceration, to be followed by a period of five years of supervised release.

I. RELEVANT FACTS

The grand jury charged Ms. Baver with False Statements to a Bank, in violation of 18 U.S.C. § 1014, arising from her submission of multiple PPP loan applications on behalf of Allison Baver Entertainment LLC ("ABE") to two different banks, Northeast Bank and

1

Meridian Bank.[1] She was also charged with one count of Money Laundering, in violation of 18 U.S.C. § 1957, relating to the transfer of $150,000 of the PPP loan proceeds for a film titled "No Man of God." The final count charged that Ms. Baver committed criminal Contempt of Court, in violation of 18 U.S.C. §401(3), by failing to comply with two court orders to produce records in response to a grand jury subpoena issued to ABE.

A jury trial began on June 26, 2023. (ECF 169). On June 29, 2023, the jury returned a verdict of guilty on all four counts. (ECF 172, 179).

The evidence at trial established the following:

*Counts 6 and 8 – False Statements to a Bank*

On behalf of ABE, Ms. Baver submitted multiple PPP loan applications to Northeast Bank and Meridian Bank. The PPP loan applications, submitted in late April 2020, requested a PPP loan of $10 million, the maximum amount allowed. *See* Gov. Trial Exs. 13(a) – 13(l), 16(a)-16(c)). These PPP loan applications reflect that, from the start, Ms. Baver attempted to get a $10 million loan, regardless of the number of claimed employees or monthly payroll. Her claims that she had a distribution agreement with A&E for a show and two movie projects were not accurate; ABE had only a tentative "pay to play" offer – (one in which ABE had to pay to create a show and then pay A&E to get it aired) – and had no active production projects and no money. This wasn't about making payroll during a pandemic.

---

[1] The Second Superseding Indictment charged a total of eight (8) counts of False Statements to a Bank, in violation of 18 U.S.C. § 1014. Counts 1-4, 7, and 8 involved PPP applications submitted to Northeast Bank through Lendio on different dates and/or containing different employee or payroll information. Counts 5-6 involved PPP applications submitted directly to Meridian Bank on different dates and/or containing different payroll information. The United States elected to proceed to trial on Counts 6 and 8 only, which involved the last or final PPP application submitted to each bank. The Court granted the United States' motion to dismiss Counts 1-5 and 7 on or about June 20, 2023.

2

Ms. Baver wanted the $10 million as start-up money for her film company.

The final applications submitted to Meridian and Northeast falsely claimed monthly payroll of more than $4.7 million and 430 employees. Ms. Baver also submitted to Northeast and Meridian a "payroll audit" dated April 22, 2020 that reflects payroll occurring at least as of April 22, 2020. This was false. In addition, Ms. Baver submitted a 7(a) loan calculator spreadsheet in which she input very specific payroll numbers for March 2020, April 2020, and May 2020, indicating that 430 employees were already on payroll, and had been on payroll for almost two months. This was also false. Meridian approved and funded the PPP loan application submitted by Ms. Baver.

Witness testimony, tax forms, and payroll records established that ABE had no employees and paid no wages prior to obtaining the PPP loan. (*See* Gov. Ex. 34-44, 76). The evidence demonstrated that, from June 2020 through October 2020 (after ABE received the $10 million PPP loan), ABE had a total of nine (9) employees, including herself, and paid total wages of approximately $177,000; these numbers were vastly different from the certified claims in the PPP loan applications that ABE had 430 employees and paid an average of $4.7 million per month in payroll. Meridian witnesses testified that they did not know that ABE had no employees and had not paid any payroll at the time Ms. Baver submitted the loan applications.

