Michael Langford (9682)
Alexander E. Ramos (15234)
LANGFORD | RAMOS PLLC
8 East Broadway, Ste. 420
Salt Lake City, UT 84111
Telephone: (801) 328-4090
alex@langfordramos.com
mjl@langfordramos.com

Nicolas C. Wilde (15768)
Law Office of Nicolas C. Wilde LLC
40 S. 600 E.
Salt Lake City, UT 84102
Telephone: (801) 949-3088
Email: nick@ncwildelaw.com

*Attorneys for Allison Marie Baver*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ALLISON MARIE BAVER,<br><br>        Defendant. | **Reply Memorandum in Support of Motion to Vacate the Judgment and Grant a New Trial Under Rule 33 Based on Prior Counsel's Ineffectiveness or, In the Alternative, to Hold an Evidentiary Hearing to Determine Prior Counsel's Ineffectiveness**<br><br>Case No. 2:21-cr-00520<br><br>District Judge Jill N. Parrish |

Allison Marie Baver ("Ms. Baver") through undersigned counsel, submits this Reply

Memorandum, which is limited to rebuttal of matters raised in the United States' Response to

Defendant's Motion for a New Trial, ECF No. 294.

## Introduction

In her opening Motion, Ms. Baver described in detail her prior counsel's ineffectiveness—including trial counsel's invitation to find her guilty based on a lesser standard than due process demands. Ms. Baver also noted this Court's valid concerns of trial counsel's ineffectiveness based on the Court's firsthand observations of the trial.

In its Opposition, the Government does not address what this Court "witnessed," or how this Court struggled to see how there was any strategy in what went on. In failing to address this Court's firsthand observations, the Government disregards settled authority recognizing that trial judges are uniquely positioned to assess matters a cold record cannot capture—including juror demeanor, juror reactions, and the likely effect of prejudicial statements on the jury. Further, the Government downplays Ms. Baver's legitimate complaints of ineffectiveness and retreats to the refrain that this Court must defer to trial counsel's judgments. But the Government overlooks that "while there is, of course, a presumption that counsel was effective, that presumption cannot be used to deflect all serious allegations of ineffectiveness, or else the constitutional guarantee would be eviscerated." *United States v. Holder*, 410 F.3d 651, 655 (10th Cir. 2005).

This Court's concerns with trial counsel's performance were well-founded. A new trial should be ordered.

## Argument

Ms. Baver addresses each of the Government's arguments in turn.

## I.    Ms. Baver Did Not Waive Her Challenge to the Contempt Charge.

Ms. Baver is entitled to an evidentiary hearing on her claims of ineffectiveness so long as those claims are "colorable." *United States v. Meacham*, 567 F.3d 1184, 1187 (10th Cir. 2009). In her opening brief, she described how Mr. Hamilton testified that he did not personally provide

copies of relevant court orders to Ms. Baver—his office or law partner did. (ECF No. 291 at 13.) And Ms. Baver described how defense counsel did not ask questions during cross-examination relevant to determining how Mr. Hamilton knew those materials were provided to Ms. Baver. (*See* ECF No. 291 at 13.) Further, in her request for an evidentiary hearing, Ms. Baver requested that she be permitted to cross-examine prior counsel about whether the trial team, "during their investigation," "independently verified Blake Hamilton's claim that his office had provided Ms. Baver with a copies of the materials that formed the basis of Ms. Baver's contempt charges." (ECF No. 291 at 43.)

Considering trial counsel's performance as a whole, Ms. Baver has established more than a colorable claim that trial counsel may have been ineffective in failing to elicit testimony related to how Mr. Hamilton was able to testify as he did. Ms. Baver respectfully requests that the Court decline to dismiss Ms. Baver's claim related to the contempt charge until she has an opportunity to have an evidentiary hearing.

## II.    Ms. Baver Is Entitled to a New Trial Based on Her Trial Counsel's Deficient Closing Argument.

The Government argues that "Baver's various claims of error" related to trial counsel's closing argument "fail both prongs of *Strickland's* test." (ECF No. 294 at 23.) Ms. Baver addresses each of the Government's arguments in turn.

### A.  Trial Counsel's Closing Argument Diluted the Government's Burden of Proof.

In her opening brief, Ms. Baver argued that "trial counsel misstated the law by arguing that the jury could find Ms. Baver guilty if they simply '**believed**' that she intentionally falsified a document." (ECF No. 291 at 23 (bold added).) Ms. Baver's argument was well-founded, as other jurisdictions have recognized that a "juror's **mere belief** that an accused individual is guilty does not automatically mean that the [prosecution] has met its burden." *State v. Magallanez*, 290

Kan. 906, 914, 235 P.3d 460, 468 (2010) (bold added). Indeed, other jurisdictions have recognized that an attempt to argue that a juror's mere "belief" of guilt justifies a finding of guilt beyond a reasonable doubt amounts to a **dilution** of the prosecution's burden. *See id*. ("The prosecutor's statement that the measure of reasonable doubt is 'an individual standard . . . a standard that when you believe he's guilty you've passed beyond' did, as Magallanez asserts, incorrectly define and **impermissibly dilute** the State's burden of proof.") (bold added).

Because such a "mere belief" argument dilutes the prosecution's burden and prejudices a defendant, it is a tactic more commonly seen by prosecutors—actors serving as an adversary to the defendant. *See id*. at 915 ("Such a misstatement of law is outside the wide latitude given to prosecutors in closing argument."). This raises a question that is relevant to this case. If a "mere belief" argument dilutes the prosecution's burden, why would defense counsel ever make such an argument in defense of his own client? Here, trial counsel's argument that if the jury "believe[d] that" Ms. Baver "intentionally falsified those, then you've got to find her guilty" was a misstatement of law more commonly seen by prosecutors. Making an argument more commonly seen by actors hoping for a defendant's conviction is, as Ms. Baver previously argued, evidence that trial counsel may have "acted with an apparent interest to weaken Ms. Baver's case." (ECF No. 291 at 22.) In other words, trial counsel's argument was "so bizarre [and] unwarranted that" it "fell outside the broad range of reasonable professional assistance that could be considered 'sound trial strategy.'" *Ferguson v. Williams*, 139 F.3d 911 at *6 (10th Cir. 1998) (unpublished) (citation omitted).