Notably, shortly before submitting the PPP applications to Meridian and Northeast, Ms. Baver was told that ABE was not eligible for a $10 million PPP loan. Micah Stanford, an employee of Utah First Credit Union, provided testimony and authenticated emails between

3

himself and Ms. Baver, relating to Ms. Baver's unsuccessful efforts to obtain a $10 million PPP loan from Utah First Credit Union. The email communications demonstrate that Stanford informed Ms. Baver that: (1) she could not use future projected payroll to determine a loan amount, and (2) because ABE had no past payroll history, it was not eligible for a PPP loan. (*See* Gov. Trial Ex. 4, 6, 9). Stanford also testified that he spoke with Ms. Baver and, in response to her statement that she had paid one or two employees, Stanford advised that he could work with her to get a PPP loan for the payroll to those one or two existing employees, but Ms. Baver did not request that loan. She wanted $10 million to fund her dream to be involved in the movie industry and was determined to find a bank that would give it to her.

  ABE did not have 430 employees or $4.7 million in average monthly payroll at the time Ms. Baver submitted the PPP loan applications to Northeast and Meridian. The tax forms and payroll records conclusively prove that these statements were not true. Ms. Baver knew these statements were not true as she was the sole owner of ABE, provided the quarterly tax forms to her bookkeeper, and told Micah Stanford that she had only paid one or two employees. As this Court previously found, it was reasonable for the jury to conclude that Ms. Baver "knowingly made false statements to Northeast Bank and Meridian Bank with the intent to influence their actions with respect to her PPP loan applications in violation of 18 U.S.C. § 1014." Memorandum Decision & Order Denying Defendant's Motion for a Judgment of Acquittal, p. 6 (ECF 184).

*Count 9 – Money Laundering*

After receiving the $10 million PPP loan, Ms. Baver transferred $150,000 of the PPP loan proceeds to another bank account for the movie "No Man of God." (*See* Gov. Exs. 26-27). Testimony from witness Lisa Whalen established that additional investment money was needed for the film and that her company ("Company X") solicited potential investors and received $150,000 from ABE. In addition, testimony of Jeff Neumeister established that, after his accounting company classified the expense as an "investment," Ms. Baver contacted him to express her concerns about that classification. Neumeister informed Ms. Baver that, if she had documentation to reflect that the money was not an investment, to provide that documentation and he would review it to determine if the classification should be changed; Ms. Baver never provided any such documentation.

Notably, "No Man of God" was not among the projects or claims of employee payroll submitted by Ms. Baver to obtain the $10 million PPP loan. This use of $150,000 is further evidence that the PPP loan was never about covering three months of actual payroll; it was about Ms. Baver obtaining money to pay for future film projects.

*Count 10 – Criminal Contempt*

While on pretrial release in this case, a grand jury subpoena was served on ABE in May 2022. Ms. Baver repeatedly refused to comply with the subpoena, despite three court orders issued by Judge Stewart. (*See* Gov. Exs. 70-73). Judge Stewart's orders were clear and unequivocal.

Judge Stewart's June 28, 2022 order plainly stated that ABE was ordered to comply

5

with the subpoena on or before June 30, 2022. While the June 14, 2022 does not include such explicit language, testimony from Blake Hamilton – (counsel for ABE and Ms. Baver during the relevant period) -- established that the motion to quash was a legal attempt to avoid compliance with the May 6, 2022 subpoena. The deadline for compliance of the subpoena was June 15, 2022. After the June 14, 2022 order denying the motion to quash, Mr. Hamilton testified the result of the order was that the subpoena was still in effect. Indeed, Mr. Hamilton testified that his firm contacted the United States on or about June 15, 2022 to seek an extension of time for ABE to respond to the subpoena, which demonstrated Ms. Baver's understanding that the June 14, 2022 order required compliance of the subpoena. Mr. Hamilton also testified that he acted at the direction of Ms. Baver at each step and that she received a copy of Judge Stewart's orders.

In November 2022, Judge Stewart issued a third order after yet another attempt by Ms. Baver and ABE to avoid compliance. This order explicitly required compliance with the subpoena immediately. Ms. Baver was provided with a copy of this order. ABE never complied with the subpoena. The jury properly found that Ms. Baver acted willfully in refusing to comply with the subpoena in violation of Judge Stewart's order.