The Government's Opposition (1) fails to acknowledge that trial counsel had not broached the topic of the reasonable doubt standard prior to making his diluting "belief" argument and overlooks that trial counsel's later references to the reasonable doubt standard

would not have neutralized the prejudice caused by the misstatement of law; (2) overlooks that the prosecutor, in her closing argument, never argued to the jurors that their mere "belief" was sufficient to find guilt beyond a reasonable doubt; and (3) overlooks the plain meaning of trial counsel's words and downplays the resulting prejudice.

1. <u>The Government Fails to Acknowledge that Trial Counsel Had Never Broached the Topic of the Reasonable Doubt Standard Prior to Making His Diluting "Belief" Argument.</u>

The Government (1) ignores that trial counsel had not broached the topic of reasonable doubt prior to making his "belief" argument, and (2) overlooks that trial counsel's later vague references to reasonable doubt would not have neutralized the prejudice of his earlier misstatement of law.

Citing pages 46 through 49 of ECF No. 196, the Government argues that trial counsel "repeatedly argued to the jury that the government had 'the burden to prove *beyond a reasonable doubt*' that Baver knowingly submitted false statements to the banks, and that the government could not meet its burden." (*See* ECF No. 294 at 25.) And the Government argues that "Baver ignores all of that and skips over the context in which Hunt made the challenged statement." (ECF No. 294 at 25.) But what the Government omits is that trial counsel, at the time he made his diluting "belief" argument, had not broached the topic of the reasonable doubt standard. (*See* ECF No. 196 at 26–34.) Indeed, the first time trial counsel raised the issue of reasonable doubt was at page 44 of ECF No. 196. (*Compare* (ECF No. 196 at 44 ("Okay. I want to talk about reasonable doubt.") *with* (ECF No. 196 at 34 ("If you believe that . . . she intentionally falsified those, then you've got to find her guilty. The government is right.").)

At the time trial counsel made the diluting "belief" argument, the jury had not heard any argument from trial counsel related to the Government's high burden of proving guilt beyond a

reasonable doubt. Upon hearing trial counsel's prejudicial misstatement of the law, there is more than a reasonable likelihood that the jurors were left with the mistaken impression that their mere "belief" of guilt was sufficient to justify a finding of guilt beyond a reasonable doubt. So, when considered in chronological order—the order the jury would have heard trial counsel's argument—Ms. Baver did not "skip" over anything.

Further, trial counsel having later made vague, passing references related to the reasonable doubt standard would not have neutralized the earlier prejudice of his legally incorrect "belief" argument because the jurors likely would have been left "with the impression that" trial counsel's diluting belief argument was a "proper" description of the governing reasonable doubt standard. *C.f. United States v. Velazquez*, 1 F.4th 1132, 1139–40 (9th Cir. 2021); *C.f. State v. Silva,* 134 Haw. 132, 337 P.3d 53 (Ct. App. 2014).[1] Because trial counsel made a misstatement of law and did not later explicitly correct his misstatement, the "prejudicial effect" of that misstatement was "not cured" by trial counsel's later arguments related to the reasonable doubt standard. *C.f. Silva*, 134 Haw. 132 at *9.

---

[1] *C.f. Velazquez*, 1 F. 4th at 1139–40 ("Although the district court initially instructed the jury to follow its instruction on reasonable doubt and 'not as to what any attorney says the standard of reasonable doubt is,' the prosecutor then provided numerous improper examples that served to reduce the government's burden of proof—all without further admonishment. And the district court overruled defense counsel's second objection after the prosecutor, during his rebuttal, rehashed an identical argument that reasonable doubt was something the jurors used 'every single day.' By overruling the objection, the court naturally left the jurors with the impression that the prosecutor's comparison of the reasonable doubt standard to an 'everyday' judgment, and that the specific examples the prosecutor furnished, were proper. Moreover, the prosecutor's distortion of the standard was among the last things the jury heard before they began deliberations, further exacerbating our concerns.");

*C.f. Silva*, 134 Haw. 132 at *9 ("'Arguments of counsel which misstate the law are subject to objection and to correction by the court.' The prejudicial effect of a prosecutor's misstatement of the law is not cured where the court overrules defense counsel's timely objection to the prosecutor's misstatement of the law and fails to give a specific curative instruction. This is because when defense counsel's objections to such misstatements are overruled, 'the jury would reasonably perceive that the misstatement of the law was not incorrect.' . . . Additionally, a misstatement of law is not cured where the court has an opportunity to clarify the law to the jury, but fails to do so.").

2. The Government Overlooks that the Prosecutor, in Her Closing, Never Argued to the Jury that Their Mere "Belief" Was Sufficient to Find Guilt Beyond a Reasonable Doubt.

In her opening brief, Ms. Baver argued that trial counsel's "closing argument prejudiced Ms. Baver because it invited the jury to find [her] guilty based" on a "lower standard than due process requires." (ECF No. 291 at 22.) In response, the Government argues that trial counsel's "'If you believe' statement was nothing more than a **summation** of the government's thesis in the indictment" and argues that trial counsel "merely adopted a dyed-in-the-wool rhetorical framework that **recited** the government's **position** and then explained why the evidence showed otherwise." (ECF No. 294 at 26 (bold added).) But nowhere in her closing argument did the prosecutor even suggest that mere "belief" was sufficient for the jurors to find guilt beyond a reasonable doubt. (*See* ECF No. 196 at 9–26.) The prosecutor did not argue to the jury that their mere "belief" as to one of four elements was sufficient to find Ms. Baver guilty beyond a reasonable doubt because "[s]uch a misstatement of the law is outside the wide latitude given to prosecutors in closing argument." *Magallanez*, 235 P.3d at 468. Any argument that trial counsel was simply "reciting" the Government's "position" is not supported by an examination of the record.