## PRESENTENCE INVESTIGATION REPORT

The sentencing guidelines as calculated in the Presentence Investigation Report ("PSR") are correct. The United States Probation Office ("USPO") correctly calculated the Total Offense Level of 28. No other adjustments are appropriate. USPO also correctly

calculated Ms. Baver's criminal history category as I. Defendant's violation of 18 U.S.C. § 1014 has a statutorily authorized maximum sentence of 30 years and a fine of $1,000,000. Defendant's violation of 18 U.S.C. § 1957 has a statutorily authorized maximum sentence of 10 years and a fine of $250,000. Defendant's violation of 18 U.S.C. § 401(3) has no statutory limits on the sentence the Court can impose for this offense.

With an offense level of 28 and a criminal history category I, the applicable guideline range is 78 months to 97 months incarceration.

*Defendant's Objections to the Presentence Report Guidelines Calculation*

Ms. Baver's sentencing memorandum raises four objections to the PSR. The first is a request to have her objections to the offense conduct description noted. That objection is included in the final report, properly only once rather than on every paragraph. The second is a request to include a lengthy recitation of Ms. Baver's own facts and explanations. That request was appropriately declined by USPO for the reasons that the PSR is not the appropriate place for this recitation and the information is included in defendant's sentencing memorandum. The third and fourth issues raised are both objections to the two-level enhancement for obstruction of justice in paragraph 67.

The two-level adjustment for obstruction of justice is appropriate based on Ms. Baver's failure to comply with a grand jury investigative subpoena and court orders requiring her to produce documents material to the investigation in this case. The United States Sentencing Guidelines Manual states "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the

7

investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by **2** levels. *U.S.S.G. § 3C1.1*. Ms. Baver's failure to comply with a lawfully issued grand jury subpoena and her ongoing refusal to comply with orders issued by Judge Stewart to provide requested ABE documents impeded the investigation and prosecution of her false statements and money laundering. And the obstructive conduct was related to the offenses of conviction.

  Ms. Baver's third objection, to the inclusion of the obstruction adjustment because contempt is either a misdemeanor or sui generis, is misplaced because the inclusion of the obstruction adjustment is based on her actions, not the level of her conviction. The adjustment should be included when a defendant impedes an investigation or prosecution regardless of whether the conduct resulted in a conviction or the category of conviction. Concealing evidence material to the investigation is specifically included in a list of examples of conduct that warrant the adjustment. *U.S.S.G. § 3C1.1, Application Note 4(D)*. The obstruction adjustment was correctly included here because Ms. Baver refused to produce ABE documents required by a grand jury subpoena and Judge Stewart's orders to comply with the subpoena, and the failure to produce the documents impeded an official investigation. While the same conduct that led to Ms. Baver's contempt conviction is used to support the obstruction adjustment, there is no double counting because she received no points for the contempt conviction.

  Likewise, Ms. Baver's fourth and final objection to the PSR is not applicable. Ms.

8

Baver relies on U.S.S.G. § 3C1.1, Application Note 7, which states that that the obstruction adjustment should not be applied to the offense level for contempt, U.S.S.G. § 2J1.1, if the defendant is convicted of contempt. *U.S.S.G. § 3C1.1, Application Note 7*. While Ms. Baver was convicted of contempt, the obstruction adjustment was not added to the offense level for contempt. It was added to the offense level for False Statements to a Bank and Money Laundering, U.S.S.G. § 2S1.1 and U.S.S.G. § 2B1.1. Adding the obstruction adjustment to an obstruction offense, such as contempt, would not be appropriate. It is, however, appropriate to add the obstruction adjustment to a related offense as explained in Application Note 8. "If the defendant is convicted of both an obstruction offense … and an underlying offense (the offense with respect to which the obstructive conduct occurred)" the counts are grouped and the offense level will be whichever is greater between the underlying offense with two levels added and the obstruction offense. *U.S.S.G. § 3C1.1, Application Note 8*.