Trial counsel misstated the law and diluted the Government's burden of proof. Trial counsel having diluted the Government's burden is "so bizarre [and] unwarranted that" it "fell outside the broad range of reasonable professional assistance that could be considered 'sound trial strategy.'" *Ferguson v. Williams*, 139 F.3d 911 at *6 (10th Cir. 1998) (unpublished) (citation omitted).

3. The Government Overlooks the Plain Meaning of Trial Counsel's Words and Downplays the Resulting Prejudice.

In her opening brief, Ms. Baver argued that trial counsel's misstatement of law "invited the jury to find Ms. Baver guilty based on only some of the elements of 18 U.S.C. Section 1014." (ECF No. 291 at 24.) In response, the Government reaches across various pages of trial counsel's closing argument to stitch together an argument that trial counsel, in other portions of his argument, addressed the other elements. (*See* ECF No. 294 at 26–27.) This argument is not persuasive because it overlooks the plain meaning of trial counsel's words and downplays the resulting prejudice.

In no uncertain terms, trial counsel made a simple "if→then" argument: "**If** you believe that she . . . intentionally falsified those, **then** you've got to find her guilty." (ECF No. 196 at 34 (bold added).) This is a prejudicial misstatement of law that instructed the jury to find Ms. Baver guilty based on fewer than all of the elements. That trial counsel may have touched on other elements of the offense does not neutralize the prejudice of trial counsel's misstatement. The jurors were left with the misimpression that guilt could be found based solely on their belief that Ms. Baver "intentionally falsified" a document—without regard to the other elements.

**B. The Government's Argument that Trial Counsel Made a Strategic Choice to "Reframe the Government's Thematic Emphasis" Is Not Persuasive.**

In her opening Motion, Ms. Baver argued that trial counsel's "closing argument was deficient because it consistently reinforced the Government's theme, bolstered the Government's explanation of Ms. Baver's motives, and undermined Ms. Baver's credibility." (ECF No. 291 at 25.) In its Opposition, the Government argues that trial counsel's "decision to co-opt the prosecutor's rhetoric was a time-honored and inherently **strategic choice** to reframe the government's thematic emphasis so that it supported the defense's theory of the case." (ECF No.

294 at 27 (bold added).) The Government's argument is not persuasive because it (1) views the statements in isolation—separate from Ms. Baver's other complaints of trial counsel's prejudicial performance.

1. When Considered Together with the Mere "Belief" Argument, Trial Counsel Cannot Be Said to Have Been Making a "Time Honored" Strategic Choice.

Trial counsel's statements that embraced the Government's theme must be considered together with the other prejudicial aspects of trial counsel's closing argument. It is not a "time-honored" (ECF No. 294 at 27) strategy for defense counsel to argue that jurors' mere belief of guilt is sufficient to return a finding of guilt beyond a reasonable doubt. Nor is it a "time honored" strategy for defense counsel to completely fail to even mention an available good faith defense—particularly where the trial court wonders "what the jury does with it." (ECF No. 196 at 5.) Trial counsel's statements that Ms. Baver was trying to "fit her square company into [a] round hole" and his statement that he did not disagree with the Government that she was "trying to cobble together whatever she can to get $10 million" cannot be considered a strategic decision where trial counsel also misled the jury by arguing that their mere "belief" that Ms. Baver falsified a document is sufficient to find guilt beyond a reasonable doubt. Indeed, embracing the Government's theme while simultaneously diluting the Government's burden is not a reasonable strategy. When considered together with trial counsel's other prejudicial statements, the Government's argument that trial counsel was simply making a "strategic choice" to embrace the prosecutor's theme crumbles. As this Court previously correctly noted—it is difficult "to see how there was any strategy in what went on." (*See* ECF No. 241 at 11.)

**C. The Government's Suggestion that Trial Counsel's Failure to Address the Good Faith Defense Was a Strategic Decision Motivated by a Concern to Appear Friendly to "Jury Autonomy" Is Not Persuasive.**

The Government argues that "Baver's 'good faith' and concomitant lack of criminal intent was the central theme" of trial counsel's closing argument. (ECF No. 294 at 29.) If, as the Government argues, trial counsel's central theme was *good faith*, one would expect trial counsel to have made a direct argument tying the evidence favorable to Ms. Baver to her good faith. But the Government is unable to point to any of trial counsel's arguments explicitly mentioning Ms. Baver's "good faith." (*See* ECF No. 294 at 29–30.)

The Government suggests that trial counsel made a "good" and "soundly strategic" decision to "'count on the judge's charge to remind' the jury of the instructions, and thereby 'preserve a strategy of appearing as the friend of jury autonomy.'" (ECF No. 294 at 30 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 10, 124 S. Ct. 1, 7, 157 L. Ed. 2d 1 (2003).) But it is difficult to understand how referencing the jury instruction would interfere with jury autonomy. The entire record—including trial counsel's mere "belief" argument—establishes that trial counsel performed deficiently. The decision to fail to reference the good faith instruction was not the product of sound trial strategy. It was the result of trial counsel's deficient performance.

If the Court holds that Ms. Baver is not yet entitled to a new trial, she respectfully requests that the Court hold an evidentiary hearing to allow Ms. Baver's current counsel to cross-examine "prior counsel about" why "they failed to mention the good faith defense in their closing argument," (ECF No. 291 at 43) and about whether that failure was the product of a trial strategy designed to "preserve a strategy of appearing as the friend of jury autonomy." (*See* ECF No. 294 at 30.) The record establishes that it is more than "colorable" that trial counsel's failure

to reference the good faith defense was not the product of a strategy to appear "as the friend of jury autonomy."

**D. At a Minimum, Trial Counsel's Personal Vouching Compounded Trial Counsel's Other Errors.**

The Government argues that trial counsel did not opine on the credibility of a witness during his closing argument. (ECF No. 294 at 31.) But trial counsel repeatedly argued to the jury "in [his] mind" that Ms. Baver was "talking forward looking . . . ." (ECF No. 196 at 39–40.) As this Court noted, what was relevant for the jury was "the evidence, not what" trial counsel thought. (ECF No. 196 at 40.) And as Ms. Baver previously argued, this Court previously "discussed much of the evidence that—if properly presented to the jury—would have resulted in a reasonable doubt of Ms. Baver's guilt[.]" (*See* ECF No. 291 at 14–15.) Trial counsel was deficient for relying on personal vouching (after diluting the Government' burden and after undermining Ms. Baver's credibility by reinforcing the Government's them) because the argument should have focused on the *evidence*—as this Court correctly noted.