## III. SENTENCING DISCUSSION

After a calculation of the guidelines, the Court examines the factors under 18 U.S.C. § 3553(a) to consider a just and fair sentence - a sentence that is sufficient, but not greater than necessary. The United States submits that the recommended sentence of 78 months' incarceration is appropriate when examining the § 3553(a) factors. This sentence is the low-end of the guideline range for Ms. Baver's offenses and the guideline is appropriate based on all of the facts and circumstances of this case.

### A. Nature and Circumstances of the Offense

The evidence at trial demonstrated that Ms. Baver obtained $10 million in pandemic relief through false statements. It was the maximum amount available. Ms. Baver took $10 million from the limited bucket of financial relief available for legitimate loan claims. At trial, Brandt Kuehne of Utah First Credit Union testified that the average PPP loan obtained by the credit union's clients was $78,000. Ms. Baver's PPP application was, by far, the largest loan application received by the credit union. Ms. Baver submitted numerous applications – each of which was focused not on actual employees or payroll, but rather on getting $10 million. Ms. Baver was explicitly told by Micah Stanford that ABE did not qualify for a PPP loan and that her loan application could not be based on future projected payroll. This did not deter her. She just went to a different bank and modified the information she provided to the bank to get the money.

After she had loan money, she did not claim that she could make payroll; she did not hire hundreds of employees; rather, she bragged that she "was able to secure the financing" for her tv show and wanted information on how much she would have to pay to get her show aired on prime time. (Gov. Trial Exs. 56, 57). She then spent $150,000 on the film "No Man of God," which was not one of the projects she claimed on her PPP loan application. The PPP loan applications were a fiction; the reality was Ms. Baver wanted to be in the film industry and needed money to finance her plans.

Even when faced with court orders to comply with a grand jury subpoena for records and documents about ABE and its finances, Ms. Baver willfully disregarded the court's

authority and orders. Ms. Baver has not been transparent about ABE. She made false statements to obtain $10 million, and then refused to comply with court orders to disclose information about ABE's records. The nature and circumstances of this case support a guideline sentence.

    B. *History and Characteristics of the Defendant*

This is Ms. Baver's first criminal conviction, but it is serious. Section 4C1.1 of the USSG accounts for her lack of criminal history and affords her a benefit that many first-time federal defendants do not enjoy. PSR, paragraph 70.

The characteristics that appear to define Ms. Baver most in relation to these offenses are failure to take responsibility and blaming others. Even now, Ms. Baver continues to push the narrative that she did nothing wrong and everyone else involved was to blame for the blatantly false statements she included on her PPP application forms. And while extensively blaming others for making mistakes that led to her receiving the money, Ms. Baver inexplicably maintains that she should be allowed to keep the money.

Ms. Baver obtained $10 million in pandemic relief through false statements. Taking $10 million out of a limited pot of money meant for people suffering due to lost wages during the pandemic is concerning. Perhaps even more concerning is the fact Ms. Baver continues to claim that she and ABE are entitled to the $10 million in PPP proceeds. She continues to claim that the seized $9.5 million rightfully belongs to ABE (and, by extension, her).

Ms. Baver appears to have a fundamental lack of respect for the law and the court. She consistently failed to comply with a grand jury subpoena and Judge Stewart's orders. Even after she was indicted and on pretrial release, she willfully disobeyed court orders relating to ABE's records. Ms. Baver has demonstrated that she will not self-correct her behavior; which makes her a danger to the public. Ms. Baver has shown contempt for the law, for the truth, and for the court. The recommended sentence is appropriate given the history and characteristics of the Defendant.