Assuming without conceding that trial counsel's personal vouching is not sufficient to independently justify a finding of ineffectiveness, Ms. Baver respectfully submits, based on the unique facts of this case (including trial counsel's dilution of the Government's burden) that trial counsel's personal vouching was an error that contributed to the combined effect of her trial counsel's deficient performance. (*See* ECF No. 291 at 40–41.)

**E. At a Minimum, Trial Counsel's "Cobble Together" Statement Compounded Trial Counsel's Other Errors.**

The Government notes that trial counsel "immediately followed up the challenged statement by explaining what he *did* 'disagree with'—namely that [Ms.] Baver had lied to obtain the loan." (ECF No. 294 at 32.) And the Government points to other portions of trial counsel's

argument that it argues demonstrates that trial counsel "repeatedly argu[ed] to the jury that the government had failed to prove the 'intent to influence' element." (ECF No. 294 at 32.) But trial counsel's statements did not neutralize the prejudicial effect of trial counsel having agreed that Ms. Baver was "trying to cobble together whatever she can to get $10 million." (ECF No. 196 at 31.) Assuming without conceding that trial counsel's statement is not sufficient to independently justify a finding of ineffectiveness, Ms. Baver respectfully submits, based on the unique facts of this case (including trial counsel's dilution of the Government's burden) that trial counsel's statement contributed to the combined effect of her trial counsel's deficient performance. (*See* ECF No. 291 at 40–41.)

### F. In Opposing Ms. Baver's Argument that Trial Counsel's Closing Argument Lacked Any Apparent Strategy, the Government Misreads Its Own Cited Authority and Fails to Address the Deference Owed to This Court's Firsthand Observations.

The Government relies on *DeLozier* to argue that Ms. Baver cannot make a separate claim that trial counsel's closing argument lacked any apparent strategy. (ECF No. 294 at 32–33.) More specifically, the Government argues that Ms. Baver's argument "fails at the outset because she does not 'point to any specific improper comments in the closing argument.'" (ECF No. 294 at 32 (quoting *DeLozier v. Sirmons*, 531 F.3d 1306, 1329 (10th Cir. 2008).) But in *Delozier*, a petitioner appellant argued that his attorney was ineffective, in part, because he failed to "object to . . . the **prosecutor's** closing argument . . . ." *DeLozier v. Sirmons*, 531 F.3d 1306, 1329 (10th Cir. 2008) (bold added). The Tenth Circuit could "afford no relief" under the federal rules of appellate procedure because the petitioner appellant's brief did not "point to any specific improper comments in the" *prosecutor's* "closing argument." *Id*. But Ms. Baver's argument is

not that trial counsel was ineffective for failing to object to the prosecutor's closing argument.[2] Ms. Baver's argument is that she was prejudiced by trial counsel's closing argument, which lacked any apparent strategy. The Government's cited authority does not apply.

Moreover, the Tenth Circuit has affirmed a district court's finding that a criminal defendant was denied effective assistance of counsel where the district court found (among other things) that both "defense counsel presented closing arguments which were ineffective at proffering any semblance of a defense theory." *Stouffer v. Reynolds*, 214 F.3d 1231, 1234 (10th Cir. 2000). "Looking at these facts in light of the entire record, the district court concluded 'such a total lack of preparedness and ability equate [sic] to constitutionally deficient performance from any vantage point.'" *Id*. Thus, *Stouffer* is Tenth Circuit authority supporting the proposition that a closing argument lacking a "semblance of a defense theory" is a fact that, when considered together with other errors, can justify a finding of ineffectiveness.

The Government argues that "the 'entire record'" demonstrates that trial counsel pursued a strategy of arguing that Ms. Baver acted in good faith and lacked criminal intent. (ECF No. 294 at 33.) But the Government's generous reframing of trial counsel's closing argument is not what is relevant. What is relevant is trial counsel's closing argument—and the argument's effect on the jurors. As this Court already observed: "The closing argument was not really a closing argument, at least it wasn't a constitutionally effective argument." (ECF No. 241 at 7.) And as the Court observed: "I know what I witnessed during the trial, and I am struggling to see how there was any strategy in what went on." (ECF No. 241 at 11.)

---

[2] Indeed, the prosecutor did not attempt to dilute the Government's burden of proof in her closing argument by arguing that the jurors' mere belief of guilt was sufficient to return a guilty verdict. That bizarre argument was instead made by trial counsel in his closing argument.

The Government makes no mention of the Court's firsthand observations. (ECF No. 294 at 32–34.) In failing to acknowledge what this Court "witnessed during the trial," the Government disregards settled authority recognizing that trial judges are uniquely positioned to assess matters a cold record cannot capture—including juror demeanor, juror reactions, and the likely effect of prejudicial statements on the jury. [3] Regardless, the cold record confirms that trial counsel's closing argument reflected no discernible strategy and fell below constitutional standards.

### G. The Government's Argument that Ms. Baver Cannot Establish Prejudice Is Not Persuasive.

The Government argues that Ms. Baver's "conclusory assertions that the jury would not have convicted her were it not for her counsel's challenged statements are 'insufficient to satisfy the *Strickland* standard'" and argues that it is "not 'conceivable'" "that the jury would have returned a different verdict . . . ." (ECF No. 294 at 34–35.) The Government is wrong.