*C. The Sentence Reflects the Seriousness of the Offense*

The recommended sentence appropriately reflects the seriousness of the offense. Ms. Baver made false statements to obtain the maximum amount of PPP pandemic relief available. She transferred criminal proceeds. And she refused to comply with court orders. These are serious offenses as reflected by the maximum possible penalties for each offense; False Statements to a Bank carries a maximum penalty of 30 years per count, Money Laundering carries a maximum penalty of 10 years, and Contempt has no maximum penalty. The seriousness of the offenses warrants a sentence of 78 months.

*D. The Sentence Promotes Respect for the Law*

Ms. Baver has demonstrated to this Court that she has no respect for the law when it does not serve her purpose. She ignored Micah Stanford's clear instruction that she did not qualify for the PPP loan. She ignored a grand jury subpoena and Judge Stewart's orders. Ms. Baver's conduct in this case alone warrants a significant sentence. To promote adequate

respect for the law, Ms. Baver's punishment needs to include a substantial period of incarceration.

*E. The Sentence Provides Just Punishment*

The recommended 78-month sentence is the low-end of the sentencing guidelines range and provides just punishment for Ms. Baver's conduct. The Defendant's requested sentence of "CTS" and three years of supervision is not just punishment. While CTS generally refers to Credit for Time Served, Ms. Baver has not served a single day for the offenses in this case. She received one day of jail credit for processing but has not actually served time in custody. Ms. Baver unlawfully took $10 Million from limited funds meant for people suffering during the COVID pandemic then essentially ignored court orders requiring her to turn over business documents related to the PPP money. Justice requires a significant prison sentence.

*F. The Sentence Affords Adequate Deterrence to Criminal Conduct*

The need for deterrence here is two-fold: specific deterrence, to deter Ms. Baver from future offenses, and general deterrence, to deter the general public from considering similar crimes.

Given Ms. Baver continued and persistent refusal to appreciate the wrongfulness of her conduct, to include her refusal to comply with court orders and her continued demands for the $9.5 million in seized monies, the United States believes a significant sentence is necessary to deter Ms. Baver from future offenses. The blatant false statements and

continued refusal to accept any responsibility puts Ms. Baver at a very high risk for recidivism.

The United States further believes the recommended sentence is necessary to deter others from committing similar offenses. Section 3553(a)(2)(B) requires the Court to impose a sentence that "affords adequate deterrence to criminal conduct." 18 U.S.C. § 3553. "Congress has recognized that general deterrence is particularly important in the context of white collar crime." *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018). When Congress enacted Section 3553(a), it noted the importance of general deterrence and specifically sought to curb judicial leniency in the context of economic crimes: "Major white collar criminals often are sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business." S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259.

The recommended sentence of 78-months will provide afford adequate deterrence, both specific and general.

*G. The Sentence Protects the Public from Further Crimes of the Defendant*

As noted above, Ms. Baver has demonstrated that she will not self-correct her behavior; that makes her a danger to the public.  A significant sentence is necessary to protect the public.

*H. The Sentence Can Provide Correctional Treatment, Educational Training, and the Like*

Ms. Baver's employment history is extremely limited. To the extent she is interested, the United States anticipates that Ms. Baver will have the opportunity to avail herself of educational/vocational programs while serving her sentence, which will help her obtain gainful employment after incarceration.

I. *The Sentence Avoids Unwarranted Sentencing Disparities Among Similarly Situated Defendants*

A sentence within the guidelines range avoids unwarranted sentence disparities. The recommended sentence of 78 months' incarceration is the low-end of the sentencing guidelines range.

## IV. CONCLUSION

The United States recommends that the Court sentence Ms. Baver to 78 months incarceration, followed by five years of supervised release. As set forth above, this sentence is sufficient, but not greater than necessary, to punish and deter Ms. Baver and to promote respect for the law.

DATED: October 8, 2024.

TRINA A. HIGGINS
United States Attorney

*/s/ Trina A. Higgins*