---

[3] *See Arizona v. Washington,* 434 U.S. 497, 513, 98 S. Ct. 824, 834, 54 L. Ed. 2d 717 (1978) ("There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias. [She] has seen and heard the jurors during their *voir dire* examination. [She] is the judge most familiar with the evidence and the background of the case on trial. [She] has listened to the **tone of the argument** as it was delivered and **has observed the apparent reaction of the jurors**.") (bold added);

*see also Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1128 (10th Cir. 2009) ("Because the presiding trial judge is present in the courtroom throughout the proceedings, he or she is uniquely positioned to assess the prejudicial effect of an improper argument in the context of the overall trial, as well as to fashion an appropriately tailored remedy.");

*see also United States v. Fields,* 72 F.3d 1200, 1207 (5th Cir. 1996) ("In reviewing a claim of prosecutorial misconduct, this Court first determines whether the prosecutor's remarks were improper and, second, whether they prejudicially affected the substantive rights of the defendant . . . The magnitude of the prejudicial effect is tested by looking at the prosecutor's remarks in the context of the trial in which they were made and attempting to elucidate their intended effect. At the same time, the **district court's on-the-scene assessment of the prejudicial effect, if any, is** **underlined**{entitled to considerable weight}." (emphases added).

*see also United States v. Cheska,* 202 F.3d 947, 953 (7th Cir. 2000) ("The district court was in a far better position than we are to understand the impact of these remarks on the jury, in the context of the whole trial. We have only the cold, black and white record before us. The district court was there to see whether the jury bristled or gasped or perhaps sat impassively when the prosecutor made this remark. The district court was able to assess the credibility of the witnesses and the strength of the evidence presented and determine the impact of this comment in context.").

"To satisfy the prejudice prong," Ms. Baver "'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lopez-Casillas v. United States*, No. 2:20-CV-00236-JNP-DAO, 2023 WL 6377512, at *3 (D. Utah Sept. 29, 2023) (citation omitted). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. (citation omitted). Here, Ms. Baver has established a probability sufficient to undermine confidence in the outcome.

There is a reasonable probability that the jury would not have returned a guilty verdict if trial counsel had not diluted the Government's burden and invited the jury to find his own client when he stated "then you've got to find her guilty." (ECF No. 196 at 34.) Trial counsel's statement establishes a probability sufficient to undermine confidence in the outcome because there is a reasonable probability that the jury based its decision to find Ms. Baver guilty on a lesser standard than due process requires. If trial counsel had not diluted the Government's burden; had not invited the jury to find his own client guilty; had not consistently reinforced the Government's themes; had explicitly tied favorable evidence to the good faith instruction; had based his argument on favorable evidence rather than his personal opinion; and had not effectively conceded an element of one of the offenses, there is a substantial likelihood that reasonable doubt would have been created in the minds of the jurors. Ms. Baver has established prejudice from trial counsel's deficient

### III. The Government's Attempt to Downplay the Beneficial Effect Kirkham's Testimony Would Have Had on the Good Faith Defense Is Not Persuasive.

Final Instruction No. 26 provided: "The defendant is charge with a violation of 18 U.S.C. § 1014 for making the following false statements to Northeast Bank: ABE's average monthly payroll was $4,770,583; and ABE had 430 employees." (ECF No. 178 at 49.) To find Ms. Baver guilty, the Government had to prove, among other elements, that Ms. Baver "knew the statement

was false when she made it[.]." (ECF No. 178 at 49.) The jury instruction also provided: "It is sufficient that defendant submit the statement to a third party, knowing that the party will submit the false statement to the federally insured bank." (ECF No. 178 at 49.)

Final Instruction No. 30 provided: "If the defendant acted in good faith, then she lacked the intent to influence a bank through a false statement. The defendant acted in good faith, if at the time, she honestly believed in the truthfulness of the statements that the government has charged as being false." (ECF No. 178 at 56.)

Ms. Baver previously argued that a phone recording between her and Jason Kirkham, a Lendio Utah Franchise Owner,[4] "prove[s] that (1) Lendio understood Ms. Baver's company had no prior payroll but submitted the application to Northeast Bank anyway and (2) Ms. Baver admitted to having no prior payroll," and argued that "these facts would have bolstered Ms. Baver's good faith defense." (ECF No. 291 at 32.)

In its Opposition, the Government **(A)** suggests that under no circumstances can this court "second guess" trial counsel's decision not to call Kirkham because that was a decision within trial counsel's discretion; **(B)** argues that the record provides numerous strategic explanations not to call Kirkham; **(C)** argues that Lendio's knowledge is irrelevant; **(D)** argues that Kirkham's comprehension is speculative; and **(E)** argues that Ms. Baver cannot establish prejudice. Ms. Baver addresses each argument in turn.

### A. The Government's Suggestion that Courts Cannot "Second Guess" Trial Counsel's Decision Not to Call a Particular Witness Is Not Persuasive.

The Government argues that "the Tenth Circuit has 'repeatedly held that whether to call a particular witness is within the sound discretion of trial counsel" and argues "courts 'do not

---

[4] *See* Defendant's Exhibit 409

second guess' those decisions. (ECF No. 294 at 35 (citations omitted).) But the Government

omits that the Tenth Circuit has "noted an important limitation to the scope of trial counsel's

discretion: it is the *informed, tactical* decision that is within counsel's discretion." *United States*

*v. Holder*, 410 F.3d 651, 655 (10th Cir. 2005) (emphasis in original).) "And while there is, of

course, a presumption that counsel was effective, that presumption cannot be used to deflect all

serious allegations of ineffectiveness, or else the constitutional guarantee would be eviscerated."

*Id*. Indeed, the Tenth Circuit has recognized that it "should not attempt to state general rules

regarding when the presumption of effectiveness should prevail and when it should give way."

*Id*. In fact, the Tenth Circuit has *reversed a district court* for failing to hold an evidentiary

hearing where one of the primary claims of ineffectiveness was trial counsel's failure to call a

witness. *See id*. at 656.[5]

### B. The Record Does Not Establish that Trial Counsel's Failure to Call Kirkham Was the Result of a Strategic Decision.

The Government argues that "Kirkham's testimony would have strongly reinforced the

narrative" that "Baver deliberately misled the banks after 'learning what not to say' and 'what

not to put in' her applications." (ECF No. 294 at 36.) Respectfully, this argument is nonsensical.

As Ms. Baver previously argued, with "the telephone recording in hand, trial counsel"

"could have elicited testimony demonstrating that Ms. Baver **openly admitted to not having**

**prior payroll**." (ECF No. 291 at 32 (bold added).) This would have *undermined* the

---

[5] ("Our record offers no explanation for counsel's decision not to call Mr. Smith . . . Such a crucial decision must be explained before a court can draw any conclusions on the ineffectiveness claim . . . We are convinced that the circumstances made critical the holding of an evidentiary hearing to develop the thoroughness of trial counsel's investigation, preparation, and the basis of the decision about calling Mr. Smith as a witness. All of these factors called for an evidentiary hearing which must result in reconsideration of the validity of both convictions. Accordingly, the order denying the § 2255 motion is REVERSED and the cause is REMANDED for an evidentiary hearing and reconsideration of the § 2255 motion.").

Government's narrative that she learned "what not to say." Indeed, it demonstrates that Ms. Baver continued to be honest about the lack of prior payroll—not that she learned to hide that fact. The reasonable probability of the effect of Kirkham's missing testimony is the *opposite* of what the Government argues. This Court should reject the Government' strained theory.

The Government also argues that Kirkham's testimony would have bolstered the Government's theory because Baver "didn't tell the bank what she told Kirkham . . . ." (ECF No. 294 at 37.) Again, the missing testimony would have had the opposite effect of what the Government argues. The testimony would have demonstrated that a third party (Kirkham) had likely reviewed Ms. Baver's materials and understood that her application referenced "potential income that **could** come in this year . . . ." (FI-LE-ABE-01-00006 at 0:00:33–0:00:55 (bold added).) Kirkham having understood that the application was referencing "potential income" would have demonstrated that Ms. Baver reasonably believed (in good faith) that the bank would have understood her application materials the same way. Again, the reasonable probability of the effect of Kirkham's missing testimony is that it would have *undermined* the Government's narrative that Ms. Baver made a false statement to Northeast Bank. Again, this Court should reject the Government' strained theory.

The Government argues that regardless "of what Baver told Kirkham (or Lendio) about ABE's employment and payroll figures, her application to Northeast claimed 430 employees and an average $4.77 million in monthly payroll—**no qualifiers, no caveats.**" (ECF No. 294 at 37 (bold added) (citing Trial Ex. 13(a)-(d); ECF No. 198 at 8).) But Pinheiro, Northeast Bank's chief risk offer, (ECF No. 198 at 4) testified that exhibits "14(a) through 14(k)" "were . . . documents submitted in connection with Allison Baver Entertainment's application for a PPP loan," and testified that "Northeast Bank had access to those" documents. (ECF No. 198 at 10–

11.) Among those documents were the Good Faith Statement (Government Exhibit 14(b)) and the Table of Contents. (Government Exhibit 14(a).) As this Court has already recognized, "the table of contents that accompanied all of the loan filings gave a timeline of the company and it was clear from that timeline that there were no employees." (Transcript at 453.) And the Good Faith Statement provided, in relevant part, that the slate of projects "was scheduled to begin production in the spring of 2020, employing 430 people." (Government Exhibit 14(b).) To use the words of this Court, the "context of the entire submission" undermines the Government's "no qualifiers, no caveats" argument.

The record establishes that trial counsel's failure to call Kirkham was not the result of a strategic decision. Alternatively, the "circumstances" demand "the holding of an evidentiary hearing to develop the thoroughness of trial counsel's investigation, preparation, and the basis of the decision about calling" Kirkham as a witness. *Holder*, 410 F.3d at 656.

### C.  The Government Overlooks that Lendio's Knowledge Is Relevant to Ms. Baver's Belief in the Truthfulness of Her Statements.

The Government argues that "Lendio's knowledge" that "ABE had no prior payroll" "is irrelevant" because regardless "of what Baver told Kirkham (or Lendio) about ABE's employment and payroll figures, her application to Northeast claimed 430 employees and an average $4.77 million in monthly payroll . . . ." (ECF No. 294 at 37.) But Kirkham having confirmed his understanding that ABE's application materials demonstrated no prior payroll would have been relevant to the question of whether Ms. Baver "honestly believed in the truthfulness of the statements that the government has charged as being false." (ECF No. 178 at 56.) Again, Kirkham having understood that the application was referencing "potential income" would have demonstrated that Ms. Baver reasonably believed (in good faith) that the bank would have understood her application materials the same way.

19

**D. The Government's Argument that Kirkham's Comprehension Is "Speculative" Is Not Persuasive.**

The Government argues that "Baver's assertions regarding Kirkham's comprehension is speculative at best." (ECF No. 294 at 37 n. 13.) But the Government does not dispute that Kirkham told Ms. Baver "so the challenge with you is that this is all potential income that could come in this year . . . ." (*Compare* ECF No. 291 at 7 *with* ECF No. 294 at 35–37.) Nor does the Government dispute that Kirkham told Ms. Baver "you can use the payroll paid for the first quarter of this year . . . but you haven't had a lot of payroll expended this year though." (*Compare* ECF No. 291 at 7 *with* ECF No. 294 at 35–37.) The audio recording establishes Kirkham's knowledge. The Government's argument that his "comprehension is speculative at best" is not persuasive.

The Government cites a Fifth Circuit case, *Evans*, in support of its argument that "courts have expressed a reluctance to upset the jury verdicts based on 'complaints of uncalled witnesses' because 'allegations of what the witness would have testified are largely speculative.'" (ECF No. 294 at 37 (quoting *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).) But in that case the petitioner "did not provide affidavits from the alleged eyewitness *or indicate what testimony the eyewitness would give* . . . ." *Evans*, 285 F.3d at 377 (emphasis added). The Government's reliance on *Evans* is misplaced because here, Ms. Baver has indicated what testimony Kirkham would have to give if placed under oath. The recording of his own voice would require him to admit to what he previously understood. The Government's argument is not persuasive.

### E. The Government's Argument that Ms. Baver Cannot Establish Prejudice Is Not Persuasive.

The Government argues that "there is no reasonable probability" that Kirkham's missing testimony "would have affected the outcome of Baver's trial." (ECF No. 294 at 37.) But the Government never meaningfully addresses Ms. Baver's argument that the missing testimony "was evidence that would have bolstered her good faith defense." (*Compare* ECF No. 291 at 31–32 *with* ECF No. 294 at 37.) There is a reasonable probability that if the jury had heard the missing Kirkham testimony, that it would have accepted that "she honestly believed in the truthfulness of the statements the government . . . charged as being false." (ECF No. 178 at 56.)

### IV. <u>The Government's Arguments Relating to the Trial Team's Failure to Cross-Examine Ken Luis Are Not Persuasive.</u>

The Government argues that **(A)** the trial team was not deficient and **(B)** that Ms. Baver cannot establish prejudice. Ms. Baver addresses each argument in turn.

### A. The Record Does Not Establish that the Trial Team's Decision Not to Cross-Examine Ken Luis Was the Result of a Strategic Decision.

The Government argues that "Baver cannot overcome the strong presumption that her attorneys' decision not to cross-examine Ken Luis was objectively reasonable." (ECF No. 294 at 38.) But again, "while there is, of course, a presumption that counsel was effective, that presumption cannot be used to deflect all serious allegations of ineffectiveness, or else the constitutional guarantee would be eviscerated." *United States v. Holder*, 410 F.3d 651, 655 (10th Cir. 2005).

The Government argues that "because the prosecutor had already introduced Luis' email into evidence during his direct examination, it was unnecessary for Baver's attorneys to cross-examine Luis simply to have him repeat his prior statement." (ECF No. 294 at 39.) The Government's argument is not persuasive. Considering the large number of exhibits that would

eventually be introduced into evidence, it was not a reasonable trial strategy to assume that lay jurors would identify the significance of Luis' statement in the exhibit. Again, where the defense team highlighted in their opening that "an SBA representative based in San Diego" had "suggested that the newly created PPP loan company may be available for [Ms. Baver] and her company," the only reasonable trial strategy would be to highlight the evidence supporting that assurance by cross-examining Luis.

The Government also argues that "any attempted cross-examination of Luis could have resulted in more damaging testimony . . . ." (ECF No. 294 at 39.) This argument is not persuasive because leading questions are permitted on cross-examination. *See* Federal Rule of Evidence 611(c)(1). A targeted cross-examination with highly leading questions focused on the relevant content from the email would pose little to no risk.

The record here establishes that the presumption of reasonableness cannot be used to deflect this serious claim of ineffectiveness. Alternatively, "the circumstances" justify "the holding of an evidentiary hearing to develop the thoroughness of trial counsel's investigation, preparation, and the basis of the decision about" not cross-examining Luis. *See Holder*, 410 F.3d at 656.

### B. Ms. Baver Has Established Prejudice.

The Government argues that Ms. Baver cannot establish prejudice because "Luis was a minor witness for the government," and argues that she cannot show that cross-examining him to elicit testimony about a prior statement already before the jury might have changed the outcome of the trial. (ECF No. 294 at 39–40.) The Government's argument is not persuasive. As Ms. Baver previously argued, the missing testimony was relevant to her good faith defense. (ECF No. 291 at 34.) "If properly presented to the jury along with other evidence of [her] good faith, there

is a reasonable likelihood that the jury would have found that the Government could not meet its burden . . . ." (ECF No. 291 at 34.)

### V.     The Government's Arguments Relating to Trial Counsel's Cross-Examination of Patel Are Not Persuasive.

The Government argues that "[t]here were good strategic reasons not to prolong Patel's cross-examination" because trial counsel had already secured an admission that Meridian Bank had received "two documents" that "explained 'that Ms. Baver didn't have any employees at the time.'" (ECF No. 294 at 41 (citation omitted).) The Government's argument is not persuasive. Ms. Baver had a valid good faith defense. The failure to fully explore testimony relevant to that defense cannot be said to have been the result of a reasonable strategic decision. A review of trial counsel's cross-examination of Patel demonstrates a lack of "thoroughness of trial counsel's . . . preparation . . . ." *Holder*, 410 F.3d at 656.

Again, the Government elects not to engage with "what [this Court] witnessed during the trial," and how the Court "struggl[ed] to see how there was any strategy in what went on." (ECF No. 241 at 11.) A complete review of trial counsel's cross-examination of Patel demonstrates that the cross examination "wasn't a constitutionally effective . . . cross-examination[.]" (ECF No. 241 at 7.)

### VI.    The Government Fails to Adequately Grapple With the Record Evidence that Raises Serious Questions About the Veracity of Pinheiro's Testimony.

The Government argues that given "the government's theory that Baver's attempts to modify **and resubmit** her application showed her intent to influence the bank, it makes sense that trial counsel would seek to avoid drawing attention to Pinheiro's direct testimony on that point." (ECF No. 294 at 43 (bold added).) But if trial counsel's strategy was to "seek to avoid drawing" the jury's attention to evidence that Ms. Baver had *resubmitted* her application, the

23

only reasonable strategy would have been to object to Pinheiro's questionable testimony implying that Ms. Baver had submitted, signed, and "sent" multiple applications "to Northeast Bank" (*See* ECF No. 198 at 6) prior to April 27, 2020. Again, "Ms. Baver received multiple emails in April of 2020 suggesting that her application was *not* submitted to *any* banks prior to April 27, 2020." (ECF No. 291 at 38.) In arguing that trial counsel, on "cross-examination," had "elicited testimony from Pinheiro to downplay the significance of Baver's resubmissions," the Government addresses the second of Ms. Baver's arguments related to Pinheiro but ignores the first—that trial counsel was deficient for failing to object. The evidence available to trial counsel prior to commencement of the trial raised serious questions about the Government's theory that Ms. Baver had caused applications to be "sent" to Northeast Bank prior to April 27, 2020. Trial counsel was deficient for failing to object.

The Government argues that Ms. Baver cannot establish prejudice because whether "a 'new application was sent to Northeast' each time Baver modified her application was hardly material to the question for the jury whether Baver knowingly lied" to the bank regarding payroll and number of employees. (ECF No. 294 at 44.) This argument is not persuasive because the evidence as introduced bolstered the Government's theory that Baver repeatedly and knowingly submitted different applications in attempt to influence the bank. The Government also argues that Ms. Baver was not prejudiced because only one application "was the subject of Count 2 at trial." (ECF No. 294 at 44.) But allowing Pinheiro to testify that Ms. Baver submitted, signed, and sent multiple applications to Northeast Bank when record evidence raised a question as to the veracity of that testimony is prejudicial because there is more than a reasonable likelihood that the jury impermissibly based its finding of guilt on these alleged prior bad acts (prior multiple, completed submissions). Ms. Baver having (allegedly) submitted multiple completed

applications to Northeast Bank also had the likely effect of prejudicing her viable good faith defense. If instead the jury had only heard evidence of the single completed application, there is more than a reasonable likelihood that the jury would have accepted the good faith defense (if that defense had been properly presented).

The Government also argues that eliciting "testimony from Pinheiro that other applications Baver modified and **tried to submit** . . . were not passed along to Northeast from Lendio would not have affected the jury's analysis of the elements of that charge offense." (ECF No. 294 at 45 (bold added).) Again, the record evidence raises a serious question regarding whether Ms. Baver "tried to submit" an application to Northeast Bank each time the Government alleges. ABE having "made an update to the application" (ECF No. 39-1 at 1) it not itself evidence that Ms. Baver intended to submit and sign a completed application. At a minimum, an evidentiary hearing is warranted to determine whether trial counsel "investigated how information was transferred from Lendio to Northeast Bank and when—including whether a Docusign was created simply by virtue of [ABE] having made a change to [the] application." (ECF No. 291 at 43.)

The Government argues that "trial counsel [sufficiently] undermined Pinheiro's testimony that a new application was generated to the bank each time it was resubmitted." (ECF No. 294 at 45.) But Pinheiro's testimony that Northeast Bank treated the multiple submissions as "essentially the same" application did not dispel the prejudicial effect of the questionable testimony that Ms. Baver signed and submitted multiple applications to Northeast Bank. Nor did it undermine Pinheiro's credibility as much as conclusively establishing that his testimony was false.

Considering the viability of her good faith defense, the record establishes that Ms. Baver was prejudiced by trial counsel's deficient performance in (1) failing to object to Pinheiro's testimony and (2) failing to adequately cross-examine Pinheiro.

## VII.     Ms. Baver Was Prejudiced by the Combined Effects of Her Trial Counsel's Deficient Performance.

The Government argues that "there was nothing objectively unreasonable about any of the challenged actions by Baver's former counsel." (ECF No. 294 at 45–46.) This Court should not be persuaded by the Government's efforts to brush aside Ms. Baver's legitimate claims of ineffectiveness. There was nothing objectively reasonable about trial counsel diluting the Government's burden of proof. Making a forbidden misstatement of law more typically seen *by prosecutors* was bizarre and was objectively unreasonable. When considered together with all of the other identified errors, the inescapable conclusion is that Ms. Baver was deprived of her Sixth Amendment right to effective counsel.

The Government argues that this "case . . . was straightforward and based almost entirely on" Ms. Baver's "own written statements" relating to her having "said she had 430 employees and $4.77 million in average monthly payroll when she plainly didn't . . . ." (ECF No. 294 at 46.) Again, "'whether there was enough evidence to legally support a conviction does not answer whether there was a reasonable probability of a different result arising from counsel's deficient performance.'" (ECF No. 291 at 41 (quoting *Newmiller v. Raemisch*, 877 F.3d 1178, 1204 n. 3 (10th Cir. 2017).) In this case, "with effective assistance of counsel, the jury could very easily return an acquittal." (*See* ECF No. 241 at 11.) Ms. Baver was prejudiced by trial counsel's ineffective representation.

**VIII.** **In Arguing that Ms. Baver Is Not Entitled to an Evidentiary Hearing, the Government Fails to Address this Court's Firsthand Observations.**

In her opening Motion, Ms. Baver described in detail the previously scheduled sentencing hearing where this Court described what was "witnessed during the trial," and how the closing argument "wasn't a constitutionally effective closing argument." (ECF No. 291 at 17.) But in its recitation of the procedural history of this case, the Government jumps from the trial's closing arguments to Ms. Baver's motion for a new trial—without mentioning the Court's firsthand observations. (*See* ECF No. 294 at 18.) In failing to acknowledge what this Court "witnessed during the trial," the Government disregards settled authority recognizing that trial judges are uniquely positioned to assess matters a cold record cannot capture—including juror demeanor, juror reactions, and the likely effect of prejudicial statements on the jury.

As Ms. Baver previously argued, a district court is required to hold an evidentiary hearing on a defendant's motion for a new trial when the defendant's ineffectiveness claim is colorable. Based on the trial court's valid concerns, and for the reasons detailed in Ms. Baver's Motion, there is more than a colorable claim of ineffectiveness. The Court should hold an evidentiary hearing if it does not order a new trial.

## Conclusion

Pursuant to Federal Rule of Criminal Procedure 33(a), the Court should hold a new trial based on prior counsel's ineffectiveness. Because the record establishes prior counsel's ineffectiveness, the Court should grant a new trial without an evidentiary hearing.

But if the Court holds that Ms. Baver is not yet entitled to a new trial, the Court should hold an evidentiary because Ms. Baver has established a colorable claim of ineffective assistance of counsel.

Nicolas C. Wilde (15768)
**Law Office of Nicolas C. Wilde LLC**
40 S. 600 E.
Salt Lake City, Utah 84102
801-949-3088
nick@ncwildelaw.com

*/s/ Nicolas C. Wilde*


Michael Langford (9682)
Alexander E. Ramos (15234)
**LANGFORD | RAMOS PLLC**
8 East Broadway, Ste. 420
Salt Lake City, UT 84111
Telephone: (801) 328-4090
Email: alex@langfordramos.com

*/s/ Alexander E. Ramos*